UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
:
MENTAL HYGIENE LEGAL SERVICE,                      :
:
        Plaintiff,                                  :
:
  -v.-                                                      :
:
ELIOT SPITZER, in his official capacity as          :   Docket No. 07-CV-2935 (GEL)
Governor of the State of New York,                  :
ANDREW CUOMO, in his official capacity as           :
Attorney General of the State of New York,          :
MICHAEL HOGAN, in his official capacity             :   COMPLAINT
 as Commissioner of the New York State Office       :
of Mental Health, DIANA JONES RITTER, in her        :
official capacity as Commissioner of the New York   :
State Office of Mental Retardation and              :
Developmental Disabilities, and BRIAN FISCHER,      :
in his official capacity as Commissioner of the New :
York State Department of Correctional Services,     :
:
        Defendants.                                 :
:
------------------------------------------------------------X

Plaintiff alleges:

Introduction

1. This is a declaratory judgment action challenging certain aspects of New York's new Sex Offender Management and Treatment Act ("the Act"), scheduled to take effect on April 13, 2007. The Act creates a new regime in New York of post-prison civil commitment for certain sex offenders who are believed to suffer from a mental abnormality that predisposes them to commit sex offenses. Plaintiff Mental Hygiene Legal Service [MHLS] is statutorily designated by the Act to serve as counsel to those proposed for such commitment. MHLS challenges certain

aspects of the Act on Due Process and Equal Protection grounds and seeks preliminary injunctive relief to prevent those aspects of the law from taking effect.

## Jurisdiction

2. This Court has original jurisdiction over this action because Plaintiffs' claims arise under the Due Process and Equal Protection Clauses of the Constitution of the United States, guaranteed to the citizenry by the Fourteenth Amendment. The jurisdiction of this Court is based upon 42 U.S.C. § 1983, 28 U.S.C. § 1331, 28 U.S.C. § 1343(3) and 28 U.S.C. § 2201.

## Venue

3. Venue is proper in this district under 28 U.S.C. § 1391 (b) because jurisdiction is not founded solely upon diversity of citizenship and a substantial part of the events giving rise to this claim will occur in this district, including the identification, detention, and trial of persons as "sex offenders requiring civil management."

## Factual Background

### The New Law

4. On March 14, 2007, New York's "Sex Offender Management and Treatment Act" (attached hereto as Exhibit A) was signed in to law, to take effect on April 13, 2007. *See* Ex. A at County Law Section 722, § 52.[1]

5. The Act provides a new program of civil commitment and/or out-patient civil management for certain persons who are thought to have "mental abnormalities" that predispose them to the

---

[1] The Act amends many sections of the N.Y. Mental Hygiene Law, Penal Code, Correction Law, County Law, Criminal Procedure Law, Family Court Act, Judiciary Act, and Executive Law. For simplicity, this Complaint cites to Exhibit A for all references to provisions of the Act referred to herein.

commitment of sex offenses. Ex. A.

6. The Act includes extensive procedures, codified as new N.Y. Mental Hygiene Law Article 10, aimed at confining persons as "sex offenders requiring civil management." To summarize the basic procedure:

(a) convicted sex offenders and various other specified persons are identified as possible "sex offenders requiring civil management" as they near the end of their prison terms or other term of state custody. *See* Ex. A at Mental Hygiene Law § 10.05 (b);

(b) the Department of Corrections Services or other agency having jurisdiction over such a person gives notice to the Office of Mental Health (OMH), though not to the offender himself, that the person may be an offender subject to the provisions of the Act. *See* Ex. A at Mental Hygiene Law § 10.05 (b), (c);

(c) OMH staff make a preliminary assessment of each individual and refer those believed to be subject to the Act to a "case review team" for further investigation, also giving notice to the offender himself. *See* Ex. A at Mental Hygiene Law § 10.05 (d);

(d) the Case Review Team identifies those persons believed to be in need of civil management and refers them to the Attorney General's Office. S*ee* Ex. A at Mental Hygiene Law § 10.05 (e)-(g);

(e) the Attorney General may choose to file a petition against any person referred by the Case Review Team alleging that the person is a "sex offender in need of civil management." *See* Ex. A at Mental Hygiene Law § 10.06 (a);

(f) a judge must find probable cause to believe that the person is a "sex offender in need of civil management." *See* Ex. A at Mental Hygiene Law § 10.06 (g);

     (g) a jury (or judge, if jury trial is waived) must find, by clear and convincing evidence, that a person is a sex offender in need of civil management, meaning that he suffers from a mental abnormality that predisposes him to commit sex offenses. *See* Ex. A at Mental Hygiene Law § 10.07 (d); and

     (h) a judge determines whether the offender is so dangerous as to require civil commitment, or whether a regimen of strict and intensive out-patient supervision would adequately protect the public interest. *See* Ex. A at Mental Hygiene Law § 10.07 (f).

