UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                            :
MENTAL HYGIENE LEGAL SERVICE,                               :
                                                            :
                    Plaintiff,                              :
                                                            :
            -v.-                                            :
                                                            :
ELIOT SPITZER, in his official capacity as                 :        Docket No. 07-CV-2935 (GEL)
Governor of the State of New York,                         :
ANDREW CUOMO, in his official capacity as                  :
Attorney General of the State of New York,                 :
MICHAEL HOGAN, in his official capacity                    :
 as Commissioner of the New York State Office              :
of Mental Health, DIANA JONES RITTER, in her               :
official capacity as Commissioner of the New York          :
State Office of Mental Retardation and                     :
Developmental Disabilities, and BRIAN FISCHER,             :
in his official capacity as Commissioner of the New        :
York State Department of Corrections Services,             :
                                                            :
                    Defendants.                             :
                                                            :
-----------------------------------------------------------------X

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
AND TEMPORARY RESTRAINING ORDER

                    MARVIN BERNSTEIN, Director
                    Mental Hygiene Legal Service, First Department
                    SIDNEY HIRSCHFELD, Director
                    Mental Hygiene Legal Service, Second Department
                    Attorneys for Plaintiff
                    60 Madison Avenue, 2nd Floor
                    New York, New York 10010
                    Phone:  (212) 779-1734

                    April 16, 2007

SADIE ZEA ISHEE
DENNIS B. FELD
        Of Counsel

# TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I..     New Mental Hygiene Law § 10.06 (f): Unreviewable Detention under
        Securing Petition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.     New Mental Hygiene Law § 10.07 (c): commitment based on "sexual
        motivation" for non-sex crimes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.     Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.     Equal Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        C.     Irreparable Harm . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III.    New Mental Hygiene Law §§ 10.06 (j) (iii) & 10.07 (d): Commitment of
        Persons Found Incompetent to Stand Trial . . . . . . . . . . . . . . . . . . . . . . . 15

IV.     New Mental Hygiene Law § 10.06 (k): Commitment without proof of
        dangerousness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

V.      New Mental Hygiene Law §§ 10.05 (e) & 10.08 (g): Psychiatric
        Examination in the absence of Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VI..    New Mental Hygiene Law § 33.13 (c) (9) (vii) . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

PRELIMINARY STATEMENT

Plaintiff Mental Hygiene Legal Service (MHLS) submits this memorandum of law in support of its motion for preliminary injunctive relief with a temporary restraining order to enjoin Defendants from enforcement of certain provisions of New York's new "sex offender management and treatment act" (hereinafter "the Act").  Because of the Act's severability clause, any injunction issued by this Court would not prevent the remainder of the Act from taking effect on April 13, 2007, as provided thereunder.  Those provisions which MHLS seeks to enjoin would work grave incursions on the due process and equal protection rights of MHLS's constituent clients.

FACTUAL BACKGROUND

New York's "sex offender management and treatment act" took effect on April 13, 2007. Compl. ¶ 1.   The goal of the new Act is to manage "recidivistic sex offenders" with "comprehensive programs of treatment and management."  New Mental Hygiene Law ("MHL") § 10.01.  The Act creates a new program of post-prison civil commitment for New York's sex offenders, enacted primarily through new Article 10 of the Mental Hygiene Law, which provides a series of procedures for identifying those sex offenders who require civil commitment or outpatient treatment.  *See* § 10.03 (q).  Only the challenged aspects of the new law are discussed herein; a summary of the Article 10 procedures can be found at Compl. ¶ 6.

As used in Article 10, "sex offense" is a term of art which encompasses not only sex crimes, but also non-sex felonies that are deemed to have been committed with a "sexual motivation."  MHL § 10.03 (p). As to those persons convicted after the Act's effective date, such a "sexual motivation" must be pled in the criminal indictment and proven at the criminal trial

beyond a reasonable doubt.  But the Act does not limit "sexual motivation" commitments to these indicted and proved motivations; rather, in the case of those convicted of crimes before the Act's effective date, it permits the jury to assign a retroactive "sexual motivation" to a non-sex crime committed many years before simultaneous to its consideration of whether the offender suffers from a "mental abnormality."  Compl. ¶¶ 9-11.  Furthermore, the Act contains no requirement that this retroactively-determined "sexual motivation" be found beyond a reasonable doubt.  *Id.*

Furthermore, the term "sex offender" encompasses not only those convicted of "sex offenses" (including "sexually motivated" crimes), but also those indicted for such crimes but found incompetent to stand trial, who have never been found guilty of any crime.  MHL § 10.03 (g) (3). Indeed, incompetent persons are expressly forbidden from challenging their commission of the underlying offense at the initial probable cause hearings held under Article 10, even though a probable cause finding carries with it mandatory physical detention pending trial.  MHL § 10.06 (j), (k).  And even at the ultimate trial on the question of whether such an incompetent person is a sex offender requiring civil management, the fact of the person's commission of the underlying offense is proven only by clear and convincing evidence, not beyond a reasonable doubt.  MHL § 10.07 (d).  Thus, these persons can be indefinitely committed as sex offenders based on less stringent proof than all other offenders.  Furthermore, because they remain incompetent at the time of their Article 10 trials, these persons, by definition, cannot aid counsel in defending against the allegation that they committed the underlying criminal acts.  Compl. ¶¶ 67-68.

