UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MENTAL HYGIENE LEGAL SERVICE,

     Plaintiff,

  - against -

ELIOT SPITZER, in his official capacity as Governor of
the State of New York, ANDREW CUOMO, in his
official capacity as Attorney General of the State of New
York, MICHAEL HOGAN, in his official capacity as
Commissioner of the New York State Office of Mental
Health, DIANA JONES RITTER, in her official capacity
as Commissioner of the New York State Office of Mental
Retardation and Developmental Disabilities, and BRIAN
FISCHER, in his official capacity as Commissioner of
the New York State Department of Correctional Services,

     Defendants.

Docket Number 07-CV-2935
(GEL) (THK)

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
MOTION FOR A PRELIMINARY INJUNCTION AND IN
SUPPORT OF MOTION TO DISMISS COMPLAINT**

ANDREW M. CUOMO
Attorney General of the State of New York
Attorney for Defendants
120 Broadway, 24th Floor
New York, New York 10271
Tel. No. (212) 416-8641

EDWARD J. CURTIS, JR.
BRUCE McHALE
Assistant Attorneys General
of Counsel

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.  Statutory Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.  The Determination That A Detainee Is A Sex Offender Requiring Civil
    Management . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

C.  The Sex Offender Civil Management Petition And The Probable Cause Hearing  . . . . . . . . 3

D.  The Jury Trial To Determine Whether Respondent Is A Sex Offender Requiring
    Civil Management . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

E.  Proceedings Since The Act Became Effective . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

F. Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

POINT I    PLAINTIFF FAILS TO ESTABLISH THAT THE "DRASTIC REMEDY"
           OF A PRELIMINARY INJUNCTION IS NECESSARY TO PRESERVE
           ITS CONSTITUENTS' RIGHTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A.  The Securing Petition Reasonably Protects Both The Public And Respondents'
    Constitutional Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

B.  The Determination That A Designated Felony Was "Sexually Motivated" Is Consistent
    With A Respondent's Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        1. The Procedural Safeguards Afforded Respondents Are Adequate To Protect Their
           Liberty Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        2. No Denial Of Respondents' Equal Protection Rights Is Effected Through The
           Finding That A Designated Felony Was Sexually Motivated . . . . . . . . . . . . . . . . . . 14

i

C. The Commitment Of Sex Offenders Found Incapacitated To Stand Trial Ensures That The Offenders Are Properly Managed And That The Public Is Protected . . . . . . . . . . . . . . . . . . . 19

    1. The Re-Litigation Bar On An Incapacitated Criminal Defendant's Indictment Violates No Right . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    2. Civil Commitment For Treatment Purposes Can Be Supported By A Lower Standard Of Proof Than Criminal Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

D. Respondents' Constitutional Rights Are Not Violated By Their Confinement Pending Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

E. No Right To Counsel Is Involved In The Case Review Team's Discretionary Psychiatric Examination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

F. No Right To Confidentiality Is Impaired By The Act's Authorization To Release Clinical Information To Protect The Public From A Specific Sex Offender . . . . . . . . . . . . . . . . . . . 25

POINT II   THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION . . . . . . . . . . . . . 28

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page**

Able v. United States, 44 F.3d 128 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Addington v. Texas, 441 U.S. 418 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 13, 21

Bronx Household of Faith v. Community School District,
        331 F.3d 342 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Chan v. Pataki, 201 F.3d 430 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Charles W. v. Maul, 214 F.3d 350 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13, 29

Cincotta v. New York City Human Resources Admin., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
2001 U.S. Dist. LEXIS 11457, at *28 (SDNY Aug.  9, 2001)

City of Cleburne v. Cleburne Living Center, 473 U.S. 432 (1985) . . . . . . . . . . . . . . . . . . . 14, 15

Cooper v. Oklahoma, 517 U.S. 348 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Doe v. City of New York, 15 F.3d 264 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Doe v. Moore, 410 F.3d 1337 (11th Cir. 2005) cert. denied 546 U.S. 1003 (2005) . . . . . . . . . 16

Doe v. Pataki, 120 F.3d 1263 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council,
        485 U.S. 568 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Empire HealthChoice Assur., Inc. v. McVeigh, 396 F.3d 136 (2d Cir. 2005) . . . . . . . . . . . . . . 7

Field Day, LLC v. County of Suffolk, 463 F.3d 167 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . 7

Foucha v. Louisiana, 504 U.S. 71 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Francis S. v. Stone, 221 F.3d 100 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Gunderson v. Hvass, 339 F.3d 639 (3d Cir. 2003) cert. denied, 540 U.S. 1124 (2004) . . . . . . 16

Heller v. Doe, 509 U.S. 312 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**Cases**                                                                          **Page**

Hubbart v. Knapp, 379 F.3d 773 (9th Cir. 2004) cert. denied, 543 U.S. 1071 (2005)  . . . . . . . . 22

Kansas v. Crane, 534 U.S. 407 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 28

Kansas v. Hendricks, 521 U.S. 346 (1997)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17, 21, 28

Marshall v. Switzer, 900 F. Supp. 604, 615 (NDNY 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Mathews v. Eldridge, 424 U.S. 319 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Matter of Johnson, 699 A.2d 362 (App. D.C. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Mazurek v. Armstrong, 520 U.S. 968 (1997)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Meyer v. State of New Jersey, 2006 U.S. Dist. LEXIS 51394 (D.N.J. 2006) . . . . . . . . . . . . . . 22

Minnesota ex rel. Pearson v. Probate Court of Ramsey County,
      309 U.S. 270 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17

O'Connor v. Pierson, 426 F.2d 197 (2d Cir. 2005)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Parham v. J.R., 442 U.S. 584 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

People v. Kohl, 72 N.Y.2d 191 (1988)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

People v. Taylor, 2007 NY Slip Op 3111; 2007 N.Y. App. Div. LEXIS 4538
      (2d Dept. April 10, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Poole v. O'Keefe, 2002 U.S. Dist. LEXIS 6534 (D. Minn. 2002) . . . . . . . . . . . . . . . . . . . . . . 22

Powell v. Schriver, 175 F.3d 107 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Project Release v. Prevost, 722 F.2d 960 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Rodriquez v. DeBuono, 175 F.3d 227 (2d Cir. 1999)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Romeu v. Cohen, 121 F. Supp. 2d 264 (SDNY 2000), aff'd, 265 F.3d 118 (2d Cir. 2001) . . . . . 29

Seling v. Young, 531 U.S. 250 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Smith v. Doe, 538 U.S. 84 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Cases**                                                                                                          **Page**

Statharos v. New York City Taxi and Limousine Commission,
    198 F.3d 317 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Eisenbud v. Suffolk County, 841 F.2d 42 (2d Cir 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Strong v. Board of Education, 902 F.2d 208 (2d Cir.), cert. denied, 498 U.S. 897 (1990) . . . . . 27

Ughetto v. Acrish, 130 A.D.2d 12 (2d Dep't 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

United States v. Davis, 92 F.3d 1286 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

United States v. New York, 2007 U.S. Dist. LEXIS 21722 (NDNY March 27, 2007) . . . . . . . 30

United States v. Salerno, 481 U.S. 739 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 17, 29

United States v. Ward, 448 U.S. 242 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Wang v. Pataki, 164 F. Supp. 2d 406 (SDNY 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Warden v. Pataki, 35 F. Supp. 2d 354 (SDNY 1999), aff'd sub nom . . . . . . . . . . . . . . . . . . . . 29