7. The Act contains an express severability clause providing that if any court finds a portion of the law to be invalid, that finding shall not effect, impair, or invalidate the remainder of the Act. *See* Ex. A at County Law Section 722, § 51.

<u>Persons Not Convicted of Sex Offenses</u>

8. "Sex offense," as defined in the Act, is not limited to sex crimes (as delineated by N.Y. Penal Code Article 130). Rather, "sex offense" is defined to encompass various other "designated felonies," if those felonies were committed with a "sexual motivation." *See* Ex. A at Mental Hygiene Law § 10.03 (f), (p).

9. For persons convicted of designated non-sexual felonies after the Act's effective date, such a "sexual motivation" must be pled in the criminal indictment and proven at the criminal trial beyond a reasonable doubt if the defendant is subsequently to be considered for commitment as a sex offender. *See* Ex. A at Penal Code § 130.91, Criminal Procedure Law ["CPL"] § 200.50.

10. For persons convicted of designated non-sexual felonies before the effective date of the Act, the "sexual motivation" for the underlying offense is never proven beyond a reasonable doubt.

11. In such cases, the alleged "sexual motivation" for the underlying offense is retroactively

charged by the Attorney General in the Article 10 commitment petition and is found by the same jury that considers whether the person meets the criteria for Article 10 civil management, applying a "clear and convincing evidence" standard. *See* Ex. A at Mental Hygiene Law § 10.07 (c), (d).

12. As a result of the retroactive finding that a non-sex crime was sexually motivated, a person can be branded as a "sex offender" and subject to long-term, indefinite civil commitment, including psychiatric treatment and behavior modification.

<u>Persons Not Convicted of Any Crime</u>

13. Furthermore, a person need not have been convicted of any crime to be subject to commitment as a sex offender. The Act contemplates that persons found not responsible by reason of mental disease or defect ("CPL 330 defendants") and persons charged with crimes but found incompetent to stand trial ("CPL 730 defendants") are subject to civil commitment as sex offenders stemming from their initial contacts with the criminal justice system. *See* Ex. A at Mental Hygiene Law § 10.03 (g) (2), (3).

14. As to the CPL 730 defendants, who have been found incompetent to stand trial on the criminal charges, the underlying charged offense is "deemed established" and is not subject to challenge at the initial probable cause hearing provided under the Act. *See* Ex. A at Mental Hygiene Law § 10.06 (j) (iii). But persons found incompetent to stand trial have never, by definition, stood trial or been convicted of their alleged crimes.

15. Thus, under the Act, a court can find probable cause that a person is a sex offender in need of civil management, which finding carries with it mandatory confinement pending trial, *see* Ex. A at Mental Hygiene Law § 10.06 (k) (iii), without any finding that he committed the underlying

5

criminal act alleged.

16. Furthermore, under the Act, at the eventual Article 10 trial, the State need only prove by clear and convincing evidence that the incompetent CPL 730 defendant did, in fact, engage in the conduct constituting the offense charged. *See* Ex. A at Mental Hygiene Law § 10.07 (d). Thus, indefinite commitment as a sex offender can occur without any finding beyond a reasonable doubt that the CPL 730 defendant actually committed the underlying criminal offense.

Notice, Counsel, and Detention Provisions

17. As noted above at ¶ 6 (b), any agency having custody of a person that it believes may be a sex offender is required to give notice to the Attorney General and the Commissioner of Mental Health when that person nears an anticipated release date. *See* Ex. A at Mental Hygiene Law § 10.05 (b). No notice is given to the person identified as a potential sex offender at that time, nor is there notice to the person's counsel, if any. *Id.*; *see also* Ex. A at Mental Hygiene Law § 10.08 (g) (alleged offender not entitled to appointment of counsel until Attorney General petitions for Article 10 civil management).

18. The notice described by Mental Hygiene Law § 10.05 (b) must be given to the Attorney General and Office of Mental Health even if the agency with custody believes that a particular person does not have a mental abnormality or is not likely to commit sex crimes in the future.