By defining "sex offender" broadly to encompass not only those persons convicted of sex

crimes, the Act sweeps up huge numbers of people into the initial stages of review for possible commitment. Any agency that has jurisdiction over a person who "may" qualify as a "sex offender" under the Act's broad definition *must* give notice of such person's imminent release from custody to the Attorney General and Office of Mental Health (OMH), triggering review for possible commitment. MHL § 10.05 (b). Because § 10.05 (b) calls for mandatory notice to the Attorney General and OMH whenever a person in custody "may" be a sex offender, such notice will be given for large numbers of non-sex felons for whom the underlying motivation for a past offense remains unknown, as well as for persons whom the custodial agency is convinced are unlikely to commit sex crimes in the future, whether for medical or other reasons. Compl. ¶ 17. Yet the § 10.05 (b) notice carries with it grave consequences: any person for whom such notice has been generated may be the subject of a "securing petition," filed by the Attorney General, which unilaterally prevents that person's release from custody without notice to the individual or any opportunity to challenge the prolonged detention. MHL § 10.06 (f). Such a "securing petition" can be filed without any finding whatsoever that an individual is a "sex offender requiring civil management" under Article 10. *Id.*

In addition to triggering the potential filing of a "securing petition" by the Attorney General, the notice mandated under MHL § 10.05 (b) can trigger an individual's referral to a case review team for further evaluation. MHL § 10.05 (d). The case review team has the authority to direct the individual to submit to an involuntary psychiatric evaluation, and any statements made at the evaluation–along with evidence regarding the individual's cooperation with the evaluator or lack thereof–is explicitly made admissible in any subsequent Article 10 proceeding. MHL § 10.05 (e); MHL § 10.08 (a). Failure to fully cooperate with the evaluation can even result in an

adverse jury charge.   MHL § 10.07 (c).  Nevertheless, the Act does not provide notice of these potential adverse consequences to the alleged offender, nor does it provide for notice to the individual's counsel, if any.  Compl. ¶¶ 26, 84.

Following review by the case review team, the Attorney General may file a petition alleging that an individual is a "sex offender requiring civil management," which must be followed by a probable cause hearing within 30 days. MHL § 10.06 (g).  The allegation that one is a "sex offender requiring civil management" does not encompass any claim that the person is dangerous and in need of confinement.  *See* MHL § 10.03 (q), (r) (definition of "dangerous sex offender civil management" includes person who requires outpatient supervision "but is not a dangerous sex offender requiring confinement.").  But if probable cause is found that the person is a "sex offender in need of civil management," that person is mandatorily detained pending trial in a facility for the care, treatment, and control of sex offenders.  MHL § 10.06 (k).  The detention is not predicated on any specific, articulable allegation of dangerousness, much less a finding of such dangerousness.  Compl. ¶¶ 29-30.

Finally, provisions of the new Act intrude on the confidentiality generally accorded to medical records by permitting OMH to release the records of any Article 10 patient where it deems such release "necessary to protect the public."  MHL § 33.13 (c) (9) (vii).  Unlike the standard required for release of confidential information in other contexts, release of information about Article 10 patients need not be justified by imminent danger, and confidential information can be disseminated not only to law enforcement agencies and possibly endangered individuals, but also to the public at large.  Compl. ¶¶ 31-36.

<u>ARGUMENT</u>

A party seeking a preliminary injunction must establish that it will be irreparably injured if the injunction is not issued, and, in addition, "either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships decidedly tipped in the movant's favor." *Green Party of New York State v. New York State Board of Elections*, 389 F.3d 411, 418 (2d Cir. 2004). In general, where a complaint alleges the denial of a constitutional right, irreparable harm will be presumed. *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) (*citing* 11 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2948).

As to each of the sections of the new law that Plaintiff seeks to enjoin, it can demonstrate a likelihood that it will succeed on the merits of its underlying constitutional claim. Furthermore, as to each challenged provision, Plaintiff can demonstrate both irreparable harm to its constituent clients and a balance of hardships tipping decidedly in their favor. For simplicity, each challenged provision of the Act is discussed in turn.