Whalen v. Roe, 429 U.S. 589 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**Federal Statutes**

Title 42, United States Code, Section 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
Federal Rule of Civil Procedure ("FRCP") 12 (b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
FRCP 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**State Statutes**

Mental Health Law ("MHL")
Article 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Article 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
 9.31(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
 9.39(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
 9.40(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
 9.43 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
 10.01(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2
 10.01(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
 10.01(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Statute**                                                                                         **Page**

10.01(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
10.03(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3
10.03(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4
10.03(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11, 14
10.03(n) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
10.03(p) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
10.03(q) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 24
10.03(s) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
10.05(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
10.05(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5, 22
10.05(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21
10.05(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
10.05(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
10.05(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
10.05(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10
10.06 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9
10.06(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
10.06(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 10
10.06(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9
10.06(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8
10.06(j) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
10.06(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
10.07(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
10.07(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
10.07(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11, 14, 21
10.07(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5
10.07(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
10.07(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
10.08(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
10.10(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
10.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
33.13(c)(9)(v) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27
33.13(c)(9)(vii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

Criminal Procedure Law ("CPL")

40.15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
70.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
70.20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
190.65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
190.75 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
330.20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

vi

**Statute**                                                                                                    **Page**

CPL 730.60 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CPL Article 730 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## PRELIMINARY STATEMENT

This memorandum of law is submitted on behalf of Defendants: 1) in opposition to the motion of Plaintiff MENTAL HYGIENE LEGAL SERVICE ("MHLS") pursuant to Rule 65 of the Federal Rules of Civil Procedure ("FRCP") for a preliminary injunction and a temporary restraining order enjoining Defendants from enforcing certain provisions of New York State's "Sex Offender Management and Treatment Act" codified at Article 10 of the New York State Mental Hygiene Law ("MHL") and 2) in support of Defendants' motion pursuant to FRCP 12 (b)(6) for dismissal of the Complaint dated April 12, 2007 ("Complaint").

## STATEMENT OF FACTS

### A. Statutory Background

On March 14, 2007, Governor Eliot Spitzer signed the Sex Offender Management and Treatment Act ("SOMTA" or "the Act") Chapter 7 of the Laws of 2007, which became effective one month later, on April 13, 2007. In the Legislative Findings accompanying the Act, the Legislature found that "recidivistic sex offenders pose a danger to society that should be addressed through comprehensive programs of treatment and management." MHL 10.01 (a). Some sex offenders, the Legislature continued, suffer from mental abnormalities which require specialized treatment that should begin during the offenders' incarceration and which might require that they be civilly committed after completing their prison terms or other confinement. Id. at (b). Other sex offenders might be appropriate for outpatient supervision. Id. at (c). The Legislature designed a system through which detained sex offenders nearing completion of their incarceration or other confinement would be evaluated to determine their need for management or treatment.

**B. The Determination That A Detainee Is A Sex Offender Requiring Civil Management**

SOMTA affects sex offenders who are detained by the Department of Correctional Services ("DOCS"), the Office of Mental Health ("OMH"), the Office of Mental Retardation and Developmental Disabilities ("OMRDD"), or who are being supervised by the Division of Parole ("Parole").[1] MHL 10.03 (a), (g), 10.05 (b). A detained sex offender can be, among other things, a person convicted of a sex offense, a criminal defendant charged with a sex offense but who lacked capacity to stand trial and was committed pursuant to Criminal Procedure Law ("CPL") Article 730, or a criminal defendant charged with a sex offense who was found not responsible by reason of mental disease or defect and was committed pursuant to CPL 330.20. MHL 10.03 (g).

When it appears to DOCS, OMH or OMRDD that a detainee who might be a sex offender is nearing release from the care or custody of the agency, the agency is required to give notice of that fact to the Commissioner of OMH and to the Office of the Attorney General ("OAG"). Id. If Parole is supervising a sex offender who is nearing release from its supervision, it may give notice of that fact to the Commissioner of OMH and OAG. Id. The notice to the OAG and Commissioner includes a description of the acts constituting the sex offense; the person's criminal history, most recent sentence and supervisory terms; the presentence report and other available information regarding the sex offense, and; the person's institutional history and any participation in a sex offender treatment program. MHL 10.05 (c).

---

[1] This summary of SOMTA is intended only to assist this Court in understanding Plaintiff's claim and Defendants' response. It is not intended to be a comprehensive description of SOMTA's provisions.

A preliminary review by a multidisciplinary staff of clinical and professional personnel assesses relevant medical, clinical, criminal institutional, and other pertinent risk assessment records. MHL 10.05(d). If the multidisciplinary staff determines that the person may be a sex offender needing civil management, the staff will refer the case to a Case Review Team ("CRT"). Id. If a person is referred to a CRT, that person is thereafter referred to as a "respondent." MHL 10.03 (n).

Following the staff referral, the CRT reviews the respondent's records and may arrange for a psychiatric examination of the respondent. MHL 10.05 (a), (e). If the CRT determines that the respondent does not need civil management, it notifies the respondent and OAG. MHL 10.05 (f). If the CRT finds that the respondent is a sex offender requiring civil management, it notifies the respondent and OAG in writing. MHL 10.05 (g).

### C. The Sex Offender Civil Management Petition And The Probable Cause Hearing

If the CRT finds that a respondent is a sex offender requiring civil management, OAG may file a sex offender civil management petition with a court in the county where the respondent is located. MHL 10.06 (a). If following the MHL 10.05 (b) notice to the Commissioner and OAG it appears that a respondent may be released before the CRT makes its determination, OAG may file a securing petition if the OAG determines that the protection of public safety so requires. MHL 10.06 (f). If a securing petition is filed, no probable cause hearing may be held before the CRT makes its determination. Id. If the CRT determines that the respondent is not a sex offender requiring civil management, OAG will inform the court, which shall dismiss the securing petition. Id.

Within thirty days of the filing of a civil management petition, the court is to conduct a

hearing to determine if there is probable cause to believe that the respondent is a sex offender requiring civil management. MHL 10.06 (g). This requires a finding of probable cause to believe that the respondent is a detained sex offender and that he suffers from a mental abnormality. MHL 10.03 (i), (g). The respondent is to be confined from the filing of the petition through the probable cause hearing. MHL 10.06 (h). If the respondent was about to be released, or was released but was then confined pending the probable cause hearing, the hearing must commence within either seventy-two hours after the time the respondent would have been released or seventy-two hours after he was confined for the probable cause hearing. Id.

For the purposes of the probable cause hearing, respondent's commission of a sex offense will be deemed established and will not be relitigated if he was convicted of the offense, previously found not responsible for the offense by reason of mental disease or defect, or indicted for the offense by a grand jury but subsequently found to lack capacity to stand trial for the offense. MHL 10.06 (k).

If, after the hearing, the court finds that there is not probable cause to believe the respondent is a sex offender requiring civil management, the respondent is released in accordance with other provisions of law. Id. If the court finds that there is probable cause to believe respondent is a sex offender requiring civil management, respondent is confined in a secure treatment facility pending a full trial. Id.

### D. The Jury Trial To Determine Whether Respondent Is A Sex Offender Requiring Civil Management

If there has been a finding of probable cause, a jury trial must be held within sixty days of the probable cause finding. MHL 10.06 (k), 10.07 (a). The respondent may waive a jury trial.