19. Upon receipt of the notice described by Mental Hygiene Law § 10.05 (b), the Attorney General may file a "securing petition" that will prevent the release of an alleged sex offender until his case has been reviewed by the Case Review Team (described above at ¶ 6 (c)-(d)). *See* Ex. A at Mental Hygiene Law § 10.06 (f).

20. The filing of a securing petition prevents an offender from being released from custody in

accordance with the terms of his prison sentence or otherwise applicable involuntary detention.

21. There is no limitation on how long a person may be detained under a securing petition while review by a Case Review Team is pending.

22. The Act does not require notice to the alleged offender that a "securing petition" has been filed; indeed, a securing petition may be filed before an alleged offender has notice that he is being considered for Article 10 commitment.

23. The Act does not provide any opportunity for an offender detained under a "securing petition" to challenge that petition or to put forth evidence supporting his right to be released in accordance with the terms of his prison sentence or other state custody arrangement.

24. The Act does not require that a "securing petition" be based upon a finding of probable cause that a person is in fact a sex offender subject to the provisions of Article 10. In fact, under Mental Hygiene Law § 10.06 (f), no probable cause hearing may be held until the Case Review Team completes its review, notwithstanding the detention of the alleged offender during the pendency of that review.

25. The Act prohibits counsel from being appointed until an Article 10 petition has been filed or the Attorney General has requested an involuntary psychiatric examination of the alleged offender. *See* Ex. A at Mental Hygiene Law § 10.08 (g). Thus, an indigent person detained under a securing petition is not entitled to counsel.

26. In addition to the involuntary psychiatric examination that may be requested by the Attorney General, the Act permits the Case Review Team to require any alleged offender to undergo an involuntary psychiatric examination. *See* Ex. A at Mental Hygiene Law § 10.05 (e). Any statements made during this examination are admissible in any future Article 10 proceeding. Ex.

A at Mental Hygiene Law 10.08 (a). Furthermore, failure to cooperate with the examination can result in an adverse jury charge. *See* Ex. A at Mental Hygiene Law § 10.07 (c).

27. No counsel is available to an alleged offender at an involuntary psychiatric examination ordered by the Case Review Team. *See* Ex. A at Mental Hygiene Law § 10.08 (g). Nor does the Act provide any other form of notice to the offender of the potential consequences of the examination.

28. If the Attorney General files an Article 10 petition against an alleged offender, the Act requires an initial hearing to determine whether there is probable cause to believe that the individual is a sex offender subject to civil management, within the meaning of the Act (discussed at ¶ 6 (f), above).

29. The probable cause finding is directed only at whether the individual is a "sex offender requiring civil management." Ex. A at Mental Hygiene Law § 10.06 (g). It does not encompass any finding as to whether the person requires secure confinement. *Compare* Ex. A at Mental Hygiene Law § 10.03 (q), (r) (definition of "dangerous sex offender civil management" includes person who requires out-patient supervision "but is not a dangerous sex offender requiring confinement."). *See also* Ex. A at Mental Hygiene Law § 10.01 (b) (confinement extended beyond the end of a prison term is warranted only in "extreme cases").

30. Nevertheless, a finding of probable cause results in mandatory detention for the offender pending trial. Ex. A at Mental Hygiene Law § 10.06 (k).

Release of Confidential Information

31. New York law normally protects civilly committed persons against the release of medical records, psychiatric clinical records, and any information tending to identify a person as a

psychiatric patient. *See* N.Y. Mental Hygiene Law § 33.13 (c).

32. Medical information, particularly information about a person's psychiatric health, is also protected by a common-law right to confidentiality. *O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005).

33. The confidentiality provisions of the Mental Hygiene Law contain narrow exceptions permitting the release of information to any endangered individual, and to law enforcement agencies, when a patient's treating doctor believes that he presents a serious and imminent danger to another, *see* N.Y. Mental Hygiene Law § 33.13 (c) (6), and to "appropriate persons and entities when necessary to prevent imminent serious harm" to the patient himself or to any other person, N.Y. Mental Hygiene Law § 33.13 (c) (9) (v).

34. Under the new Act, the confidentiality provisions of the Mental Hygiene Law are considerably relaxed with regard to Article 10 sex offenders. The Act amends Mental Hygiene Law § 33.13 to permit the release of confidential clinical information to any "appropriate person [or] entity" whenever it is deemed "necessary to protect the public concerning a specific sex offender." *See* Ex. A at Mental Hygiene Law § 33.13 (c) (9) (vii). There is no requirement of imminent danger to any particular person, as under the prior provisions of Mental Hygiene Law § 33.13.