<u>I. New Mental Hygiene Law § 10.06 (f): Unreviewable Detention under Securing Petition</u>

"In our society, liberty is the norm and detention without trial is the carefully limited exception." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (*citing United States v. Salerno*, 481 U.S. 739, 755 (1987)). New Mental Hygiene Law § 10.06 (f) expands the limitations traditionally imposed on detention without trial by creating a new mechanism, a "securing petition," which permits the Attorney General to unilaterally authorize the continuing detention of any "detained sex offender" beyond the point at which he would otherwise be entitled to his liberty. When such a securing petition is filed, there has been no finding of probable cause that the individual is a "sex offender subject to civil management" in the meaning of Article 10. Indeed, the Act

expressly prohibits any inquiry into whether there is probable cause to believe that an individual is a "sex offender subject to civil management" while the securing petition is in effect.  MHL § 10.06 (f).[1]

"[H]istory and common sense teach us that an unchecked system of detention carries the potential to become a means of oppression and abuse."  *Hamdi*, 542 U.S. at 530.  But under § 10.06 (f), the Attorney General may effect the prolonged detention of an individual by means of a securing petition with no notice to the individual, nor any opportunity for that person to challenge the continuing detention.  "The core of due process is the right to notice and an opportunity to be heard."  *LaChance v. Erikson*, 522 U.S. 262, 266 (1998); *see also Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) ("For more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard, and in order that they may enjoy that right they must first be notified.") (citation omitted).  In the absence of even basic procedural protections, new MHL § 10.06 (f) simply cannot comport with due process of law.

The constituents will be irreparably injured if they are erroneously deprived of physical liberty without due process of law.  Even assuming that it were possible for individual constituents to recover monetary damages for their lost liberty–at best an unlikely proposition, in view of the principles of immunity that would apply– the loss of liberty occasioned by

---

[1]The Act does not define "securing petition," nor specify where or how a "securing petition" is filed.  MHL § 10.06 (f).  It does, however, specify that following the filing of the securing petition, "there shall be no probable cause hearing until such time as the case review team may find that the respondent is a sex offender requiring civil management."  *Id.*  The Act places no limitations on how much time the case review team may spend in making this determination.

application of new MHL § 10.06 (f) is an injury that cannot adequately be recompensed with monetary damages calculated after the fact. *See Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986) ("[M]onetary damages for . . . loss of liberty would not only be difficult to ascertain, but would, in any event, constitute inadequate recompense."). For this reason, a preliminary injunction should issue prohibiting the use of "securing petitions" under MHL § 10.06 (f).

## II.  New Mental Hygiene Law § 10.07 (c): commitment based on "sexual motivation" for non-sex crimes

Persons not convicted of a sex offense may be subject to commitment under the Act if it is determined that their underlying felony was committed with a "sexual motivation." MHL § 10.03 (g) (4). Plaintiff does not challenge this provision as it relates to persons convicted after the effective date of the Act, who, by the terms of the Act, must be indicted for a "sexually motivated" offense and convicted, beyond a reasonable doubt, of the requisite motivation. Compl. ¶ 8. However, Plaintiff seeks to enjoin the retroactive application of § 10.03 (g) (4) to persons convicted of non-sex felonies before the effective date of the Act, and the last sentence of MHL § 10.07 (c), which permits the retroactive determination that a non-sex crime was, in fact, "sexually motivated," without requiring that such a "sexual motivation" be demonstrated beyond a reasonable doubt. Plaintiff is likely to succeed in its challenge to §§ 10.07 (c) and 10.03 (g) (4) on both due process and equal protection grounds.

### A.  Due Process

The adequacy of the procedures a State has utilized in depriving an individual of a protected liberty interest is usually evaluated using the three-part balancing test articulated by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976) under which a court must weigh:

> [f]irst, the private interest that will be affected by the official
> action; second, the risk of an erroneous deprivation of such interest
> through the procedures used, and the probable value, if any, of
> additional or substitute procedural safeguards; and finally the
> Government's interest, including the function involved and the
> fiscal and administrative burdens that the substitute or additional
> procedural requirements would entail.

*Mathews  v. Eldridge*, 424 U.S. at 335.