4

MHL 10.07 (b). The jury is composed of twelve jurors and must decide unanimously whether there is clear and convincing evidence that the respondent is a detained sex offender who suffers from a mental abnormality. MHL 10.07 (d). The respondent's commission of a sex offense is deemed established and will not be relitigated if the respondent was convicted of a sex offense or if the respondent was found not responsible for a sex offense by reason of mental disease or defect. MHL 10.07 (c). If the respondent committed a designated felony, the jury must determine whether the felony was sexually motivated. Id. If the respondent was indicted for a sex offense but did not have capacity to stand trial, the jury must determine whether there is clear and convincing evidence that the respondent engaged in the conduct constituting the offense. MHL 10.07 (d).

If the jury finds that OAG did not sustain its burden by clear and convincing evidence, the petition is dismissed and respondent is release in accordance with other provisions of law. MHL 10.07 (e). If the jury finds that the respondent is a detained sex offender who suffers from a mental abnormality, the court determines whether the respondent requires commitment to a secure treatment facility or a regimen of strict and intensive supervision and treatment. MHL 10.07 (f).

**E. Proceedings Since The Act Became Effective**

Between April 13, 2007, when SOMTA became effective, and May 31, 2007, there have been 199 MHL 10.05 (b) notices referred to the Multidisciplinary Team. Of this number, 175 referrals, or about 88 percent, have been received from DOCS, 22, or about 11 percent, have been received from Parole, and two, or about one percent, have been received from OMH. Statement of Richard Miraglia dated May 16, 2007 ("Miraglia Statement"), ¶ 7. Of the 199

referrals, 35, or about 17.6 percent, have been referred to the CRT. Id., ¶ 8. Of these 35, the CRT

found that 18, or 51 percent of the referrals to the CRT, and 9 percent of all referrals, have been

sex offenders requiring civil management. Id., ¶ 9. The CRT determined that 12, or 34 percent of

the referrals to the CRT, and 6 percent of all referrals, were not sex offenders requiring civil

management. Id., ¶ 10. The CRT is still awaiting the results of the examination of the

respondents in 5 cases, which are 14 percent of the referrals to the CRT, and 2.5 percent of all

referrals. Id., ¶ 11.

On Friday, April 13, 2007, the same day SOMTA became effective, OAG filed a securing

petition for a respondent. Statement of Edward J. Curtis, Jr., dated May 16, 2007 ("Curtis

Statement"), ¶ 14. The securing petition lasted to Monday, April 16, 2007, when OAG filed a sex

offender civil management petition for that respondent. Id. Since then, OAG has not filed a

securing petition. Id.

From April 13, 2007, to May 16, 2007, OAG has filed sixteen sex offender civil

management petitions. Id., ¶ 15. During that period, OAG has conducted six probable cause

hearings. Id., ¶ 16. In each hearing, probable cause was found that the respondent was a sex

offender requiring civil management. Id. One respondent waived the probable cause hearing. Id.

Of the seven cases in which there has been a probable cause hearing, all seven are scheduled for a

jury trial in June. Id., ¶ 17.

**F. Procedure**

On April 13, 2007, the day SOMTA became effective, the Complaint was served by

certified mail on the Defendants and personally upon OAG. On April 16, 2007, Plaintiff filed a

notice of motion for a preliminary injunction and a temporary restraining order.

**ARGUMENT**

**POINT I**

**PLAINTIFF FAILS TO ESTABLISH THAT THE "DRASTIC REMEDY"
OF A PRELIMINARY INJUNCTION IS NECESSARY TO PRESERVE
ITS CONSTITUENTS' RIGHTS**

Plaintiff has not met the high burden required to enjoin enforcement of the Act. A

preliminary injunction is "an extraordinary and drastic remedy ... that should not be granted

unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong,

520 U.S. 968, 972 (1997). Where, as here, a plaintiff seeks a preliminary injunction "that

commands a positive act that alters the status quo" and would "stay government action taken in

the public interest pursuant to a statutory or regulatory scheme" the plaintiff must demonstrate:

1) irreparable harm in the absence of an injunction, and 2) a "clear or substantial likelihood of

success on the merits." Bronx Household of Faith v. Community School District, 331 F.3d 342,

349 (2d Cir. 2003) (internal punctuation omitted); Rodriquez v. DeBuono, 175 F.3d 227, 233 (2d

Cir. 1999); Able v. United States, 44 F.3d 128 (2d Cir. 1995).

"A facial challenge to a legislative Act is ... the most difficult challenge to mount

successfully, since the challenger must establish that no set of circumstances exists under which

the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987) (finding Bail

Reform Act constitutional). A court must construe a statute in a way which avoids constitutional

problems unless such construction is plainly contrary to the intent of the Legislature. Field Day,

LLC v. County of Suffolk, 463 F.3d 167, 177 (2d Cir. 2006); Empire Health Choice Assur., Inc.

v. McVeigh, 396 F.3d 136, 144 (2d Cir. 2005); Edward J. DeBartolo Corp. v. Fla. Gulf Coast

Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988).

7

### A. The Securing Petition Reasonably Protects Both The Public And Respondents' Constitutional Rights

Plaintiff argues that the use of the securing petition to prevent the release of detainees who may be sex offenders requiring civil management deprives those detainees of liberty without due process of law. Pl. Mem. at 5-6. Plaintiff maintains that a securing petition may be filed without notice to the detainee and without affording the detainee an opportunity to challenge the continuing detention. Id. at 6. However, this argument considers the securing petition out of context. It is apparent from MHL 10.06 that the securing petition is to be used rarely. The securing petition allows OAG to retain a respondent in the facility where he is detained for a short time, only until the CRT has made the clinical determination that he is a sex offender requiring civil management, and makes its recommendation to the OAG. MHL 10.06 (f). Upon receipt of that recommendation, OAG can file a sex offender civil management petition, and if not, OAG can notify the court and have the securing petition dismissed. Id. If OAG files the petition, a probable cause hearing must be held within seventy-two hours. MHL 10.06 (h).

The interaction between the securing petition and the sex offender civil management petition is most clear in the requirement of paragraph (f) that the probable cause hearing not take place until the CRT determines whether the respondent is a sex offender requiring civil management. Contrary to Plaintiff's suggestion, Pl. Mem. at 5-6, the provision protects rather than injures the respondent by ensuring that upon issuance of the CRT evaluation there is a prompt determination of probable cause based on clinical evidence which supports the respondent's detention.

Commitment under New York law is dependent on the clinical determinations of

physicians, psychologists, and other clinicians. Absent such evidence a judge cannot commit a person under New York law. For example, under MHL 9.43, a judge can send a person to a hospital as provided in MHL 9.39 (a) or to a Comprehensive Psychiatric Emergency Program ("CPEP") as provided in MHL 9.40 (a), but only "for a determination by the director of such hospital or program whether such person should be retained therein pursuant to such section." Similarly, when a judge hears an application for a court order authorizing a patient's involuntary retention under MHL 9.31 (c), the judge "shall hear testimony and examine the person alleged to be mentally ill" -- not one or the other. See Charles W. v. Maul, 214 F.3d 350, 355 (2d Cir. 2000) (describing MHL Article 9 "civil commitment scheme"); see also Addington v. Texas, 441 U.S. 418, 430 (1979) ("Whether the individual is ... in need of confined therapy turns on the meaning of the facts which must be interpreted by expert psychiatrists and psychologists) (emphasis in original); Project Release v. Prevost, 722 F.2d 960 (2d Cir. 1983) (upholding the constitutionality of New York's civil commitment law). Thus, while the judge can determine whether the evidence used by physicians and other clinicians to commit a person is sufficient under the law, the judge must look to such clinical evidence in making that determination.