35. The revised Mental Hygiene Law § 33.13 (c) (9) (vii) is broad enough to permit the release of confidential medical information if persons having access to that information disagree with a judge's determination that a particular offender is adequately controlled by strict and intensive out-patient supervision (discussed at ¶ 6 (h) above).

36. The need for this broad incursion into patient confidentiality is obviated both by the pre-

existing provisions of Mental Hygiene Law § 33.13 (c) and by a provision of the new Act that permits the immediate release of information to law enforcement in the event that an Article 10 patient escapes from custody. *See* Ex. A at Mental Hygiene Law § 10.10 (g).

Parties

<u>Plaintiff</u>

37. Plaintiff Mental Hygiene Legal Service (MHLS) is an agency statutorily mandated to inform patients, residents, and other interested persons of their legal rights (N.Y. Mental Hygiene Law § 47.03 (b)); to provide legal services and assistance to all persons admitted to or alleged to be in need of admission to any facility for the mentally disabled (N.Y. Mental Hygiene Law § 47.03 (c)); and "[t]o initiate and take any legal action deemed necessary to safeguard the right of any patient to protection from abuse or mistreatment" (N.Y. Mental Hygiene Law § 47.03 (e)).

38. Under the terms of the new Act, MHLS is required to provide legal services and assistance to persons against whom Article 10 commitments are sought. *See* Ex. A at Mental Hygiene Law §§ 10.03 (d), 10.06 (c), 10.13 (c), 47.01, and 47.03 (f).

39. MHLS asserts associational standing to take legal action for declaratory and injunctive relief as necessary to safeguard the rights of its constituent clients. MHLS also asserts third-party standing to sue on behalf of its current clients who may be subject to proceedings under new Article 10. *See* Ex. A at Mental Hygiene Law §§ 10.03 (g) (2) (CPL 730 defendants); 10.03 (g) (3) (CPL 330.20 defendants) 10.03 (g) (5) (persons hospitalized pursuant to Correction Law § 402).

40. Participation of individual constituents is not necessary to resolve the legal claims asserted herein.

Defendants

### Defendant Spitzer

41. Defendant Eliot Spitzer is the Governor of the State of New York. He is charged with the faithful execution of the laws of the state, including the statutory provisions here at issue. He is sued in his official capacity only.

### Defendant Cuomo

42. Defendant Andrew Cuomo is the Attorney General of the State of New York.

43. Under the Act, Defendant Cuomo is responsible for filing "securing petitions" to effect the detention of certain alleged offenders before there has been an Article 10 petition or finding of probable cause. Ex. A at Mental Hygiene Law § 10.06 (f). He is also responsible for the prosecution of Article 10 petitions, including those against persons never convicted of a sex offense ("sexually motivated" offenders) and persons never convicted of any crime (incompetent CPL 730 defendants).

44. Defendant Cuomo is sued in his official capacity only.

### Defendant Hogan

45. Defendant Michael Hogan is the Commissioner of the New York State Office of Mental Health (OMH).

46. Defendant Hogan is responsible for the operation of the state's mental health facilities, including new secure detention facilities to be opened for the detention of persons committed under Article 10. *See* Ex. A at Mental Hygiene Law § 45.01. Under the new Act, he is responsible for authorizing the release of confidential medical records about Article 10 patients. *See* Ex. A at Mental Hygiene Law §§ 10.17, 33.13 (c). His agency is also responsible for

identifying persons as "detained sex offenders" subject to the Act, including those who have never been convicted of any crime (incompetent CPL 730 defendants) and those never convicted of a sex offense ("sexually motivated" offenders). Ex. A at Mental Hygiene Law § 10.03 (a).

47. Defendant Hogan is sued in his official capacity only.

### Defendant Ritter

48. Defendant Diana Jones Ritter is the Commissioner of the New York State Office of Mental Retardation and Developmental Disabilities (OMRDD).

49. Under the Act, OMRDD is an "agency with jurisdiction" charged with identifying persons as "detained sex offenders" subject to the Act, including those who have never been convicted of any crime (incompetent CPL 730 defendants) and those never convicted of a sex offense ("sexually motivated" offenders).