The first private interest at stake here is the individual's interest in physical liberty, which can be curtailed under Article 10 only upon the determination that the individual's underlying crime was "sexually motivated."  The interest in physical liberty is fundamental.  *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("We have always been careful not to minimize the importance and fundamental nature of the individual's right to liberty.") (citation omitted). Indeed, commitment to a secure facility operated under Article 10 may present an increased infringement on individual liberty because individuals committed pursuant to Article 10 are subject to mandatory psychiatric treatment and behavior modification programs and are housed in secure facilities that do not allow for any type of furlough with security services provided, at least in part, by Department of Corrections staff. MHL § 10.10 (d) (security services may be provided by Department of Corrections); MHL § 10.10 (f) (no furloughs);[2]  *see also Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (harsh conditions of confinement can give rise to a liberty interest in their avoidance); *Vitek v. Jones*, 445 U.S. 480, 492 (1980) (individual has interest in avoiding compelled psychiatric treatment and behavior modification programs).

---

[2]New MHL §  7.18 notes specifically that these "Article 10 secure treatment facilities shall be considered separate and distinct facilities and shall not be considered or defined as hospitals." This is in stark contrast to other psychiatric hospitals operated by OMH, both secure and non-secure, which, under MHL § 7.17(b) are considered "hospitals."

The second important private interest is the individual's interest in not being branded a sex offender. "An inmate who has never been convicted of a sex crime is entitled to due process before the state declares him to be a sex offender." *Kirby v. Siegelman*, 195 F.3d 1285, 1292 (11th Cir. 1999); *see also Neal v. Shimoda*, 131 F.3d 818, 829 (9th Cir. 1997); *Coleman v. Dretke*, 395 F.3d 216, 222-23 (5th Cir. 2004); *Chambers v. Colorado Dep't of Corr.*, 205 F.3d 1237, 1242-43 (10th Cir. 2000) (all recognizing liberty interest in not being designated a "sex offender" absent sex offense conviction).

Although these individual interests may be curtailed with appropriate procedural protections, the procedural safeguards afforded to the constituents here are inadequate to protect their interests. For persons convicted of non-sex crimes before the Act's effective date, a "sexual motivation" for the underlying offense need never be proven beyond a reasonable doubt, only by clear and convincing evidence. MHL § 10.07 (c), (d). Furthermore, the jury charged with making the retroactive determination about whether a past crime was "sexually motivated" is the same jury that will hear evidence as to the individual's alleged "mental abnormality," *id.*, evidence that is all but guaranteed to taint the determination of the "sexual motivation" question.[3]

The finding that a prior felony was sexually motivated is a patently factual determination, based on the circumstances of the underlying crime. *See* Amended N.Y. Crim. Proc. L. § 130.91 (a sexually motivated felony is one committed "for the purpose, in whole or in substantial part, of

---

[3]The individual's ability to defend against a retroactive allegation that his non-sex conviction was "sexually motivated" is additionally hampered by the provision of the Act which requires the redaction of all documents given to defense counsel by the Attorney General, including those documents upon which the Article 10 prosecution relies, to omit all information about the victim's identity and whereabouts. MHL § 10.08 (d). It is therefore conceivable that someone could be charged under Article 10 as a "sexually motivated" offender without ever learning the identity of his alleged victim.

[the defendant's] own direct sexual gratification");  Amended N.Y. Crim. Proc. L. § 200.50 (7)

(e) (after effective date of Act, indictment must "assert facts supporting the allegation that the

offense was sexually motivated").  Sexual motivation is akin to a *mens rea* element of the

criminal proceeding in that it is based on "specific, knowable facts." *Addington v. Texas*, 441

U.S. 418, 430 (1979).

   A *mens rea* determination is routinely made beyond a reasonable doubt in criminal

proceedings, where the State must prove every element of a charged crime. *See In re Winship*,

397 U.S. 358, 364 (1970) ("[W]e explicitly hold that the Due Process Clause protects the accused

against conviction except upon proof beyond a reasonable doubt of every fact necessary to

constitute the crime with which he is charged."); s*ee also* N.Y. Penal Code § 15.15 (construction

of statutes with respect to mental culpability requirements).  Going forward, "sexual motivation"

will be a specific element of a charged crime if civil commitment is to affix to a non-sex crime

conviction.  Compl. ¶ 9.  Similar procedural safeguards are required for persons convicted prior

to the effective date of the Act, since a decreased burden of proof only increases the risk of an

erroneous deprivation.  *Cf. Addington*, 441 U.S. at 423-24 ("In a criminal case . . . the interests of

the defendant are of such magnitude that historically . . . they have been protected by standards of

proof designed to exclude as nearly as possible the likelihood of an erroneous judgment. . . . This

is accomplished by requiring under the Due Process Clause that the state prove the guilt of an

accused beyond a reasonable doubt.").