Once that reasoning is applied to MHL Article 10, it is apparent how the deferral on holding the probable cause hearing pending receipt of the CRT evaluation benefits the respondent. A MHL 10.06 hearing court is required to find probable cause that a respondent is a "sex offender requiring civil management," meaning that the respondent is a "detained sex offender" and that respondent suffers from a "mental abnormality." MHL 10.03 (q), 10.06 (g). The hearing court could make a probable cause determination with respect to whether the respondent is a "detained sex offender," but the determination of whether the respondent suffers

from a "mental abnormality" requires evidence from a psychiatric examiner. <u>See</u> MHL 10.05 (g) (CRT notice must include a psychiatric examiner's written report). Because the hearing court cannot hold the probable cause hearing until the CRT issues its finding, the hearing court is prevented from making a probable cause determination until it receives the clinical determination of the CRT.

Agencies giving notification to the Commissioner and OAG that a person nearing a release may be a detained sex offender subject to SOMTA should seek to provide such notice at least 120 days prior to the release.  The securing petition provisions come into play only after notice, where release may occur before the CRT issues its evaluation, and where based on information provided in the notice, the OAG determines "that the protection of public safety so requires." MHL 10.06 (f).  In those rare instances where a securing petition might be appropriate, the procedure would parallel the procedure for the sex offender civil management petition. Thus, the provisions for notice and an opportunity to be heard can reasonably be applied to both petitions. Accordingly, this Court should decline to impose a preliminary injunction enjoining the use of securing petitions.

### B. The Determination That A Designated Felony Was "Sexually Motivated" Is Consistent With A Respondent's Rights

Plaintiff argues on its preliminary injunction motion that the "retroactive determination" that a designated felony committed before the effective date of the Act was "sexually motivated" violates respondents' due process and equal protection rights. Pl. Mem. at 7.

10

## 1. The Procedural Safeguards Afforded Respondents Are Adequate To Protect Their Liberty Interest

A respondent who was convicted of a designated felony committed before the effective date of the Act may be found by the jury to be a detained sex offender who suffers from a mental abnormality if OAG proves by clear and convincing evidence that the felony was "sexually motivated." MHL 10.03 (i)(4), 10.07 (c). Plaintiff argues that the lower standard of proof deprives respondents of due process because the determination of whether the crime was "sexually motivated" is not proved beyond a reasonable doubt. Pl. Mem. at 9. Plaintiff contends that "[S]exual motivation is akin to a mens rea element of a criminal procedure in that it is based on 'specific, knowable facts.'" Pl. Mem. at 10, citing Addington v. Texas, 441 U.S. 418, 430 (1979) and In Re Winship, 397 U.S. 358, 364 (1970).

The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." The Due Process Clause protects persons from two types of government action. Substantive due process protects persons from government action which "shocks the conscience or which interferes with rights implicit in the concept of ordered liberty." United States v. Salerno, 481 U.S. at 746 (internal punctuation omitted). Procedural due process ensures that when government action deprives an individual of life, liberty, or property, it is accomplished in a fair manner. Id.

Evaluation of a procedural due process claim generally involves consideration of: 1) the private interest that will be affected; 2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and 3) the Government's interest, including the function involved and the fiscal and

11

administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976). In the context of mental health commitment

proceedings, these requirements may be fulfilled where there is an inquiry by a neutral fact finder

to determine whether the state's statutory requirements for admission have been satisfied, and due

process does not require even a formal or quasi-formal hearing. Parham v. J.R., 442 U.S. 584,

606-08, 617-18 (1979) (Procedures for commitment of minor children to state mental health

facilities meet due process requirements where, acting on request by parents or by the state, the

commitment decision is made by neutral and detached team of physicians who consider relevant

evidence and applicable state admission requirements).[2]

      Assuming a protected liberty interest, there is no showing here that respondents are

deprived of such an interest without adequate process. The array of protections, evaluations,

judicial determinations and necessary findings which are built into the legislative scheme provide

ample constitutional protections, at both the probable cause and trial stages. The statute provides

for pre-petition screening by qualified professionals, evaluation by a different set of professionals

on a case review team, notification to the respondent, and a formal adjudicative probable cause

hearing within thirty days following the filing of the petition, and a jury trial sixty days thereafter.

As the Second Circuit observed in Project Release v. Prevost, 722 F.2d 960, 975 (2d Cir. 1983),

upholding the constitutionality of New York involuntary civil commitment procedure, the

determination of whether a statutory scheme comports with procedural due process must

consider all of the layers of professional and judicial review and the notice provisions

---

      [2] Parham reminds that "due process is flexible and calls for such protections as the
particular situation demands." 442 at 608, n. 16 (emphasis in original) (internal citations
omitted).

(referencing Parham v. J.R., 442 U.S. at 606-09).

In Charles W. v. Maul, 214 F. 3d 350 (2d Cir. 2000) the Second Circuit upheld various CPL 730 provisions in finding there was no due process or equal protection violation where, during an order of observation period, an incapacitated misdemeanor defendant was involuntarily remanded to a State psychiatric hospital to consider dangerousness warranting invocation of civil commitment proceedings. The Second Circuit noted that an incapacitated defendant may be held pursuant to a finding that he or she lacks capacity for a reasonable time necessary to determine whether there is a substantial probability that he will attain capacity in the foreseeable future, 214 F. 3d at 358, citing Jackson v. Indiana, 406 U.S. 715, 738 (1972), and during this time may be evaluated for civil commitment. 214 F. 3d at 359. The court observed that New York's civil commitment scheme comports with due process requirements, id. at 360, citing Project Release, 722 F.2d 960, and that confinement for a limited time period to consider civil commitment serves legitimate government interests in caring for the mentally ill and promoting community safety. Id. at 359, citing Salerno, 481 U.S. 739.

Nor, contrary to Plaintiff's suggestion, does the existence of factual questions in a civil commitment proceeding change the standard of proof. In Addington, the Supreme Court noted that, "[t]here may be factual issues to resolve in a commitment proceeding, but the factual aspects represent only the beginning of the inquiry." 441 U.S. at 429. Here, the issue of whether the designated felony committed by the respondent was sexually motivated is only, as Addington notes, "an initial inquiry." Id. The respondent's need for treatment "turns on the meaning of the facts which must be interpreted by expert psychiatrists and psychologists." Id. Indeed, the Act specifically provides that:

13

In charging the jury, the court's instructions shall include the admonishment that the jury may not find solely on the basis of the respondent's commission of a sex offense that the respondent is a detained sex offender who suffers from a mental abnormality.

MHL 10.07 (d).

The Supreme Court found in <u>Addington</u> that the "clear and convincing" standard of proof was sufficient in civil commitment proceedings, 441 U.S. at 432-33, and, accordingly, the clear and convincing standard of proof adequately protects respondents' liberty interests here.

### 2. No Denial Of Respondents' Equal Protection Rights Is Effected Through The Finding That A Designated Felony Was Sexually Motivated.