50. Defendant Ritter is sued in her official capacity only.

### Defendant Fischer

51. Defendant Brian Fischer is the Commissioner of the New York Department of Correctional Services (DOCS).

52. Under the Act, DOCS is an "agency with jurisdiction" charged with identifying persons as "detained sex offenders" subject to the Act, including those never convicted of a sex offense ("sexually motivated" offenders).

53. Defendant Fischer is sued in his official capacity only.

### First Claim

54. Paragraphs 1-53 are repeated and realleged as if fully set forth herein.

55. MHLS's constituents have an interest in avoiding physical detention under "securing

Case 1:07-cv-02935-GEL   Document 1   Filed 04/12/2007   Page 13 of 18

petitions" filed pursuant to N.Y. Mental Hygiene Law § 10.06 (f) (enacted in the new Act).

56. The Act provides inadequate procedural safeguards to protect against an erroneous deprivation of liberty pursuant to a "securing petition." Specifically, the Act provides no notice to persons that their liberty will be denied under a "securing petition" or the factual basis for that petition; no opportunity to challenge the "securing petition" in any forum; and no counsel to assist them.

57. Section 10.06 (f) violates MHLS's constituents' Due Process rights, as guaranteed by Amendment XIV of the United States Constitution.

## Second Claim

58. Paragraphs 1-57 are repeated and realleged as if fully set forth herein.

59. MHLS constituents who have been charged with criminal offenses, found incompetent to stand trial, and never convicted (CPL 730 defendants) have their rights compromised when (a) they are detained pending an Article 10 trial without any finding that they committed the underlying offense charged, nor any opportunity to contest the fact of commission of the charged offense (new Mental Hygiene Law § 10.06 (j)); and (b) the fact of commission of the underlying criminal offense is proven only by clear and convincing evidence, never beyond a reasonable doubt, before long-term indefinite detention under Article 10 may be authorized (new Mental Hygiene Law § 10.07 (d)).

60. Section 10.06 (j) and Section 10.07 (d) violate the MHLS constituents' Due Process rights, as guaranteed by Amendment XIV of the United States Constitution.

## Third Claim

61. Paragraphs 1-60 are repeated and realleged as if fully set forth herein.

13

62. Under New Article 10, MHLS constituents who have been charged with criminal offenses, found incompetent to stand trial, and never convicted (CPL 730 defendants) are detained pending an Article 10 trial without any finding that they committed the underlying offense charged (new Mental Hygiene Law § 10.06 (j)), while all other persons to whom the Act applies have been convicted of an underlying criminal offense, or (in the case of persons found not guilty by reason of insanity) have been found to have committed all of the elements of the offense charged.  Only CPL 730 defendants are detained under Article 10 without any finding that they committed the offense charged.

63.  Furthermore, under New Article 10, CPL 730 defendants are committed to long-term indefinite detention as sex offenders even though it has never been proven beyond a reasonable doubt that they actually committed the underlying charged offense.  All other persons committed under Article 10 are convicted of the underlying criminal acts beyond a reasonable doubt or (in the case of persons found not guilty by reason of insanity) have been found beyond a reasonable doubt to have committed all of the elements of the offense charged.

64.  The differential treatment of the CPL 730 defendants is not necessary to further any legitimate governmental objective.

65.  New Mental Hygiene Law §§ 10.06 (j) and 10.07 (d) violate MHLS constituents' right to Equal Protection of the Laws, as guaranteed by the Fourteenth Amendment of the United States Constitution.

Fourth Claim

66.  Paragraphs 1-65 are repeated and realleged as if fully set forth herein.

67.  CPL 730 defendants, by definition, are unfit to understand the charges against them and to

aid in their defense. Yet Article 10 requires proof that the incompetent defendant did engage in the conduct constituting a criminal offense (new Mental Hygiene Law § 10.07 (d)), and, in some cases, that the conduct was "sexually motivated" (new Mental Hygiene Law § 10.07 (c)).

68. Due process forbids the trial of incompetent persons on matters relating to their past conduct because such persons are unable to assist in defending against factual allegations related to such conduct. *Cf. Medina v. California*, 505 U.S. 437, 439 (1992) (due process prohibits criminal prosecution of one incompetent to stand trial).

69. Because new Mental Hygiene Law § 10.07 (d) requires an adjudication of whether an incompetent defendant in fact committed the criminal acts with which he is charged despite his continuing incompetence to stand criminal trial, it violates such defendants' Due Process rights.