   The Government's interests, as set forth in the legislative findings that are part of the new

Act, also support equalizing the procedural safeguards of persons convicted of non-sex crimes

before the effective date of the Act with those afforded to persons convicted thereafter.  The

-10-

legislature found that "recidivistic sex offenders pose a danger to society that should be addressed through comprehensive programs of treatment and management." MHL § 10.01 (a); *see also* MHL § 10.01 (e) (discussing Act's creation of a "system for responding to recidivistic sex offenders"). But only those who whose crimes were truly motivated by a desire for sexual gratification are actually sex offenders, and only such persons will be amenable to the treatment program described in the Act. Furthermore, the State has a compelling interest in ensuring that non-sex offenders are not committed as sex offenders, both to preserve the integrity and appearance of fairness of the Act as a whole and to ensure that the State's resources are properly directed to those who actually are "recidivistic sex offenders."

"The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the jury concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" *Addington*, 441 U.S. at 423 (*citing Winship*, 397 U.S. at 370). As demonstrated by the fact that persons convicted henceforth will have their "sexual motivation" for non-sex crimes pled in the indictment and found by the criminal jury beyond a reasonable doubt, the highest degree of confidence is warranted before someone convicted of a non-sex crime is deemed to be a sex offender. This is consistent with the State's and the individual's interest in ensuring that only true "recidivistic sex offenders" are subject to the provisions of the Act. Thus the increased procedural protection of "proof beyond a reasonable doubt" of sexual motivation before a non-sex crime can serve as a predicate for civil commitment as a "sex offender" is required as a matter of due process.

B. Equal Protection

All persons convicted of non-sex crimes who are proposed for civil commitment based on an alleged "sexual motivation" for their underlying crimes constitute a group of similarly-situated persons.  Yet those convicted of their crimes after the effective date of the Act can be committed as sex offenders under Article 10 only if they were charged as "sexually motivated" offenders in the criminal indictment and found guilty of a "sexual motivation" by the criminal jury, beyond a reasonable doubt while persons convicted before the effective date of the Act are entitled only to a retroactive determination of their "motivation" by clear and convincing evidence.  There is no compelling reason why the same proof of "sexual motivation" beyond a reasonable doubt should not apply to both groups.

Because Article 10 commitment and stigmatization as a "sex offender" are substantial deprivations of liberty, the statute is subject to intermediate scrutiny and  the State must put forth a "compelling interest" in order to justify the differential burden of proof.  *See Francis v. Stone*, 221 F.3d 100, 111-12 (2d Cir. 2000) (finding that institutionalization by the State triggers intermediate scrutiny and there must be a "sufficiently compelling" governmental interest to justify disparate treatment of similarly situated persons); *see also Bernstein v. Pataki*, No. 06-0481-cv, __F.3d__ (2d Cir. Apr.3, 2007) (summary order) ("Where civilly committed persons allege they are being subjected to the denial of a fundamental right . . . intermediate scrutiny applies.").  The State cannot demonstrate such a "compelling interest."

The only thing that distinguishes persons convicted of non-sex crimes before the effective date of the Act from those convicted of non-sex crimes thereafter is the date of their conviction. The date of conviction has no relevance to the State's asserted interest in identifying "recidivistic

sex offenders [who] pose a danger to society." MHL § 10.01 (a). Civil confinement pursuant to Article 10 is intended to be limited to "sex offenders" specifically. Allowing a decreased burden of proof for individuals who have previously committed non-sex offenses risks the over-inclusive application of Article 10 to non-sex offenders, and the State's interest is best served by applying the "beyond a reasonable doubt" standard to any retroactive determination of sexual motivation.

Because the State has no valid interest in retroactively denominating persons never convicted of sex crimes as "sex offenders" absent the clearest evidence that their non-sex crimes were "sexually motivated," Plaintiff is likely to succeed on the merits of its equal protection claim.

C.  Irreparable Harm

Though irreparable harm is generally presumed when a constitutional violation is alleged, in this instance there is additional, unique harm threatened by the application of the Article 10 provisions to individuals who are not convicted of sex crimes or of "sexual motivation" for non-sex felonies. Specifically, there is additional stigma associated with being branded a "sex offender" in the absence of a sex offense conviction. *See Neal*, 131 F.3d at 829 ("We can hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender.").  The stigma of being branded a "sex offender" is a harm that cannot be retroactively remedied or assuaged. *See Doe v. Pataki*, 919 F.Supp. 691, 698 (S.D.N.Y. 1996) (public stigma of "sex offender" label cannot be remedied with monetary damages; preliminary injunction was warranted) (rev'd on other grounds, 120 F.3d 1263 (2d Cir. 1997)). *See also Roig v. Puerto Rico Nat'l Guard*, 47 F.Supp.2d 216, 222 (D. Puerto Rico 1999) ("[O]nce one's reputation has been stained, damages rarely fully restore it to its original pristine

quality."). Thus, a preliminary injunction is warranted on these claims.