A defendant charged with a designated, or specified, felony after the effective date of the Act must be found by the jury to have committed all the elements of a "sexually motivated felony" by proof beyond a reasonable doubt. Pl. Mem. at 12; <u>see also</u> L. 2007, c. 7, § 29 (amending the Penal Law to add two new sections 130.91 and 130.92) (reproduced on page 24 of Exhibit A of the Complaint); CPL 70.20 (requiring proof beyond a reasonable doubt). Respondents who have committed a designated felony prior to the effective date of the Act can be found to have committed the felony for a sexual motivation by clear and convincing proof. MHL 10.03 (i)(4), 10.07 (c). Plaintiff argues that the "only thing that distinguishes" respondents convicted before the effective date of the Act and defendants charged afterward "is the date of their conviction," and alleges that this denies respondents of equal protection of the law.

The Fourteenth Amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." This "is essentially a direction that all persons similarly situated should be treated alike." <u>City of Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985). "The general rule is that legislation is presumed to be

valid and will be sustained if the classification drawn by the statute is rationally related to a
legitimate state interest." Id. at 440. When a statute employs a suspect classification, such as race,
the statute will be subjected to a heightened standard of review. Id.

MHL Article 10 is subject to rational basis review. In Minnesota ex rel. Pearson v.
Probate Court of Ramsey County, 309 U.S. 270 (1940) the Supreme Court upheld a Minnesota
statute providing for the involuntary commitment of "psychopathic personalities," defined as a
person suffering from "emotional instability or impulsiveness of behavior, or lack of customary
standards of good judgment, or failure to appreciate the consequences of his acts, or a
combination of such conditions as to render such person irresponsible for his conduct with
respect to sexual matters and thereby dangerous to other persons." Id. at 272. The Court explicitly
ruled that such a state legislative determination withstands Fourteenth Amendment equal
protection and due process challenge if "there is any rational basis" for the statute, id. at 27.
Pearson has not been overruled, and the Court and has never indicated that rational basis does not
continue to be the proper standard for such statutes. Indeed, in Kansas v. Hendricks, 521 U.S.
346 (1997), in rejecting a due process challenge to the involuntary commitment provisions of the
Kansas Sexually Violent Predator Act, the Court cited Pearson with approval: "We have
sustained civil commitment statutes when they have coupled proof of dangerousness with the
proof of some additional factor, such as a 'mental illness' or 'mental abnormality.'. . . (Minnesota
statute permitting commitment of dangerous individual with "psychopathic personality")." Id. at
358 (internal citations omitted);.[3] see also People v. Taylor, 2007 NY Slip Op 3111; 2007 N.Y.

---

[3] Without reference to Pearson, the Court in City of Cleburne v. Cleburne Living Center,
supra, 473 U.S. at 443, rejected heightened scrutiny for an equal protection claim for legislative
classifications based on mental retardation under a rationale also pertinent here: "Heightened

App. Div. LEXIS 4538 (2d Dept. April 10, 2007) (application of New York Sex Offender Registration statute to an offender who has committed no sexual crime is not based on a suspect classification and is valid under applicable rational basis standard).

Contrary to Plaintiff's contention, the Second Circuit opinion in <u>Francis S. v. Stone</u>, 221 F. 3d 100 (2000) does not require application of a heightened scrutiny standard to plaintiff's blended equal protection and substantive due process challenge here. In <u>Francis S.</u> the Second Circuit reviewed denial of habeas corpus relief from a state court order recommitting a defendant for mental health treatment nine years after a Not Responsible by Reason of Mental Disease or Defect determination in a state court criminal case. After considering the then-new standard of review for habeas corpus petitions under the Antiterrorism and Effective Death Penalty Act, <u>id</u>. at 107, the court applied an intermediate scrutiny standard to the equal protection challenge to the recommitment order. <u>Id.</u> at 111. There was no sex offender/predator component in <u>Francis S</u>. and the court did not consider <u>Pearson</u>, <u>supra</u>, <u>Kansas v. Hendricks</u>, <u>supra</u>, or any Supreme Court or lower federal court rulings regarding sex offender statutes, a fact which Plaintiff ignores.

Since <u>Kansas v. Hendricks</u>, federal courts analyzing sex offender statutes have held that a legislative designation of dangerous sex offenders is not a suspect classification and is subject to a rational basis test. <u>Doe v. Moore</u>, 410 F.3d 1337, 1345-46 (11th Cir. 2005) <u>cert. denied</u> 546 U.S. 1003 (2005) (Florida sex offender registration statute subject to rational basis test); <u>Gunderson v. Hvass</u>, 339 F.3d 639, 643 (3d Cir. 2003) <u>cert. denied</u>, 540 U.S. 1124 (2004)

---

scrutiny inevitably involves substantive judgments about legislative decisions, and we doubt the predicate for such judicial oversight is present where the classification deals with mental retardation." Noting that the same analysis would apply to other classifications, including mental illness, the Court held that "legislation that distinguishes between the mentally retarded and others" is subject to a rational basis test. <u>Id</u>. at 446.

(rational basis is proper test for evaluating equal protection claims regarding sex offender statutes).

The New York law is consistent with that of Kansas and other state civil commitment statutes approved by the Supreme Court: "The Kansas Act is plainly of a kind with these other civil commitment statutes: It requires a finding of future dangerousness, and then links that finding to the existence of a 'mental abnormality' or 'personality disorder' that makes it difficult, if not impossible, for the person to control his dangerous behavior." Kansas v. Hendricks, 521 U.S. at 358.[4] These laws are constitutionally indistinguishable from the Minnesota legislative scheme approved under a rational basis test in Pearson. Applying the foregoing authorities to the New York statute leads to the conclusion that rational basis is the proper constitutional analytical standard.

The Supreme Court has consistently held that sex offender civil commitment statutes serve compelling public safety interests. See, e.g., Kansas v. Hendricks, supra; Kansas v. Crane, supra; Smith v. Doe, 538 U.S. 84, 96 (2003) (Alaska sex offender registration and notification requirements upheld as proper legislative protection of the public). The Court has also held that detention pending trial based on predictions of dangerousness meets constitutional requirements, see Salerno, 481 U.S. 739 (1987) (preventive detention under Bail Reform Act based on predictions of dangerousness held constitutional because it serves compelling governmental interests).

---

[4] The Supreme Court again considered the Kansas statute in Kansas v. Crane, 534 U.S. 407, 410-12 (2002), holding such statutes pass due process muster where they provide for civil confinement of individuals with a mental abnormality which makes it difficult for the individual to control his dangerous behavior. The New York statute conforms with this standard.

17

There is a rational basis for the distinction the State draws between defendants convicted of a sexually motivated felony by proof beyond a reasonable doubt and respondents found to have committed a designated felony for a sexual motivation by clear and convincing evidence. In the first place, the Legislature is properly concerned with ensuring that sex offenders receive treatment, regardless of the date of their conviction. The considerations concerning the standard of proof required for treatment are set out supra on pp. 11-14.

In addition, as the Legislature stated in its findings, "some of the goals of civil commitment [--] protection of society, supervision of offenders, and management of their behavior [--] are appropriate goals of the criminal process as well." MHL 10.01 (d). The Legislature stated that, "For some recidivistic sex offenders, appropriate criminal sentences, including long-term post-release supervision, may be the most appropriate way to achieve those goals." Id. These considerations are reflected in the Legislature's amendments to the Penal Law. Defendants convicted of sexually motivated felonies after SOMTA's effective date are subject to longer sentences and longer post-release supervision. See L. 2007, c. 7, §§ 29-30, 32-34 (reproduced at Exhibit A of Complaint, pp. 24-27, 32-34). Given the longer sentences and longer post-release supervision imposed by SOMTA, there is a rational basis for the distinction the Legislature drew between defendants convicted before SOMTA's effective date and those convicted after that date.