Fifth Claim

70. Paragraphs 1-69 are repeated and realleged as if fully set forth herein.

71. Under new Article 10, persons who have been convicted of non-sex crimes before the effective date of the Act can be civilly committed as "sex offenders" based on a retroactive determination, by clear and convincing evidence, that the underlying crime of conviction was, in fact, committed with a "sexual motivation." *See* New Mental Hygiene Law § 10.07 (c), (d). By contrast, persons convicted of non-sex crimes after the effective fate of the act can be civilly committed only if an underlying sexual motivation is pled in the indictment and proven to a jury beyond a reasonable doubt.

72. The differential burden of proof as to "sexual motivation" between persons convicted before the effective date of the Act and those convicted afterwards is not necessary to further any legitimate governmental objective.

73. New Mental Hygiene Law § 10.07 (c) violates the constituents' right to Equal Protection of the Laws, as guaranteed by the Fourteenth Amendment of the United States Constitution, to the extent that it permits the specific intent for the underlying criminal act to be proven only by a clear and convincing evidence standard.

Sixth Claim

74. Paragraphs 1-73 are repeated and realleged as if fully set forth herein.

75. Under new Article 10, persons who have been convicted of non-sex crimes before the effective date of the Act can be civilly committed as "sex offenders" based on a retroactive determination that the underlying crime of conviction was, in fact, committed with a "sexual motivation." New Mental Hygiene Law § 10.07 (c). But the factual question of the offender's motivation for committing the offense is never proven by the State beyond a reasonable doubt.

76. The reduced burden of proof as to this underlying fact violates these persons' Due Process rights, guaranteed by the Fourteenth Amendment of the United States Constitution. *See In re Winship*, 397 U.S. 358, 364 (1970).

Seventh Claim

77. Paragraphs 1-76 are repeated and realleged as if fully set forth herein.

78. New Article 10 authorizes the detention of MHLS constituents pending a full trial on the civil commitment issues without any determination that the person detained poses a current danger to himself or others (New Mental Hygiene Law § 10.06 (k)).

79. Civil detention predicated on mental abnormality is valid only where the person committed presents a current danger to himself or others. *O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975); *Foucha v. Louisiana*, 504 U.S. 71, 77 (1992).

80. Section 10.06 (k) violates the constituents' substantive Due Process rights, guaranteed by the Fourteenth Amendment of the United States Constitution.

## Eighth Claim

81. Paragraphs 1-80 are repeated and realleged as if fully set forth herein.

82. New subsection § 33.13 (c) (9) (vii) of the Mental Hygiene Law permits the release of confidential medical records and information about MHLS constituents subject to Article 10 where any person believes that such release is necessary to protect the public safety.

83. The public safety is adequately protected by existing provisions of law which permit the release of information where there is reason to believe that a specific person may be endangered, or where an offender has been released from custody.

84. The broader release of information authorized by § 33.13 (c) (9) (vii) could compromise the State's interest in orderly proceedings under Article 10.

85. Section 33.13 (c) (9) (vii) violates the MHLS constituents' Due Process rights. *O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005).

## Ninth Claim

86. Paragraphs 1-85 are repeated and realleged as if fully set forth herein

87. The State's failure to provide counsel or notice of the consequences of participation versus non-cooperation in cases where the Case Review Team orders a psychiatric evaluation before an Article 10 petition has been filed violates the MHLS constituents' Due Process rights. *See* New Mental Hygiene Law §§10.05 (e), 10.07 (c), 10.08 (a), 10.08 (g).

Prayer for Relief

WHEREFORE, plaintiff respectfully prays that this court:

(1) issue a declaratory judgment that the OMH policy violates the due process and equal protection rights of the MHLS constituents;

(2) grant a permanent injunction enjoining the defendants, their agents, successors, employees, attorneys, assigns and other representatives, and all those acting in concert with them at their direction, from enforcing the specified provisions of the new Act;

(3) grant such additional relief as the court deems just and proper.

Dated: April 12, 2007
      New York, New York

                                  MARVIN BERNSTEIN, Director
                                  Mental Hygiene Legal Service, First Department
                                  SIDNEY HIRSCHFELD, Director
                                  Mental Hygiene Legal Service, Second Department
                                    S/
                                  By: Sadie Zea Ishee (SI-9540)
                                  Senior Staff Attorney
                                  Dennis Feld (DF-2803)
                                  Deputy Director of Special Litigation and Appeals
                                  60 Madison Avenue, 2nd Floor
                                  New York, New York 10010
                                  Phone:  (212) 779-1734