III.  New Mental Hygiene Law §§ 10.06 (j) (iii) & 10.07 (d): Commitment of Persons Found Incompetent to Stand Trial

A person need not have been convicted of any crime to be subject to commitment as a sex offender.  The Act contemplates that persons charged with crimes, but found incompetent to stand trial ("CPL 730 defendants," after the provision of the New York Criminal Procedure Law relating to their identification) are subject to civil commitment as sex offenders.  MHL §10.03(g)(2).  Under the Act, a court can find probable cause that a person is a sex offender in need of civil management, which finding carries with it mandatory confinement pending trial , *see* MHL §10.06(k)(iii), without any finding that the person committed the underlying criminal act alleged.  Indeed, the court is expressly precluded from making any inquiry into whether the person committed the conduct constituting the offense alleged. MHL ss 10.06 (j) (iii).  Furthermore, at the eventual Article 10 trial, the State need only prove by clear and convincing evidence that the incompetent CPL 730 defendant, in fact, committed the crimes with which he was charged; his guilt is never proven beyond a reasonable doubt.  MHL §10.07 (d).

Involuntary psychiatric confinement constitutes a  "massive curtailment of liberty," *Humphrey v. Cady,* 405 US 504 (1972), and evaluation of the constitutionality of the provisions of Article 10 requires a heightened level of scrutiny.  *See O'Connor v. Donaldson,* 422 U.S. 563, 580 (1975) (Burger, concurring); *Vitek v. Jones,* 445 U.S. 480, 491-492 (1980).  New MHL §10.06(j) is fatally flawed at the probable cause stage because Article 730 defendants can be detained pending an Article 10 trial without any finding that they committed the underlying offense charged and without any opportunity to contest the commission of the underlying offense

-14-

charged.   This procedure at the probable cause stage violates the respondent's due process rights as guaranteed by the 14th amendment to the United States Constitution.

The procedures codified in New York stand in stark contrast with other State schemes. For instance, the Kansas statutory scheme reviewed by the United States Supreme Court in *Kansas v. Hendricks*, 521 U.S. 346 (1997), persons found incompetent to stand trial can be civilly committed as a sex offenders only after a separate hearing at which the state must prove, beyond a reasonable doubt, that the incompetent person in fact committed the criminal acts charged.  Kan. Stat. Ann. 59-29a07 (g).  At the hearing, the rules of evidence applicable in criminal cases apply, and the incompetent person is entitled to all constitutional rights available to defendants at criminal trials, other than the right not to be tried while incompetent.  *Id.* However, in recognition of the limitations posed by the individual's incompetence, a court in Kansas is required to make specific findings as to the extent to which the person's incompetence or developmental disability affected the outcome of the hearing, including its effect on the person's ability to consult with and assist counsel or to testify on his own behalf.  *Id.*  Not only does the new law contain no procedural protections that would specifically account for the incompetent person's functional limitations, but it actually permits such persons to be committed as sex offenders on a lower standard of proof of the underlying criminal acts than that applied to all other persons.  *Compare* MHL § 10.07 (d) *with Cooper v. Oklahoma*, 517 U.S. 348, 369 (1996) ("Because Oklahoma's procedural rule allows the State to put to trial one who is more likely than not incompetent, the rule is not compatible with the dictates of due process.").

Not only are the due process rights of the Article 730 defendants violated by the Act, but the Act also violates the Article 730 defendants' right to equal protection of the law.  At the

probable cause stage of the proceeding, Article 730 defendants may be detained pending an Article 10 trial without any finding that they committed the underlying offense charged, *see* MHL §10.06 (j), while all other persons to whom the Act applies have been convicted of an underlying criminal offense, or (in the case of persons found not responsible by reason of mental disease or defect) have been found to have committed all of the elements of the offense charged.  Only Article 730 defendants are detained under Article 10 without any finding that they committed the offense charged.

Furthermore, under new MHL Article 10, CPL Article 730 defendants may be committed to long-term indefinite detention as sex offenders, even though it has never been proven beyond a reasonable doubt that they actually committed the underlying charged offense.  All other persons committed under Article 10 are convicted of the underlying criminal acts beyond a reasonable doubt or (in the case of persons found not responsible by reason of mental disease or defect) have been found beyond a reasonable doubt to have committed all of the elements of the offense charged.  *See* New York Criminal Procedure Law § 220.15(5)(a).

Where a civil commitment scheme is challenged on the grounds that it denies fundamental rights, such as here, intermediate scrutiny applies.  *See Bernstein,* Index No. 06-0481-cv; *Francis S.,* 221 F.3d at 111-112.  Where heightened scrutiny applies, the State statutory scheme will survive a constitutional challenge only if it can be demonstrated that the law is suitably tailored to serve a compelling State interest.  *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432 (1985).  In this case, the differential treatment of the CPL 730 defendants is not necessary to further any compelling governmental objective.