Since the determination that a designated felony committed before SOMTA's effective date was "sexually motivated" can be made without violating respondents' due process and equal protection rights, Plaintiff cannot show that it has a "clear or substantial likelihood of success on the merits" of its claim and cannot show that "no set of circumstances exists under which the Act

18

would be valid." For these reasons, this Court should decline to impose a preliminary injunction enjoining MHL Article 10 trial courts from determining by clear and convincing evidence that designated felonies are "sexually motivated."

### C. The Commitment Of Sex Offenders Found Incapacitated To Stand Trial Ensures That The Offenders Are Properly Managed And That The Public Is Protected.

MHL Article 10 is triggered by specified felonies, MHL 10.03 (p) and (s), and provides that for such offenses, probable cause that a respondent who is an incapacitated defendant committed a "sex offense" under Section 10.03 (p) shall be deemed established "and not relitigated" where such individual has been indicted by a grand jury for a subject offense but found to be to lack capacity to stand trial for that offense. MHL 10.06 (j)(ii). Plaintiff contends that these provisions are constitutionally infirm for two reasons. First, Plaintiff asserts that a respondent's detention until trial is unlawful because at the MHL 10.06 hearing a court may make a finding of probable cause without finding the person committed the underlying criminal act, and is "precluded" from inquiring whether the person committed the underlying criminal act. Plaintiff argues that this is contrary to procedural due process and equal protection rights. Second, Plaintiff points out that the burden of proof at the MHL Article 10 trial is by "clear and convincing evidence" rather than "beyond a reasonable doubt," which Plaintiff alleges is contrary to substantive due process rights. Pl. Mem. at 14-17.

### 1. The Re-Litigation Bar Based An Incapacitated Criminal Defendant's Indictment Violates No Right

Plaintiff makes a blended due process and equal protection argument based on the alleged deficiency in the MHL Article 10 probable cause process as applied to respondents found to lack capacity to stand trial under CPL 730. Plaintiff's claims arise from a factually incorrect premise.

19

Plaintiff asserts that criminal defendants who lacked capacity to stand trial may be subjected to detention following an Article 10 probable cause hearing "without any finding that the person committed the underlying criminal act," and that "the court is expressly precluded from making any inquiry into whether the person committed the conduct constituting the offense alleged." Pl. Mem. at 14. This misapprehends the process.

Under CPL 190.65 (1)(a) and (b), the indictment of a person by a grand jury means: a) there is "legally sufficient evidence" to establish that such person committed such offense; and b) there is "competent and admissible" evidence providing "reasonable cause to believe that such person committed such offense." "Legally sufficient evidence" is competent evidence which would establish every element of an offense charged and the commission of that offense. "Reasonable cause" exists when reliable evidence discloses facts sufficient to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that the offense was committed and the defendant committed it. CPL 70.10 (1) and (2).

If a grand jury finds either that the evidence was not "legally sufficient" or that there is not "reasonable cause," it must dismiss the charge. CPL 190.75. Likewise, a CPL 730 defendant may move to dismiss an indictment which is legally insufficient. CPL 730.60 (4) (defendant "may make any motion ... which is susceptible of fair determination without his personal participation"). Thus a grand jury indictment is an affirmative determination of both legal sufficiency and reasonable cause. The MHL Article 10 provision that the probable cause determination that an incapacitated respondent committed a sex offense need not be "relitigated"

20

simply looks to these grand jury determinations.[5]

## 2. Civil Commitment For Treatment Purposes Can Be Supported By A Lower Standard Of Proof Than Criminal Proceedings

Plaintiff acknowledges that Article 10 is civil in nature, and of the same genre as the Kansas law upheld in Kansas v. Hendricks, 521 U.S. at 356-68. Pl. Mem. at 15. See also, Seling v. Young, 531 U.S. 250, 260 (2001) (construing and upholding as a civil process Washington's sexually violent predator statutory scheme). Because such statutes are civil, many constitutional protections which apply in criminal cases, such as proof beyond a reasonable doubt, the privilege against self-incrimination and Sixth Amendment protections, do not pertain. United States v. Ward, 448 U.S. 242, 248. (1980). Indeed, the Court held in Addington v. Texas, 441 U.S. at 428, 432-33, that all that is constitutionally required for involuntary civil commitment is "clear and convincing evidence."[6] See also, Foucha v. Louisiana, 504 U.S. 71, 75-76 (1992) ("Clear and convincing evidence" of mental abnormality and dangerousness is constitutionally sufficient for civil commitment). This "clear and convincing evidence" standard applies to statutes providing

---

[5] These MHL Article 10 probable cause stage relitigation-bar provisions are comparable to MHL Article 10 trial stage provisions stating that commission of a "sex offense" is deemed established on a showing that the defendant was convicted of the offense or found not responsible by reason of mental disease or defect for the offense or the acts constituting the offense, MHL 10.07 (c). A criminal conviction means that all elements of the offense and the defendant's commission thereof have been established beyond a reasonable doubt. CPL 70.20. A "not responsible by reason of mental disease or defect" judgment means that the prosecution has established every element of the offense beyond a reasonable doubt, and the defendant has affirmatively established by a preponderance of evidence that his criminal conduct was the result of a mental disease or defect. CPL 40.15; People v. Kohl, 72 N.Y.2d 191, 198 (1988).

[6] Plaintiff extensively discusses the Kansas statute's "beyond reasonable doubt" standard, implying that this standard is constitutionally mandated. Pl. Mem. at 15. The Supreme Court in Addington v. Texas noted what while states are free to adopt higher standards, the constitution requires only "clear and convincing evidence." 441 U.S. at 430-31.

21

for the civil commitment of sex offenders. Hubbart v. Knapp, 379 F.3d 773, 781 (9th Cir. 2004) cert. denied, 543 U.S. 1071 (2005) (Upholding California sex offender statute against due process claims and finding "clear and convincing evidence" is constitutional standard); Meyer v. State of New Jersey, 2006 U.S. Dist. LEXIS 51394 at * 27 (D.N.J. 2006) (New Jersey courts have adopted proper constitutionally required "clear and convincing evidence" standard for sex offender commitment proceedings); Poole v. O'Keefe, 2002 U.S. Dist. LEXIS 6534 at *4 (D. Minn. 2002) (Minnesota statute providing for commitment of sexually dangerous persons correctly incorporated constitutionally required "clear and convincing evidence" standard).[7]

The MHL Article 10 provision for proof by "clear and convincing evidence" is plainly consonant with substantive due process requirements.

### D. Respondents' Constitutional Rights Are Not Violated By Their Confinement Pending Trial

In its motion for a preliminary injunction, Plaintiff notes that under MHL 10.06, respondents are confined pending the probable cause hearing and until trial. Pl. Mem. at 17. Plaintiff maintains that probable cause to believe that a respondent is a sex offender requiring civil management is not a finding that a respondent is currently dangerous, and thus cannot support the respondent's confinement. Id. at 18.