The irreparable harm that is worked by MHL §§ 10.06 (j) (iii) & 10.07 (d) of the new Act

-16-

is particularly magnified because the CPL 730 defendants who are affected have never been convicted of any crime.  Our system of justice has never countenanced a presumption of guilt where a person is incompetent to stand trial.  *See*, *e.g.*, *Drope v. Missouri*, 420 U.S. 162, 171 (1975) (discussing historical procedures for protecting right of incompetent persons to avoid trial).  Yet by providing for a judicial proceeding at which it is presumed that the 730 defendant has committed the conduct constituting the underlying criminal acts and he is expressly precluded from challenging his commission of that conduct, MHL § 10.06 (j) (iii) creates precisely such a presumption of guilt.  The irreparable harm wrought by a detention under this provision is harm not only to the individual, but also to our system of justice.  *Cf. Hamdi*, 542 U.S. at 532 ("It is equally vital that our calculus not give short shrift to the values that this country holds dear or to the privilege that is American citizenship.").

IV.  New Mental Hygiene Law § 10.06 (k): Commitment without proof of dangerousness

Within 30 days of the time that a petition is filed alleging that any person is a "sex offender requiring civil management," a hearing is required under the Act to determine whether probable cause exists to believe that such a person is, in fact, a "sex offender requiring civil management."  MHL § 10.06 (g).  A consequence of a finding of probable cause is mandatory detention in a sex offender facility until the completion of the trial prescribed under Article 10. This probable cause finding is directed only at whether the individual is a "sex offender requiring civil management." MHL § 10.06 (k).

But a finding that a person is a "sex offender requiring civil management" does not encompass any finding as to whether the person requires secure confinement.  *Compare* Ex. A at Mental Hygiene Law § 10.03 (q), (r) (definition of "dangerous sex offender civil management"

-17-

includes person who requires outpatient supervision "but is not a dangerous sex offender requiring confinement."). Thus, a finding of probable cause to believe that a person is a "sex offender requiring civil management" is not a finding that the person is currently dangerous.

As the Supreme Court has repeatedly held, civil detention predicated on mental illness (or mental abnormality) is valid only where the person committed presents a current danger to himself or others. *O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975); *Foucha v. Louisiana*, 504 U.S. 71, 77 (1992); *see also Kansas v. Crane*, 534 U.S. 407, 410-411 (2002) (discussing "mental abnormality" commitments). But mandatory confinement in a sex offender treatment facility in the jurisdiction of the Office of Mental Health is authorized under § 10.06 (k) without any consideration of present dangerousness. Even a temporary mental health confinement, without any attendant dangerousness determination, abridges the rights of the persons so confined. *O'Connor*, 422 U.S. at 575 ("Mere public intolerance or animosity cannot constitutionally justify the deprivation of a person's physical liberty.").

Presumably, just as pretrial detention is justified in criminal cases regardless of a person's mental health status, based solely on the danger that he presents to the community, *see Salerno*, 481 U.S. 739, the State would likewise be justified in detaining persons pending trial, regardless of their mental health status, if it could be shown that they currently present a danger to the community. But such detention would be authorized only upon a hearing at which the State would bear the burden of proving that the individual posed a "specific and articulable threat to an individual or the community," *id.* at 751; *see also Foucha*, 504 U.S. at 80-82. Here, detention pending trial is mandatory without *any* finding of dangerousness, let alone a "specific and articulable threat." Detention under these circumstances violates the detainee's substantive and

procedural due process rights.

<u>V.  New Mental Hygiene Law §§ 10.05 (e) & 10.08 (g): Psychiatric Examination in the absence of Counsel</u>

Under the Act, once a person has been referred to the case review team–a referral which does not carry with it any determination that the individual is actually a "sex offender in need of civil management,"  – the Act permits the case review team to require any alleged offender to undergo an involuntary psychiatric examination.  *See* MHL § 10.05 (e).  Any statements made during this examination are admissible in any future Article 10 proceeding.  MHL § 10.08 (a).  Furthermore, failure to cooperate with the examination can result in an adverse jury charge.  MHL § 10.07 (c).  The Act does not provide any form of notice to the alleged offender of the potential consequences of the examination, and indeed, it expressly prohibits counsel from being appointed to an indigent defendant at this stage of the proceedings.  *See* MHL § 10.08 (g).