As noted supra on pp. 14-19, the Supreme Court has consistently held that sex offender civil commitment statutes serve compelling public safety interests, and that detention pending

---

[7] Plaintiff appears to suggest that Cooper v. Oklahoma, 517 U.S. 348, 369 (1996), requires a "reasonable doubt" standard for civil commitment proceedings for incapacitated persons. Pl. Mem. at 15. The case did not so hold. The Court overturned an Oklahoma statute which placed the burden on defendants to establish lack of capacity in criminal cases by "clear and convincing evidence," and expressly reiterated the "clear and convincing" standard for civil commitment. Id. at 368-69.

trial is constitutional based on public safety considerations. Even as regards respondents who have been indicted but who lack criminal capacity, such a finding  cannot be deemed a finding that the respondent does not present a danger to the public or will not likely engage in dangerous activity in the future. MHL Article 10 establishes a probable cause procedure which combines grand jury findings as to a respondent's participation in unlawful conduct with findings regarding dangerousness and public safety.[8] As the Supreme Court reiterated in Heller v. Doe, "rational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" 509 U.S. at 319, and "[a] statutory classification fails rational-basis review only when it rests on grounds wholly irrelevant to the achievement of the State's objective." 509 U.S. at 324 (internal citations omitted). There is no factual or legal basis to conclude that the Article 10 provision applicable to incapacitated persons are incompatible with substantive due process requirements.

### E. No Right To Counsel Is Involved In The Case Review Team's Discretionary Psychiatric Examination

Plaintiff notes that upon receiving a referral, a CRT "shall review relevant records, ... and may arrange for a psychiatric examination of the respondent" for the purpose of determining whether a detainee is a sex offender requiring civil management. MHL 10.05 (e). Plaintiff argues that this examination is compulsory, that any statements made in the examination are admissible in future MHL Article 10 proceedings, that failure to cooperate can result in an adverse jury

---

[8] Separate CPL 730 provisions allow for detention of incapacitated persons 1) for up to six months upon petition from the district attorney and a showing of dangerousness, CPL 730.60 (6); and 2) up to thirty days following expiration of an order of observation upon application by the Commissioner of Mental Health to allow initiation of civil commitment proceedings. CPL 730.70. Neither is at issue here.

charge, and that no counsel is available to indigent respondents during this examination. Pl. Mem. at 19.

Contrary to Plaintiff's statement, CRT cannot "require" a respondent to undergo an examination. Indeed, the CRT "may arrange" an examination. By contrast, at any time after receiving the MHL 10.05 (b) notice, OAG can seek a court order requiring a respondent "to submit to an evaluation by a psychiatric examiner .... " MHL 10.06 (d). When that evaluation is ordered, the court is to appoint counsel for respondent.

Although Plaintiff does not mention it on its motion, the Appellate Division, Second Department, has previously held that involuntary patients have a right to have counsel present during prehearing examinations conducted solely for the purpose of having the examiner testify at a retention hearing. Ughetto v. Acrish, 130 A.D.2d 12, 21 (2d Dep't 1987). The Second Department's decision was largely based on the Legislature's establishment of MHLS as a source of legal counsel for psychiatric patients. Id. at 21-23. However, the Second Department also noted that, in the absence of a statutory basis, it would be prepared to find such a right to be required by due process. Id. at 24. While the Second Department did not state whether it was deciding this part of the case under the state or federal constitution, it cited several United States Supreme Court precedents, which suggest it was making its decision under federal law. Id. at 24-25. The Second Department emphasized that the prehearing examinations for which it found counsel to be required are those "conducted solely for the purpose of preparing the examining psychiatrist for his testimony at the hearing." Id. at 23.

Though Plaintiff does not mention Ughetto in its motion, the Legislature plainly considered it. The examination the CRT may arrange is not for the purpose of a hearing, but for

24

the purpose of assisting the CRT in its determination. Awaiting appointment of counsel could reasonably be expected to delay the CRT's determination, which, in some cases, must be rendered expeditiously. Accordingly, the Legislature properly provided that counsel was unnecessary for the CRT's examination.

Plaintiff does refer to two out-of-state cases for the premise that requiring a person to submit to a psychiatric examination entails a loss of liberty. See United States v. Davis, 92 F.3d 1286 (6th Cir. 1996) (directing criminal defendant to undergo a examination of capacity to stand trial); Matter of Johnson, 699 A.2d 362 (App. D.C. 1997) (contempt prosecution for not submitting to a psychiatric examination on the strength of mother's affidavit). Neither case involved findings based on probable cause or proof beyond a reasonable doubt that the subject of the examination had committed a sex offense, so they are plainly inapposite here.

### F. No Right To Confidentiality Is Impaired By The Act's Authorization To Release Clinical Information To Protect The Public From A Specific Sex Offender

Plaintiff makes a facial challenge on substantive due process grounds to the provisions of MHL 10.17 authorizing the release of information, describing it as authorizing the "release of confidential clinical information to any 'appropriate person [or] entity whenever it is deemed necessary to protect the public concerning a specific sex offender.'" Complaint, ¶¶ 34, 85. Plaintiff asserts that this provision is unconstitutional because "[t]here is no requirement of imminent danger to any particular person, as under the prior provisions of [MHL] 33.13," Complaint, ¶ 34, and argues that the release of information must be limited to situations where there is an "imminent danger", or "by limiting the scope of the release of information to those persons who have a specific, valid need for it, see new MHL 10.08 (c); 10.10 (g)."

25

As the Legislature has modified the law, it is difficult to see how Plaintiff states a claim. In any event, the pertinent part of Section 10.17 states:

> The commissioner is authorized to release information in accordance with subparagraph (vii) of subdivision (c) of section 33.13 of this chapter to appropriate persons and entities <u>when necessary to protect the public concerning a specific sex offender requiring civil management under this article</u> . . . (emphasis added).

Thus the provision pertains only following a judicial determination that the person is a sex offender "requiring civil management," i.e., a sex offender who suffers from a mental abnormality, MHL 10.06 (k), who may be either a dangerous sex offender requiring confinement, or a sex offender requiring strict and intensive supervision and treatment. MHL 10.03 (q). "Mental abnormality" is "a congenital or acquired condition, disease or disorder that affects the emotive, cognitive or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct." MHL 10.03 (i).

Plaintiff disclaims any challenge to the constitutionality of other Mental Hygiene Law disclosure provisions, including expressly MHL 33.13 (c)(9)(v), restricting its challenge to MHL 33.13 (c)(9)(vii).[9] Complaint, ¶¶ 33-35. Plaintiff argues that this provision should be carved out of the larger statutory scheme of MHL Article 10, and considered as a distinct privacy violation

---

[9]In general, MHL 33.13 (c) provides that patient/client information shall not be released except as specified, and provides any disclosure: 1) "shall be limited to that information necessary in light of the reason for disclosure;" 2) "shall be kept confidential by the party receiving such information and the limitations on disclosure in this section shall apply to such party;" and 3) where disclosure is made other than to the mental hygiene legal service, for quality of care standards, or to governmental agents in connection with payment to or for the patient, will be noted in the clinical file and on request the patient will be notified of all disclosures. MHL 33.13(f). Paragraphs (c)1-8 and 10-13 permit specified disclosures to various persons and entities.

assessed under an intermediate scrutiny analysis. Pl. Mem. at 21. Defendants submit that this

provision is better analyzed under the "rational basis" test applicable to the overall statutory

structure, see supra at pp. 14-19, but that it also satisfies intermediate scrutiny standards. Under

the intermediate scrutiny rule, a statute which burdens protected privacy rights must be upheld if

it "is designed to further a substantial governmental interest and does not land very wide of any

reasonable mark in making its classifications." Statharos v. New York City Taxi and Limousine

Commission, 198 F. 3d 317, 324 (2d Cir. 1999), quoting Eisenbud v. Suffolk County, 841 F. 2d

42, 46 (2d Cir 1988). Accord, O'Connor v. Pierson, 426 F. 2d 197, 202-03 (2d Cir. 2005).[10]

Plaintiffs distinguish between paragraph (c)(9)(v) allowing disclosure to "appropriate

persons and entities when necessary to prevent imminent harm to the patient or client or another

person," (not challenged), and (vii) allowing disclosure to "appropriate persons and entities when

necessary to protect the public concerning a specific sex offender requiring civil management,"

(challenged). Plaintiff thus asserts a constitutional distinction between disclosure "to prevent

imminent harm to the patient or client or another person" (permissible), and "to protect the public

concerning a specific sex offender requiring civil management," (impermissible).