Even beyond the consequences that the psychiatric examination ordered by the case review team can have within the Article 10 framework, "the forced intrusion of a[n involuntary] psychiatric exam" itself entails a "significant" loss of liberty.  *United States v. Davis*, 93 F.3d 1286, 1289 (6th Cir. 1996); *see also In re Johnson*, 699 A.2d 362, 372 (App. D.C. 1997) ("significant" liberty interest in avoiding compelled psychiatric examination).  The State's failure to provide counsel or notice of the consequences of participation versus non-cooperation in cases where the case review team orders a psychiatric evaluation before an Article 10 petition has been filed violates the MHLS constituents' Due Process rights.

VI.  New Mental Hygiene Law § 33.13 (c) (9) (vii)

"It is well established that the individual right to privacy is protected by the Due Process

Clause of the Fourteenth Amendment."  *O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005).

One component of the right to privacy has been termed a "right to confidentiality," and, in this

circuit, it specifically protects medical information and records from unwarranted disclosure.

*O'Connor*, 426 F.3d at 201 ("Medical information in general, and information about a person's

psychiatric health . . . in particular, is information of the most intimate kind."); *see also Doe v.*

*City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) ("[T]he right to confidentiality includes the

right to protection regarding information about the state of one's health.").  In keeping with the

constitutional right to privacy, New York law normally protects civilly committed persons

against the release of medical records, psychiatric clinical records, and any information tending

to identify a person as a psychiatric patient.  *See* N.Y. Mental Hygiene Law § 33.13 (c).

The confidentiality provisions of the Mental Hygiene Law contain narrow exceptions

permitting the release of information to any endangered individual, and to law enforcement

agencies, when a patient's treating doctor believes that he presents a serious and imminent

danger to another, *see* § 33.13 (c) (6), and to "appropriate persons and entities when necessary to

prevent imminent serious harm" to the patient himself or to any other person, § 33.13 (c) (9) (v).

Under the new Act, the confidentiality provisions of the Mental Hygiene Law are considerably

relaxed with regard to Article 10 sex offenders.  The Act amends Mental Hygiene Law § 33.13 to

permit the release of confidential clinical information to any "appropriate person [or] entity"

whenever it is deemed "necessary to protect the public concerning a specific sex offender."  *See*

MHL § 33.13 (c) (9) (vii).  There is no requirement of imminent danger, as under the prior

-20-

provisions of § 33.13. Indeed, the revised § 33.13 (c) (9) (vii) is broad enough to permit the release of confidential medical information if persons having access to that information disagree with a judge's determination that a particular offender is adequately controlled by strict and intensive outpatient supervision, or to permit the release of confidential clinical records to the press, if such broad dissemination is deemed "necessary to protect the public."

Right to confidentiality claims are typically analyzed as substantive due process claims. *See, e.g., Febres v. City of New York*, 238 F.R.D. 377, 384 (S.D.N.Y. 2006) (pleading right-to-confidentiality claim under substantive due process heading). Where it is alleged that legislation burdens protected privacy rights, intermediate scrutiny is applied and a statute may be upheld only if a substantial government interest outweighs the burdened privacy right. *O'Connor*, 426 F.3d at 202-03. Here, the State cannot satisfy this test. Numerous other provisions of law strike an appropriate balance between the State interest in public safety and the individual's privacy interest by limiting the release of confidential information to those situations where there is imminent danger, *see* MHL §§ 33.13 (c) (6) & (9) (v), or by limiting the scope of the release of information to those persons who have a specific, valid need for it, *see* new MHL §§ 10.08 (c); 10.10 (g). New MHL § 33.13 (c) (9) (vii) makes no similar attempt to accommodate the important individual privacy interests here at stake. By permitting the release of any and all confidential clinical information to any and all persons, the Act minimizes the importance of the privacy interests at stake. The State has no substantial or compelling need for such broad release of information.

-21-

CONCLUSION

Because MHLS's constituents will be irreparably harmed by the challenged provisions of the "sex offender management and treatment act" if an injunction does not issue, this Court should issue such an injunction, limited to the challenged portions of the Act.  Such an injunction would not prevent the State from continuing to civilly commit sex offenders utilizing the procedures prescribed in the Act and not challenged herein.  A temporary restraining order is requested pending a final determination on the preliminary injunction motion to prevent irreparable harm to MHLS's constituents while these issues are under consideration.

Dated: April 16, 2007
       New York, New York

                              MARVIN BERNSTEIN, Director
                              Mental Hygiene Legal Service, First Department
                              SIDNEY HIRSCHFELD, Director
                              Mental Hygiene Legal Service, Second Department
                                 S/
                              _____
                              By: Sadie Zea Ishee (SI-9540)
                              Senior Staff Attorney
                              Dennis Feld (DF-2803)
                              Deputy Director of Special Litigation and Appeals
                              60 Madison Avenue, 2nd Floor
                              New York, New York 10010
                              Phone:  (212) 779-1734