The Supreme Court holds that under sex offender statutes state action is justified where a

---

[10] Unlike Doe v. City of New York, 15 F. 3d 264, 276 (2d Cir. 1994) (HIV status) and Powell v. Schriver, 175 F. 3d 107, 111 (2d Cir. 1999) ( transsexualism), both upholding a privacy interest in previously secret "excruciatingly private and intimate" medical conditions, 175 F. 3d at 111, any disclosure here will not reveal for the first time an undisclosed medical condition. An individual subject to MHL 10.17 disclosure has been judicially determined to suffer from a mental abnormality that predisposes him to the commission of sex offenses and results in serious difficulty in controlling such conduct. MHL 10.03(i). See, Powell, id. ("the interest in the privacy of the medical condition will vary with the condition."); Strong v. Board of Education, 902 F. 2d 208, 212 (2d Cir.), cert. denied, 498 U.S. 897 (1990) (No impermissible violation of privacy in requiring school teacher seeking to resume duties following medical absence to disclose medical information because a school district has a strong interest in protecting children under its care).

person suffers from a "mental abnormality" which makes likely that he will generally present a danger "to the public health and safety," and the Court has not required a showing of imminent harm to a specific person. Kansas v. Hendricks, 521 U.S. at 357; Kansas v. Crane, 534 U.S. at 409, 413. The State has a compelling interest in generally protecting the public from sex offenders based on predictions of future dangerousness, see also, Doe v. Pataki, 120 F. 3d 1263, 1266, 1276 (2d Cir. 1997) (Describing general dangers to the public posed by sex offenders in upholding registration and public notification provisions of New York Sex Offender Registration Act). It flies in the face of this rationale to require that after a person has been adjudicated under the statute, state officers must predict "imminent danger" to a "specific person." A law permitting the exercise of reasonable judgments to allow disclosure to "appropriate persons and entities when necessary to protect the public concerning a specific sex offender requiring civil management" does not offend substantive due process and is thus not facially unconstitutional. See Whalen v. Roe, 429 U.S. 589, 597-98, 601 (1977) (Rejecting privacy challenge to New York statute requiring physician identification of patients obtaining certain drugs, since state legislatures have broad latitude in dealing with social problems and there is no basis to conclude that the security provisions of the statute will be administered improperly).

Plaintiff has failed to demonstrate that it has a clear or substantial likelihood of success on the merits, that is, that there are no set of circumstances under which the Act would be valid. Accordingly, its motion for a preliminary injunction should be denied.

## POINT II

### THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION

In deciding a motion to dismiss for failure to state a claim, this Court must accept as true

those factual assertions set forth in the Complaint, and read the Complaint liberally, drawing all reasonable inferences in Plaintiff's favor. <u>Charles W.</u>, 214 F.3d at 356. Plaintiff is mounting a facial challenge upon the Act so it is obligated to establish that there are no set of circumstances under which the Act would be valid. <u>Salerno</u>, 481 U.S. at 745.

As noted in Point I, Plaintiff is obligated on a motion for a preliminary injunction to show a clear or substantial likelihood of success on the merits. Plaintiff's motion for a preliminary injunction seeks the same relief as the Complaint, with some minor changes in the order of the claims asserted. As demonstrated in Point I, Plaintiff is unable to state a claim on any one of the Complaint's nine causes of action.

In any event, any claims against Defendants Spitzer, Ritter, and Fischer in their official capacities as Governor, Commissioner of OMRDD, and Commissioner of DOCS, respectively, should be dismissed. The Complaint's single mention of the Governor asserts that "[h]e is charged with the faithful execution of the laws of the state, including the statutory provisions here at issue," and is sued solely in his official capacity. Complaint, ¶ 41. There are no allegations that the Governor has or will have any involvement in the conduct which plaintiff contends effects a deprivation of federally protected rights, and in fact the factual allegations describing the challenged statutory scheme affirmatively assert that he has no such involvement. <u>See</u> <u>Warden v. Pataki</u>, 35 F.Supp2d 354, 359 (SDNY 1999), <u>aff'd sub nom.</u> <u>Chan v. Pataki</u>, 201 F.3d 430 (2d Cir. 1999) (Governor was not proper party to suit based duty to take care that the laws are faithfully executed.); <u>Romeu v. Cohen</u>, 121 F.Supp.2d 264, 272 (SDNY 2000), <u>aff'd</u>, 265 F.3d 118 (2d Cir. 2001) (same). "[W]here the legislative enactment provides that entities other than the executive branch of the state are responsible for implementation of the statute no

claim against the Governor lies." <u>Wang v. Pataki</u>, 164 F.Supp.2d 406, 410 (SDNY 2001); <u>United States v. New York</u>, 2007 U.S. Dist. LEXIS 21722 at * 7 (NDNY March 27, 2007) (same).

In the same way, the only claim against Defendant Ritter and Defendant Fischer is that under the Act, OMRDD and DOCS are responsible under MHL 10.05 (b) for notifying OMH and OAG if a person who may be a detained sex offender is nearing an anticipated release.  In order to maintain a Section1983 suit for injunctive relief against a state officer plaintiffs must show that the officer "acting in his official capacity, had 'a direct connection to, or responsibility for, the alleged illegal action.'" <u>Cincotta v. New York City Human Resources Admin.</u>, 2001 U.S. Dist. LEXIS 11457, at *28 (SDNY Aug.  9, 2001) (quoting <u>Marshall v. Switzer</u>, 900 F. Supp. 604, 615 (NDNY 1995)(collecting cases). The allegations against Defendants Ritter and Fischer do not ascribe to them, and the MHL Article 10 statutory scheme does not assign to them, the direct responsibility for the alleged unconstitutional conduct which is required for Section 1983 liability.

Accordingly, the Complaint should be dismissed.

**CONCLUSION**

For the foregoing reasons, the motion for a preliminary injunction should be denied and

the Complaint should be dismissed.

Dated:   New York, New York
         May 16, 2007

                                        ANDREW M. CUOMO
                                          Attorney General of the State of New York
                                          <u>Attorney for Defendants</u>
                                          By:

                                          _____
                                          EDWARD J. CURTIS, JR.
                                          Assistant Attorney General

EDWARD J. CURTIS, JR.
BRUCE McHALE
Assistant Attorneys General
<u>of Counsel</u>

31