UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                      :
MENTAL HYGIENE LEGAL SERVICE,                         :
                                                      :
                    Plaintiff,                        :
          -v.-                                         :
                                                      :
ELIOT SPITZER, in his official capacity as            :        Docket No. 07-CV-2935 (GEL)
Governor of the State of New York,                    :
ANDREW CUOMO, in his official capacity as             :
Attorney General of the State of New York,            :
MICHAEL HOGAN, in his official capacity               :
 as Commissioner of the New York State Office         :
of Mental Health, DIANA JONES RITTER, in her          :
official capacity as Commissioner of the New York     :
State Office of Mental Retardation and                :
Developmental Disabilities, and BRIAN FISCHER,        :
in his official capacity as Commissioner of the New   :
York State Department of Corrections Services,        :
                                                      :
                    Defendants.                       :
                                                      :
------------------------------------------------------------X

REPLY MEMORANDUM OF LAW IN
OPPOSITION TO MOTION TO DISMISS AND
REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR PRELIMINARY INJUNCTION
AND TEMPORARY RESTRAINING ORDER

MARVIN BERNSTEIN, Director
Mental Hygiene Legal Service, First Department
SIDNEY HIRSCHFELD, Director
Mental Hygiene Legal Service, Second Department
Attorneys for Plaintiff
41 Madison Avenue, 26th Floor
New York, New York 10010
Phone:  (212) 779-1734

June 6, 2007

SADIE ZEA ISHEE
DENNIS B. FELD
      Of Counsel

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.  Standards of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.  Merits of Plaintiff's Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        1.     Due Process requires notice and an opportunity to be heard before a person may be deprived of his liberty under a securing petition. . . . . . . . . . . . . . 3

        2.     The retroactive determination that a person's non-sexual crime was committed with a "sexual motivation" violates that person's due process and equal protection rights, where the determination is made by clear and convincing evidence rather than proof beyond a reasonable doubt . . . . . . 6

            A.     Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            B.     Equal Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        3.     Article 10 violates the due process and equal protection rights of incapacitated   defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            A.     Article 10 permits incapacitated defendants to be committed pending trial without any determination that they ever committed the criminal conduct alleged. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            B.     Article 10 permits the commitment of incapacitated defendants in secure sex offender treatment facilities based only upon "clear and convincing evidence" that they committed criminal conduct, not proof beyond a reasonable doubt. . . . . . . . . . . . . . . . . . . . . . . 14

        4.     Confinement pending trial must be supported by a specific finding that a particular respondent is currently dangerous. . . . . . . . . . . . . . . . . . . . . . 17

        5.     The constituents are entitled to counsel at any psychiatric evaluation ordered by the Case Review Team. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        6.     Article 10 infringes upon the constituents' right to confidentiality. . . . . 22

    III.  Appropriate Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## TABLE OF AUTHORITIES

### CASES

*ABN 51st St. Partners v. City of New York*, 724 F. Supp. 1142 (S.D.N.Y. 1989) . . . . . . . . . . . . 5

*Addington v. Texas*, 441 U.S. 418 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 10, 14, 15, 18

*Baxstrom v. Herold*, 383 U.S. 107 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bernstein v. Pataki*, 2007 U.S App. LEXIS 8763 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . 8

*Bronx Household of Faith v. Community Sch. Dist.*, 331 F.3d 342 (2d Cir. 2003) . . . . . . . . . . . 1

*Charles W. v. Maul*, 214 F.3d 350 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cooper v. Oklahoma*, 517 U.S. 348 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Deary v. Guardian Loan Co.*, 563 F. Supp. 264 (S.D.N.Y. 1983) . . . . . . . . . . . . . . . . . . . . . . 24

*Doe v. City of New York*, 15 F.3d 264 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Ex Parte Young*, 209 U.S. 123 (1908) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Foucha v. Louisiana*, 504 U.S. 71 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

*Francis S. v. Stone*, 221 F.3d 100 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Fuentes v. Shevin*, 407 U.S. 67 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Goetz v. Crosson*, 728 F. Supp. 995 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Green Party of New York State v. New York State Bd. of Elections*, 389 F.3d 411 (2d Cir. 2004) 2

*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hernandez v. Coughlin*, 18 F.3d 133 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Hickey v. Morris*, 722 F.2d 543 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hirschfeld v. Stone*, 193 F.R.D. 175 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Humphrey v. Cady*, 405 U.S. 504 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

i

*Hunt v. Roth*, 648 F.2d 1148 (8th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kansas v. Crane*, 534 U.S. 407 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

*Kansas v. Hendricks*, 521 U.S. 346 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11

*Kirby v. Siegelman*, 195 F.3d 1285 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Matter of Bronx Psychiatric Center*, 283 A.D.2d 73 (1st Dep't 2001) . . . . . . . . . . . . . . . . . . . . . 21

*Matter of Lesser v. Carmela M.*, 146 Misc.2d 1072 (Sup. Ct., Queens County 1989) . . . . . . . 21

*Matthews v. Eldridge*, 424 U.S. 319 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mayers v. New York Cmty. Bankcorp*, 2006 U.S. Dist. LEXIS 48778 (2006) . . . . . . . . . . . . . 25

*Minnesota ex rel. Pearson v. Probate Court of Ramsey County*, 309 U.S. 270 (1940) . . . . . . . . 9

*Mitchell v. Cuomo*, 748 F.2d 804 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) . . . . . . . . . . . . . . . . . . . 5

*O'Connor v. Donaldson*, 422 U.S. 563 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Parham v. J.R.*, 442 U.S. 584 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*People v. Calbud, Inc.*, 49 N.Y.2d 389 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Manini*, 79 N.Y.2d 561 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Project Release v. Prevost*, 722 F.2d 960 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Riggins v. Nevada*, 504 U.S. 127 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Schall v. Martin*, 467 U.S. 253 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Schweiker v. Wilson*, 450 U.S. 221 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Smith v. Doe*, 538 U.S. 84 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Snyder v. Massachusetts,* 291 U.S. 97 (1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Swierkiewicz v. Sorema*, 534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ii

*Ughetto v. Acrish*, 130 A.D.2d 12 (2d Dep't 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20- 23

*United States v. 37 Photographs*, 402 U.S. 363 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Romano*, 706 F.2d 370 (2nd Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Salerno*, 481 U.S. 739 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*United States v. Scott*, 450 F.3d 863 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Virginia*, 518 U.S. 515 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Vitek v. Jones*, 445 U.S. 480 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Warden v. Pataki*, 35 F.Supp.2d 354 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Zadvydas v. Davis*, 533 U.S. 678 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## STATUTES

ARIZ. REV. STAT. ANN. § 36-3707 (D) (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CAL. WELF. & INST. § 6600 (a)(1) (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

FLA. STAT. ANN. § 394.912 (2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,15

FLA. STAT. ANN. §§ 394.912(9)(a)-(h)(2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ILL. COMP. STAT. ANN. 207/5 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IOWA CODE ANN. § 229A.7 (1) (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

KAN. STAT. ANN. § 59-29a07(g) (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

MASS. GEN. LAWS ch. 123A, § 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

MHL 33.13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

MO. REV. STAT. § 632.480 (5)(a) (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

N.H. REV. STAT. ANN. § 135-E:5 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

N.J. STAT. ANN. § 30:4-27.33 (c) (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

N.Y. Crim. Proc. L. Article 730 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

iii

N.Y. M.H.L. Article 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

N.Y. M.H.L. Article 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

S.C. CODE ANN. 44-48-100(B) (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. HEALTH & SAFETY ANN. § 841.003 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

WASH. REV. CODE ANN. § 71.09.060 (2) (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## FEDERAL REGULATIONS

Fed. R. Civ. P. 12 (b) (6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## OTHER AUTHORITIES

C. Wright & A. Miller, *Federal Practice and Procedure*, § 2948) . . . . . . . . . . . . . . . . . . . . . . . . 2

PRELIMINARY STATEMENT

Plaintiff Mental Hygiene Legal Service ("MHLS") submits this Memorandum of Law in opposition to Defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), and as a reply in further support of its motion for a preliminary injunction and a temporary restraining order, pursuant to Fed. R. Civ. P. 65, enjoining Defendants from enforcing certain provisions of New York's sex offender management and treatment act ("SOMTA" or "the Act").[1]

ARGUMENT

In Defendants' Memorandum in Opposition to the Motion for a Preliminary Injunction and in Support of Motion to Dismiss Complaint (Def. Mem.) (Docket Document #9), Defendants correctly note that a plaintiff seeking preliminary injunctive relief must demonstrate both irreparable harm if the injunction is not issued and a "substantial likelihood of success on the merits." Def. Mem. at 7 (*citing Bronx Household of Faith v. Cmty. Sch. Dist.*, 331 F.3d 342, 349 (2d Cir. 2003)).  But Defendant never challenges Plaintiff's assertion that its constituents will be irreparably harmed by enforcing the Act in its current form.  Thus Defendant apparently concedes that if Plaintiff's constitutional analysis of the challenged provisions of the Act is deemed correct, then its constituents will suffer irreparable harm if the Act is enforced as written.  This is

---

[1]Plaintiff notes that Defendants have introduced facts in this proceeding beyond those set forth in the complaint.  *See* Def. Mem. at 5-6; Declaration of Richard Miraglia; Declaration of Edward Curtis.  To the extent that these factual assertions are intended for this Court's consideration in connection with Defendants' motion to dismiss, their inclusion compels this Court to construe Defendants' submission as a motion for summary judgment.  *See* Fed. R. Civ. P. 12 (b).  Insofar as the Declarations submitted by Defendants are intended to provide further opposition to Plaintiff's preliminary injunction motion, Plaintiff notes only that both Declarations appear to support its assertion that individual constituents are currently being subjected to the challenged provisions of the SOMTA, making preliminary injunctive relief essential to protect their rights.

consistent with the general rule, referenced in Plaintiff's earlier submission (Plaintiff's

Memorandum in Support of Motion for Preliminary Injunction) (hereinafter "Pl. Mem.") (Docket

Doc. #6), that where the denial of a constitutional right is alleged, irreparable harm will be

presumed. *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) (*citing* 11 C. Wright & A.

Miller, *Federal Practice and Procedure*, § 2948).

As Defendants have limited the issues before this Court, resolution of both Plaintiff's

Motion for a Preliminary Injunction (Docket Doc. #5) and Defendants' Motion to Dismiss the

Complaint (Docket Doc. # 12) turn on the merits of the claims asserted in Plaintiff's complaint.

I.  Standards of Review

Defendants' Motion to Dismiss can only be granted, as to any claim asserted in the

complaint, if "it is clear that no relief could be granted under any set of facts that could be proved

consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  In

weighing this question, this Court "must accept the material facts alleged in the complaint as true

and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d

133, 136 (2d Cir. 1994).  On a motion to dismiss, "[t]he issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

*Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002) (*citing Scheuer v. Rhodes*, 416 U.S. 232, 236

(1974)).

Plaintiff has not only pleaded allegations sufficient to survive this lenient standard, but

has also demonstrated a "substantial likelihood" that it will succeed on the merits  of its claims,

thus warranting preliminary injunctive relief.  *Green Party of New York State v. New York State

Bd. of Elections*, 389 F.3d 411, 418 (2d Cir. 2004) (when proposed injunction will alter the status

quo, plaintiffs must demonstrate a "substantial likelihood" of success).

## II.  Merits of Plaintiff's Claims

As to each of the nine claims asserted in the complaint, Plaintiff has stated a viable cause of action and has demonstrated a likelihood of success on the merits.  In particular, Plaintiff believes that preliminary injunctive relief and a temporary restraining order are essential as to Claim 1 (securing petitions) (Point 1, below); Claim Seven (pre-trial detention) (Point 4); and Claim Nine (counsel at pre-petition psychiatric exams) (Point 5).

### 1.  Due Process requires notice and an opportunity to be heard before a person may be deprived of his liberty under a securing petition.

MHL 10.06 provides for "securing petitions," filed by the Attorney General in cases where a potential "sex offender requiring civil management" would otherwise be entitled to release from state custody before the Case Review Team has completed its evaluation.  Section 10.06 does not provide for notice or an opportunity to be heard before the individual is deprived of his liberty, and it expressly prohibits a court from considering whether there is probable cause to believe that the individual is a sex offender requiring civil management while the securing petition remains in effect.[2]  MHL 10.06 (f); Compl. ¶¶ 20-24.  Defendants argue that the Act is nevertheless constitutional because "[i]t is apparent from MHL 10.06 that the securing petition is to be used rarely."  Def. Mem. at 8.  But the fact that the constitution is only occasionally abridged cannot mean that the abridgement is acceptable.

Defendants do not contest Plaintiff's central thesis: that MHL 10.06 (f) permits its

---

[2]Defendants have agreed that they will provide notice and an opportunity to be heard attendant to any securing petition filed while this Motion for a Preliminary Injunction is pending. *See* April 30, 2007 Letter to Judge Lynch from Edward J. Curtis, Jr. However, it is uncontested that the express terms of MHL 10.06 (f) do not provide any such notice or hearing.  If the preliminary injunction is not issued on this claim, Defendants' agreement to provide such notice and hearing will expire upon the issuance of the Court's opinion.

constituents to be indefinitely[3] detained without notice, counsel, or an opportunity to be heard.

Compl. ¶¶ 20-24.  Defendants' argument is that delaying any probable cause hearing until the

Case Review Team has completed its assessment somehow benefits these persons, who have

been blind-sided with an unreviewable deprivation of liberty.  Def. Mem. at 8-10.  Permitting the

Case Review Team more time to render a clinical judgment, Defendants contend, is likely to

increase the accuracy of the ultimate determination as to whether the individual is a sex offender

in need of civil management under Article 10.  *Id.*  But this argument conflates the ultimate

deprivation of liberty under Article 10 with the immediate deprivation of liberty that Plaintiff's

constituents will experience under the securing petition.  The probable cause hearing and jury

trial furnish the appropriate opportunity to be heard, for due process purposes, before a person is

ultimately deprived of his liberty under Article 10.  *See* MHL 10.06 (k); 10.07.   But as Plaintiff

contends in its complaint, no notice or opportunity to be heard attends an indefinite deprivation

of physical liberty effected by means of a securing petition.  *See* MHL 10.06 (f); Compl. ¶¶ 20-

24; 55-57.  Even if Plaintiff's constituents may benefit from the Case Review Team's clinical

assessment at the hearing which determines whether there is probable cause to believe that they

are sex offenders in need of civil management, they derive no benefit from being unilaterally

deprived of their liberty with no opportunity to challenge that deprivation while the Case Review

Team evaluates their cases.

     Quite simply, due process requires notice and a hearing attendant to any deprivation of

---

[3]MHL 10.06 (f) provides for continuing commitment of any individual who "may" be a
sex offender requiring civil management, for as long as it takes for the Case Review Team to
decide whether to refer the person to the Attorney General for possible commitment.  Under
Article 10, the Case Review Team endeavors to complete its review within 45 days, but its
failure to do so has no legal effect.  MHL 10.05 (g).  Thus, Article 10 permits the possibility of
detention under a securing petition for longer than 45 days.

physical liberty. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). "It is

. . . fundamental that the right to notice and an opportunity to be heard must be granted at a

meaningful time and in a meaningful manner." *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004)

(*citing Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)). Defendants concede that MHL 10.06 (f) does

not contain any provision for notice or a hearing attendant to the deprivation of liberty under a

securing petition, but contend that "the provisions for notice and an opportunity to be heard

[applicable to the Art. 10 petition] can reasonably be applied" to the securing petition as well.

Def. Mem. at 10. Defendants do not explain how the separate notice and hearing provisions

contained elsewhere in Article 10 could reasonably be applied to MHL 10.06 (f) in the face of the

express statutory language to the contrary. MHL 10.06 (f) ("[T]here shall be no probable cause

hearing" while the securing petition remains in effect.). However, even if the statute were

sufficiently ambiguous to permit the construction urged by Defendants, "it is not within [the

federal courts'] power to construe and narrow state laws. Federal courts must rely on an

authoritative source when narrowing the potential meaning of the words of a state law to preserve

its constitutionality." *ABN 51ˢᵗ St. Partners v. City of New York*, 724 F.Supp. 1142, 1148

(S.D.N.Y. 1989) (*citing United States v. 37 Photographs*, 402 U.S. 363, 369 (1971)). Thus, this

Court cannot "read in" notice and hearing provisions to MHL 10.06 (f) to preserve that

provision's constitutionality.

Because it is uncontested that MHL 10.06 (f), on its face, permits Plaintiff's constituents

to be deprived of their liberty without notice or a hearing, a preliminary injunction should issue

to ensure that appropriate procedural protections are provided whenever an MHL 10.06 (f)

securing petition is invoked. Likewise, Defendants' motion to dismiss should be denied.

2.  The retroactive determination that a person's non-sexual crime was committed with a "sexual motivation" violates that person's due process and equal protection rights, where the determination is made by clear and convincing evidence rather than proof beyond a reasonable doubt.

Under the Act, persons convicted of certain non-sexual felonies before the Act's effective date can be subjected to civil commitment as sex offenders if the Article 10 jury concludes, by clear and convincing evidence, that the underlying offense was committed with a "sexual motivation."  However, for all persons convicted of non-sexual felonies after the Act's effective date, no Article 10 petition can lie unless the jury at the criminal trial concludes, beyond a reasonable doubt, that the underlying offense was sexually motivated.  Plaintiff challenges this scheme on due process (Complaint, Sixth Claim) and equal protection (Complaint, Fifth Claim) grounds.

A. Due Process

Defendants attempt to defend MHL § 10.07(c)'s retroactive determination that a prior felony committed before SOMTA's enactment was "sexually motivated" by arguing that due process is a flexible concept, and that a full panoply of procedural protections are not provided in all mental health proceedings.  Def. Mem. at 11-12 (*citing Parham v. J.R.*, 442 U.S. 584 (1979)).  Due process is indeed flexible.  However, "what process is constitutionally due cannot be divorced from the nature of the ultimate decision that is being made."  *Parham*, 442 U.S. at 608.  In the Article 10 provisions at issue, the respondent has a substantial liberty interest at stake in the determination that a felony was "sexually motivated" under MHL 10.07(c), which subjects him to possibly indeterminate psychiatric confinement, as well as being branded a "sex offender." *See Humphrey v. Cady*, 405 U.S. 504 (1972); *Vitek v. Jones*, 445 U.S. 480, 492 (1980); *Kirby v. Siegelman*, 195 F.3d 1285, 1292 (11th Cir. 1999).  Given this important interest, increased procedural protections are required.

6

In opposition to Plaintiff's argument that the procedural protections of MHL 10.07(c) are insufficient considering the important liberty interest at stake, Defendants contend, in essence, that Article 10 is constitutional because it includes procedures similar to those that have been found constitutional in the context of other psychiatric commitment schemes. Def. Mem. at 12-13 (*citing Project Release v. Prevost*, 722 F.2d 960, 975 (2d Cir. 1983)(psychiatric commitment under N.Y. M.H.L. Article 9); *Charles W. v. Maul*, 214 F.3d 350 (2d Cir. 2000) (temporary commitment under N.Y. Crim. Proc. L. Article 730)). But neither *Project Release* nor *Charles W.* has any bearing on the narrow question of whether it is permissible to confine someone as a sex offender without proof beyond a reasonable doubt that his non-sexual offense was, in fact, "sexually motivated."

The fact that Article 10 contains extensive overall procedures does not address Plaintiff's claim that the specific procedures to determine sexual motivation are deficient. The procedures Defendants rely upon to save the constitutionality of the Act – preliminary review by an OMH multidisciplinary team, notice to the respondent, case review team evaluation, probable cause hearing (Def. Mem. at 12) – include only a cursory review of the issue of sexual motivation. Thus, these assessments do not serve to protect individuals facing a retroactive determination of "sexual motivation" under MHL 10.07(c) under a decreased burden of proof, nor do they decrease the risk of error implicit in using a lower burden of proof in making this factual determination. *Addington v. v. Texas*, 441 U.S. 418, 423-24 (1979) ("in order to exclude nearly as possible the likelihood of erroneous judgement," a beyond a reasonable doubt standard is applied in criminal proceedings).

In *Addington v. Texas*, 441 U.S. 418 (1979), the Court drew a distinction between "straightforward factual question[s]" that were susceptible to proof beyond a reasonable doubt,

and murkier questions, such as an individual's need for treatment, that "turn[] on the *meaning* of the facts which must be interpreted by expert psychiatrists and psychologists" and thus could not be proven by such a stringent standard. *Addington*, 441 U.S. at 429. Defendants argue that because a respondent's need for treatment is not susceptible to proof beyond a reasonable doubt, there is likewise no need to prove "sexual motivation" beyond a reasonable doubt, because "sexual motivation" is only an "initial inquiry" and not the ultimate question to be determined at the trial. Def. Mem. at 13-14. But as Defendants concede, this "initial inquiry" is a fact question that, in the future, will be proven at criminal trials beyond a reasonable doubt. Def. Mem. at 14. Due process demands that this same standard of proof must guide the "initial inquiry" into sexual motivation for persons convicted prior to the effective date of the Act.

    B.  Equal Protection

        Defendants offer no principled basis for distinguishing between those convicted before the Act's effective date and those convicted thereafter, nor any reason why this distinction does not run afoul of the equal protection guarantee of the federal constitution. Initially, Defendants misrepresent Plaintiff's basic argument. Plaintiff has not claimed that sex offenders are a suspect class, or that those who were convicted of a non-sex crime and are now facing an Article 10 proceeding are a suspect class. Rather, Plaintiff contends that Article 10 affects fundamental liberties, so that the procedures and distinctions contained within the Act must meet intermediate scrutiny. Pl. Mem. at 12 (statute is subject to intermediate scrutiny because it burdens fundamental interests) (*citing Francis S. v. Stone*, 221 F.3d 100, 111-12 (2d Cir. 2000); *Bernstein v. Pataki*, 2007 U.S App. LEXIS 8763, * 11 (2d Cir. 2007) (summary order)); *see also Schweiker v. Wilson*, 450 U.S. 221, 230 (1981) (intermediate scrutiny must be applied when challenged legislation burdens the exercise of a fundamental right); *Hickey v. Morris*, 722 F.2d 543, 546 (9th

Cir. 1984) (interpreting Supreme Court's involuntary commitment cases as applying heightened scrutiny to equal protection claims).

Defendants attempt to avoid the intermediate scrutiny required by *Francis S.* and the other cited cases by arguing that in those cases "there was no sex offender/ predator component." Def. Mem. at 16. But the presence of a "sex offender/ predator component" does not somehow place Article 10 outside the purview of the equal protection clause.

Defendants contend, nevertheless, that *Francis S.* should not apply because the Court there "did not consider [*Minnesota ex rel.*] *Pearson* [*v. Probate Court of Ramsey County*, 309 U.S. 270 (1940)], *Kansas v. Hendricks*, [521 U.S. 346 (1997)] or any Supreme Court or lower federal court rulings regarding sex offender statutes." Def. Mem. at 16. Defendants' reliance on *Hendricks* is misplaced. *Hendricks* did not involve an equal protection claim, and the fact that the Supreme Court there held that the civil commitment of sex offenders does not offend substantive due process and poses no ex post facto or double jeopardy principle says nothing about whether the state can fairly distinguish between two groups of sex offenders solely on the basis of the date of their conviction. Likewise, *Pearson* does not support Defendants' argument. There, the Court held that equal protection was not offended where the state singled out persons convicted of certain crimes as a particularly "dangerous element in the community" and subjected them to commitment on that basis. *Id.* at 274-75. While the Court there held that states were free to "hit[] evil where it is most felt," *id.* at 275, the case provides no support for distinguishing among dangerous persons on the basis of when they were convicted. In sum, Defendants have offered no basis to distinguish this case from *Francis S.*, which likewise involved a patient's commitment to a high-security mental hospital. Thus, intermediate scrutiny must apply.

9

Under intermediate scrutiny, "the reviewing court must determine whether the proffered justification is exceedingly persuasive. . . . The State must show at least that the challenged classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives. The justification must be genuine, not hypothesized or invented *post hoc* in response to litigation." *United States v. Virginia*, 518 U.S. 515, 533 (1996) (citations omitted). In order to survive constitutional challenge, Defendants must therefore show an exceedingly persuasive justification for the State's distinction between individuals convicted of a felony with a possible "sexual motivation" before the Act's effective date and those convicted thereafter, and must show that its chosen means – committing the former group on lesser proof of the sexual motivation – is substantially related to its articulated objectives. Defendants have not made this showing.

Defendants first claim that the Act as a whole furthers the State's interest in public safety. Def. Mem. at 17-18 (*citing Hendricks*, 521 U.S. 346; *Crane*, 534 U.S. 407; *Smith v. Doe*, 538 U.S. 84, 96 (2003)). But none of the authority cited by Defendants involved an equal protection challenge. Although sex offender civil commitment statutes may serve public safety interests in general, it does not follow that the State may pursue such commitment through any means available; rather, any statute authorizing such commitment must still comport with constitutional standards. *See Crane*, 534 U.S. at 412-13.

Next, Defendants claim that the State has an interest in ensuring that all sex offenders receive treatment, regardless of the date of their conviction. Def. Mem. at 18. But as argued above (*supra* at 7-8), the need for a lesser burden of proof with regard to *treatment* does not support a lesser burden of proof with regard to the predicate factual question of whether a person is actually a "sex offender." *See Addington*, 441 U.S. at 429.

10

Finally, Defendants argue that the lesser standard of proof of "sexual motivation" is appropriate because persons convicted of sexually motivated felonies after the Act's effective date will be subject to longer sentences and longer post-release supervision.  Def. Mem. at 18.  But the fact that the Legislature has chosen to impose increased criminal penalties in the future is not a reason that persons convicted previously should be more readily susceptible to civil commitment; indeed, Justice Kennedy made this very point in *Hendricks*, stating:

> The point . . . is not how long Hendricks and others like him should serve a criminal sentence. . . .  The concern instead is whether it is the criminal system or the civil system which should make the decision in the first place.  If the civil system is used simply to impose punishment after the State makes an improvident plea bargain on the criminal side, then it is not performing its proper function.  *These concerns persist whether the civil confinement statute is put on the books before or after the offense.*  We should bear in mind that while incapacitation is a goal common to both the criminal and civil systems of confinement, retribution and general deterrence are reserved for the criminal system alone.

*Hendricks*, 521 U.S. 346, 372-73 (Kennedy, J., concurring) (emphasis added).  Thus, the State has proffered no "exceedingly persuasive" justification for providing lesser protections to those convicted before the Act's effective date than to those convicted thereafter.

Other States employ a bifurcated procedure for determining the underlying sexual motivation for a non-sex crime beyond a reasonable doubt, even where the other questions before the jury utilize a clear and convincing evidence standard.  *See e.g.*, FLA. STAT. ANN. §§ 394.912(9)(a)-(h)(2007); 394.917(1)(2007) (jury determines sexual motivation beyond a reasonable doubt and then determines by clear and convincing evidence whether he is a "sexually violent predator.").   A similar bifurcated process is required here as a matter of equal protection.

    3.  Article 10 violates the due process and equal protection rights of incapacitated defendants.

Plaintiff claims that the Act violates the due process and equal protection rights of CPL

11

730 defendants, who were found incapacitated to stand trial and have never been convicted of any criminal offense, at two distinct stages of the Article 10 proceedings: first, when they are deprived of their liberty pending trial without any opportunity to challenge their commission of the underlying criminal acts, and second, when they are civilly committed as "sex offenders" without proof beyond a reasonable doubt that they committed the underlying criminal acts.[4]

> A. Article 10 permits incapacitated defendants to be committed pending trial without any determination that they ever committed the criminal conduct alleged.

In its Second and Third Claims, Plaintiff alleges that the due process and equal protection rights of the incapacitated defendants are infringed when they are detained pending trial without any court finding that they in fact committed the criminal conduct with which they were charged. *See* Compl. ¶¶ 59-60; 62. In rebuttal, Defendants challenge Plaintiff's assertion that a court, at the probable cause phase of the Article 10 proceedings, is precluded from making any finding as to whether the incapacitated defendant actually committed the conduct alleged, contending that Plaintiff's claim "arise[s] from a factually incorrect premise." Def. Mem. at 19-20. But the text of the Act is clear: "The respondent's commission of a sex offense shall be deemed established and shall not be relitigated at the probable cause hearing, whenever it appears that . . . the respondent was indicted for such offense by a grand jury but found to be incompetent to stand trial for such offense." MHL 10.06 (j).

---

[4]Defendant mis-characterizes Plaintiff's challenge to MHL 10.06 (j) (ii) (Second Claim) as a "blended due process and equal protection claim," and its challenge to MHL 10.07 (d) (Third Claim) as a substantive due process claim. Def. Mem. at 19. In fact, Plaintiff's Second Claim challenges both provisions of Article 10 on procedural due process grounds, while the Third Claim challenges both provisions on equal protection grounds. (Compl. ¶¶ 58-65). Plaintiff's Fourth Claim, not addressed by Defendants, asserts that the Act violates the due process rights of incapacitated defendants by subjecting them to a trial to determine their commission of criminal conduct, while such persons remain incapacitated to understand the nature of the proceedings against them or to aid in their defense.

While conceding that an Article 10 probable cause court cannot inquire into an incapacitated defendant's commission of an alleged sex offense, Defendants contend that the criminal indictment against these incapacitated persons is a "finding" sufficient to stand in for a criminal conviction for purposes of deeming the incapacitated person to have committed the offense.  Def. Mem. at 20-21.  Defendants completely misapprehend the function of a grand jury's indictment in New York.  It is not the grand jury's job to make a "finding" that any person in fact committed the crimes alleged; rather, the grand jury determines whether sufficient evidence exists to *accuse* a citizen of a crime, while the trial jury makes the ultimate determination of guilt or innocence.  *People v. Calbud, Inc.*, 49 N.Y.2d 389, 394 (1980).  The grand jury considers only whether the evidence presented, "viewed in the light most favorable to the People, if unexplained and uncontradicted, would be sufficient to warrant conviction by a trial jury."  *People v. Manini*, 79 N.Y.2d 561, 568-69 (1992).  The fact that a person has been indicted for a crime is not evidence that he committed it.  *United States v. Romano*, 706 F.2d 370, 374 (2nd Cir. 1983) ("an indictment is not evidence of guilt").

Notably, Defendants fail to mention that the consequence of this probable cause finding, at which incapacitated persons are precluded from challenging their commission of the underlying criminal conduct, is physical detention pending trial.  MHL 10.06 (k).  As a matter of due process, the risk of an erroneous deprivation of personal liberty is unacceptably high where an indictment is allowed to substitute for a fact-finder's determination that an accused actually committed the crime charged.  *See Matthews v. Eldridge*, 424 U.S. 319, 324 (1976) (setting forth balancing test for evaluating procedural due process claims).

Finally, even if due process could countenance Article 10's reliance on the truth of the allegations contained in the underlying indictments, Defendants have offered no basis whatsoever

for treating incapacitated defendants differently than all other persons, who have had an opportunity (at their criminal trials) to challenge the criminal acts alleged and to be convicted upon proof beyond a reasonable doubt.   Defendants sole argument on this point is that the provisions of Article 10 relating to incapacitated defendants are "comparable" to those relating to persons found not responsible of crimes by reason of a mental disease or defect.  Def. Mem. at 21, n.5.  But Defendants then point out that a jury's finding of "not responsible by reason of a mental disease or defect . . . means that the prosecution has established every element of the offense beyond a reasonable doubt."  *Id.*  This statement highlights precisely the same inequality addressed in Plaintiff's complaint: incapacitated defendants, unlike all other persons subject to Article 10 commitment – including those found not responsible by reason of a mental disease or defect – have never had their criminal conduct established beyond a reasonable doubt.  *See* Complaint, Claim Three.  Defendants point to no substantial state interest that would justify treating the incapacitated persons differently than all others.

> B.  Article 10 permits the commitment of incapacitated defendants in secure sex offender treatment facilities based only upon "clear and convincing evidence" that they committed criminal conduct, not proof beyond a reasonable doubt.

Defendant argues, correctly, that the Supreme Court has upheld civil commitment based on "clear and convincing evidence" of mental abnormality and dangerousness.  Def. Mem. at 21 (*citing Addington v. Texas*, 441 U.S. 418, 432-33 (1970); *Foucha v. Louisiana*, 504 U.S. 71, 75-76 (1992)).  Plaintiff does not contest that its constituents can validly be committed based on clear and convincing evidence of mental abnormality and dangerousness. However, under Article 10, evidence that a potential committee has committed sex offenses is also required.  *See* MHL 10.03 (g); *see also Kansas v. Crane*, 534 U.S. 407, 413 (2002) (proof must be "sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him

14

to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case."). It is this predicate for commitment – proof of criminal behavior – that Plaintiff contends must be shown beyond a reasonable doubt.

Because the commission of a sex crime is a factual determination, rather than an uncertain, subjective determination like a psychiatric diagnosis, it is susceptible to proof beyond a reasonable doubt. *See Addington*, 441 U.S. at 429 (proof beyond a reasonable doubt is justified in criminal and juvenile delinquency cases because "the basic issue is a straightforward factual question – did the accused commit the act alleged?" whereas "[g]iven the lack of certainty and the fallibility of psychiatric diagnosis, there is a serious question as to whether a state could ever prove beyond a reasonable doubt that an individual is both mentally ill and likely to be dangerous."). As to the straightforward factual question of whether the incapacitated defendant committed criminal acts constituting sex offenses, proof beyond a reasonable doubt is required.

Nearly all of the States with sex offender commitment statutes permit the commitment of incompetent persons only upon a beyond-a-reasonable-doubt finding, *see* Ariz. Rev. Stat. Ann. § 36-3707 (D) (2007); Iowa Code Ann. § 229A.7 (1) (2007); Kan. Stat. Ann. § 59-29a07(g) (2007); Mass. Gen. Laws ch. 123A, § 15; N.H. Rev. Stat. Ann. § 135-E:5 (2007); N.J. Stat. Ann. § 30:4-27.33 (c) (2007); S.C. Code Ann. 44-48-100(B) (2007); Wash. Rev. Code Ann. § 71.09.060 (2) (2007); or not at all, *see* Cal. Welf. & Inst. § 6600 (a)(1) (2007); Tex. Health & Safety Ann. § 841.003 (2007); Fla. Stat. Ann. § 394.912 (2); 725 Ill. Comp. Stat. Ann. 207/5 (2007); Mo. Rev. Stat. § 632.480 (5)(a) (2007). The fact that other states have, with near uniformity, adopted standards of proof more protective of the rights of incapacitated defendants "supports [the] conclusion that the [less-protective] standard offends a principle of justice that is deeply rooted in the traditions and conscience of our people." *Cooper v. Oklahoma*, 517 U.S.

348, 362 (1996) (*citing Medina v. California*, 505 U.S. 437, 445 (1992)).

Defendants do not even address Plaintiff's claim (Complaint, Third Claim) that MHL 10.07 (d) violates their equal protection rights by failing to afford them the same protection that is accorded to all other persons committed under Article 10, namely, proof beyond a reasonable doubt that the individual in question actually committed the criminal act.  *See* Compl. ¶¶ 63-65; Pl. Mem. at 15-16.  In the absence of any important state interest that would support giving fewer procedural protections to incapacitated defendants than to all other persons, the challenged provisions of Article 10 cannot be allowed to stand.  *See Baxstrom v. Herold*, 383 U.S. 107, 110 (1966) ("We hold that petitioner was denied equal protection of the laws by the statutory procedure under which a person may be civilly committed . . . without the jury review available to all other persons civilly committed in New York.").[5]

As to the incapacitated 730 defendants, Defendants' motion to dismiss should be denied and a preliminary injunction should issue to ensure that such persons are not deprived of their liberty under the Act unless their commission of the underlying criminal activity is proven by the State beyond a reasonable doubt, as it is for all other persons committed under Article 10.

---

[5]As previously noted, Defendants do not address Plaintiff's Fourth Claim (Compl. ¶¶ 66-69), that the trial of incapacitated persons offends substantive due process, where the issues at trial require the State to prove that such persons committed criminal acts.  Incapacitated persons have a "fundamental right" in avoiding criminal trial.  *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) "Nor is the significance of this right open to dispute. . . Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf[.]" *Id.* (*citing Riggins v. Nevada*, 504 U.S. 127, 139-40 (1992) (Kennedy, J., concurring)).  An incapacitated person is equally impaired in defending against the allegation that he committed a criminal act when that allegation is made in the context of an Article 10 proceeding.

4.  Confinement pending trial must be supported by a specific finding that a particular respondent is currently dangerous.

Plaintiff has alleged that Article 10 mandates the pre-trial detention of all respondents without any individualized determination that they pose a current danger to themselves or others if probable cause is found that the respondent is a "sex offender requiring civil management." Complaint, Seventh Claim; MHL 10.06 (k).  Plaintiff points out that under MHL 10.03 (q) and MHL 10.06 (k), a finding of probable cause that a person is a "sex offender requiring civil management" does not address that person's potential dangerousness to the community if he were released pending trial, especially since "civil management" specifically encompasses community-based out-patient treatment.  *See* MHL 10.03 (q), (r).  Defendant appears to agree with Plaintiff's reading of the statute, representing that "such a [probable cause] finding cannot be deemed a finding that the respondent does not present a danger to the public or will not likely engage in dangerous activity in the future."  Def. Mem. at 23.  In other words, the parties agree that the probable cause determination under Article 10 is not a finding about that person's current dangerousness or lack thereof.

But some individualized determination about dangerousness is essential at the probable cause stage, which results in mandatory pre-trial detention.  MHL 10.06 (k).  As previously argued, pre-trial detention is justified only where it is judicially determined that an individual presents an "identified and articulable threat to an individual or the community."  Pl. Mem. at 18 (*citing United States v. Salerno*, 481 U.S. 739, 751 (1987); *Foucha*, 504 U.S. at 80-82).

Defendants' only answer is that "detention pending trial is constitutional based on public safety considerations."  Def. Mem. at 22-23.  While the government's "interest in community safety can, *in appropriate circumstances*, outweigh an individual's liberty interest," *Salerno*, 481 U.S. at 748 (emphasis added), the Supreme Court has relied heavily on individualized findings of

17

dangerousness in upholding statutes that permit the pretrial detention of citizens. *See, e.g., Schall v. Martin*, 467 U.S. 253, 263 (1984) (upholding statute that "permits a brief pretrial detention based on a finding of a 'serious risk' that an arrested juvenile may commit a crime before his return date"); *Salerno*, 481 U.S. at 751 ("When the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, we believe that, consistent with the Due Process Clause, a court may disable the arrestee from executing that threat."). The generalized public safety interest asserted by Defendants is insufficient to overcome the individual's interest in liberty without an individualized determination of dangerousness. *See Zadvydas v. Davis*, 533 U.S. 678, 690-91 (2001) ("[W]e have upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections."); *United States v. Scott*, 450 F.3d 863, 874 (9th Cir. 2006) (in *Salerno*, "the Supreme Court upheld the constitutionality of a bail system where pretrial defendants could be detained only if the need to detain them was demonstrated on an individualized basis.").

Nor does the finding of probable cause to believe that a respondent suffers from a mental abnormality, without more, justify the pretrial detention. The constitution permits preventative detention based on mental illness or abnormality only where accompanied by current dangerousness, *see Foucha,* 504 U.S. at 77; *O'Connor v. Donaldson*, 422 U.S.563, 575 (1975), and even then, only where both the mental condition and the individualized dangerousness are proven by clear and convincing evidence, *see Addington*, 441 U.S. at 432-33. MHL 10.06 (k), which provides mandatory detention for two months or more based only on a showing of *probable cause* as to mental abnormality, and without any showing that release would pose a danger to the community, does not comport with due process.

18

This is not to say that pretrial detention would not be permissible if the State were to prove, on a case-by-case basis, that an individual respondent would pose a danger to the community if released pending trial under Article 10.  As the Eighth Circuit commented in striking down a statute that required mandatory pretrial detention for persons charged with certain crimes:

> [T]here exists a strong argument that [pretrial detention may be properly authorized] without encroaching on constitutional concerns where a judicial officer weighs all the appropriate factors and makes a reasoned judgment that the defendant . . . because of the overall record and circumstances, poses a threat to the community.  The fatal flaw in the [statutory scheme at issue] is that the state has created an irrebuttable presumption that every individual charged with this particular offense . . . is too dangerous to be granted release.

*Hunt v. Roth*, 648 F.2d 1148, 1164 (8th Cir. 1981), *vacated as moot sub nom.*, *Murphy v. Hunt*, 455 U.S. 478 (1982).  Like the scheme at issue in *Hunt*, Article 10 creates an irrebutable presumption, based on the nature of respondents' underlying crimes, that there are no circumstances in which they could safely be released pending trial.  By making pre-trial detention mandatory for all Article 10 respondents, the Act deprives the courts of any opportunity to make individualized determinations, based on all the evidence, about each person's dangerousness or lack thereof.  Compl. ¶¶ 78-79; MHL 10.06 (k).  Defendants' motion to dismiss should be denied and Plaintiff should be granted a preliminary injunction mandating that, as a baseline requirement of due process, pre-trial detention under Article 10 is only warranted where the State has proven, by clear and convincing evidence, that a particular individual presents a clear and articulable threat to an individual or to the community if not confined pending trial.

### 5.  The constituents are entitled to counsel at any psychiatric evaluation ordered by the Case Review Team.

Defendants contend that the New York legislature, in drafting the Article 10 provisions

19

that deny counsel to Article 10 respondents at psychiatric examinations "arranged"[6] by the case review team, but require counsel at psychiatric examinations arranged by the attorney general, was guided by a decision of the New York Appellate Division, Second Department, that requires counsel's presence at pre-hearing psychiatric examinations. Def. Mem. at 24-25 (*citing Ughetto v. Acrish*, 130 A.D.2d 12, 21 (2d Dep't 1987)). While Plaintiff agrees that *Ughetto* is persuasive authority in this context, Plaintiff disagrees with the conclusions that Defendants draw from the court's reasoning in that case.[7]

In *Ughetto*, the court relied upon both state statute and the federal due process clause to find that "we fail to see how, absent a sound reason, a patient can be denied an opportunity to have his or her legal representative present, either actually or constructively, during the conduct of activities which are directly related to [retention] proceedings." *Ughetto*, 130 A.D.2d at 23. Under *Ughetto*, the critical distinction is between "examinations related to treatment" and those "conducted solely for the purpose of preparing the examining psychiatrist for his testimony at the hearing." *Ughetto*, 130 A.D.2d at 23. *Ughetto* holds that counsel is required at the latter, but not the former. Defendants make no claim that the psychiatric examinations "arranged" by the case review team have any relation to treatment, but maintain that counsel is not required because the

---

[6]Defendants argue that the psychiatric examinations in question are not compelled, but only "arranged" by the case review team. Def. Mem. at 24. Defendants' contention that a respondent's participation in such an exam is purely voluntary is belied by the fact that failure to participate can result in an adverse jury charge at the Article 10 trial. MHL 10.07 (c). Defendants' argument is also at odds with the realities of prison life. Any person examined under MHL 10.05 (e) is a prison inmate whose release may be delayed if he does not participate in the examination. The prison inmate, told only that the exam has been "arranged" as part of the determination as to whether he will be civilly committed rather than released, is just as compelled as if under court order to participate.

[7]As Defendants concede, the *Ughetto* holding was grounded in federal constitutional concerns. Def. Mem. at 24. This Court has cited *Ughetto* as persuasive authority in other contexts. *See Goetz v. Crosson*, 728 F. Supp. 995, 1002 (1990).

exams are not solely for the purpose of preparing the psychiatrist to testify.   Def. Mem. at 24 (*citing Ughetto*, 130 A.D.2d at 23).

Defendants' argument ignores the testimonial aspects of the psychiatric examinations ordered by the case review team.   First, any report prepared by the examiner is expressly admissible in the Article 10 proceeding at the probable cause stage and at the final hearing that sets the terms of supervision for any Article 10 respondent.   *See* MHL 10.08 (g). The examiner is also a potential witness at the Article 10 trial.   *Id.*   At such a trial, any statements allegedly made by the respondent to the psychiatric examiner are expressly admissible under Article 10.   MHL 10.08 (a).   Furthermore, the examiner's assessment of the degree to which the respondent cooperated or did not cooperate with the examination is admissible evidence.   MHL 10.07 (c).   Finally, the respondent can be penalized with an adverse jury charge at the ultimate Article 10 trial if the court finds that he did not cooperate with the exam.   MHL 10.07 (c).   Thus, even if the psychiatric exams "arranged" under MHL 10.05 (e) are not *solely* for the purpose of preparing the examiner to testify, the exams have significant testimonial consequences at any subsequent trial.   On the *Ughetto* continuum between exams conducted for treatment and exams conducted to prepare for testimony, the exams under MHL 10.05 (e) are much closer to the testimonial-preparatory exams (for which counsel is required under *Ughetto*), particularly because the Case Review Team examiners are not doctors who have ever or will ever treat the individuals examined.[8]

---

[8]The New York state courts have not interpreted *Ughetto* so narrowly as Defendants suggest, but have found that counsel's presence is also required at examinations conducted for the purpose of determining the necessity of medicating a patient over her objection, even though the purpose of these examinations is not solely to prepare for testifying.   *See Matter of Bronx Psychiatric Center*, 283 A.D.2d 73, 76-77 (1ˢᵗ Dep't 2001); *Matter of Lesser v. Carmela M.*, 146 Misc.2d 1072, 1074-75 (Sup. Ct., Queens County 1989).

The *Ughetto* court explained that "[a] definitive procedural safeguard is required by due process only when the absence of such a safeguard would thwart the individual's right to a fair and just hearing." *Ughetto*, 130 A.D.2d  at 24 (citing *Snyder v. Massachusetts,* 291 U.S. 97, 107-108 (1934)).  The absence of counsel at the MHL 10.05 (e) examination thwarts the individual's right to a fair hearing because he has no notice of the potential consequences of his statements, or of his failure to participate, yet he is bound by his statements and the extent of his participation in all future Article 10 proceedings.  *See* MHL 10.08 (a) (statements made during exam are admissible evidence); MHL 10.08 (g) (examiner's report is admissible at probable cause stage; examiner may testify at trial); MHL 10.07 (c) (extent of respondent's participation in exam is admissible evidence; failure to participate can result in adverse jury charge).  Furthermore, in the absence of counsel or a recording of the examination, counsel's ability to cross-examine the doctor at trial about the context of any statements he may report the respondent as having made will be severely hampered.  *See Ughetto*, 130 A.D.2d at 24 ("Permitting counsel to observe at such examinations would . . . enhance the reliability of such hearings as to the truth-finding functions.").

"Assuming that the State's purpose is, as the defendants insist, to treat only those patients in need of treatment, then the observation by an advocate for the patient at critical prehearing psychiatric examinations cannot conceivably impair the achievement of that purpose."  *Ughetto*, 130 A.D.2d at 25.  Defendants' motion to dismiss Plaintiff's Ninth Claim should be denied, and a preliminary injunction should issue mandating the presence of counsel at any hearing conducted under MHL 10.05 (e).

6.  Article 10 infringes upon the constituents' right to confidentiality.

Plaintiff challenges the broad discretion accorded to OMH under new MHL

33.13 (c) (9) (vii) to release any information contained in an Article 10 respondent's clinical record, to any person or to the general public, if such disclosure is thought to be consistent with public safety.  (Complaint, Eighth Claim).  Defendant assumes, conclusorily, that "any disclosure here will not reveal for the first time an undisclosed medical condition."  Def. Mem. at 27 n.10. Defendants entirely miss the point.  Plaintiff is not concerned with the public disclosure of information that is already publically available.   "Certainly, there is no question that an individual cannot expect to have a constitutionally protected privacy interest in matters of public record." *See Doe v. City of New York*, 15 F.3d 264, 268 (2d Cir. 1994).  But clinical records of psychiatric patients document all kinds of medical conditions, from earaches to diabetes, hepatitis to herpes, that have never been made public.  MHL 33.13 (a) (clinical record contains all information relating to patient's care and treatment).  Plaintiff's concern is that the Act revises MHL 33.13 to permit the release of such confidential medical information about Article 10 patients.

The challenged provision permits the release of *any* "information about patients or clients . . . including . . . clinical records or clinical information" if the release of such information is deemed "necessary to protect the public concerning a specific sex offender requiring civil management." MHL 33.13 (c) (9) (vii).  This language is broad enough to permit the commissioner to publicly disclose, for example, that a particular sex offender residing in the community under strict and intensive supervision is HIV positive – information that would be contained in that person's clinical record and would be arguably connected to public safety, but information in which the individual's privacy interest would be particularly acute.  *See Doe,* 15 F.3d at 267 ("An individual revealing that she is HIV seropositive potentially exposes herself not to understanding or compassion, but to discrimination and intolerance, further necessitating the extension of the right to confidentiality over such information."); *see also Hirschfeld v. Stone*, 193

23

F.R.D. 175,185-87 (S.D.N.Y. 2000) (state enjoined from releasing reports about CPL 730 defendants that contained private medical information).

Plaintiff's claim is a limited one.  Plaintiff does not contend that Defendants cannot disclose the names of persons committed under Article 10, or the fact that such persons have been so committed.  *Cf.* MHL 10.08 (g) (Article 10 proceedings are presumptively open to the public, although courtroom may be closed, or documents sealed, for good cause).  Plaintiff is only concerned with the potential for disclosure of confidential information about medical or psychiatric conditions contained within its constituents' clinical records.  As to such information, the constituents' privacy interest is strong, and there is no countervailing public interest favoring release.

## III.  Appropriate Defendants

Defendants allege not only that the Plaintiff's motion for preliminary injunction fails to state a cause of action, but that even if it did, Defendants Spitzer, Fischer, and Ritter are not sufficiently implicated in the challenged legislation, and therefore the claims against them should be dismissed. Defendants underestimate their official duties under Article 10.

Defendants contend that Governor Spitzer is immune from suit on the basis of his role in enacting or enforcing legislation. But Governor Spitzer's role in enforcing new Article 10 goes beyond passive enforcement.  As Governor, Defendant Spitzer directs and guides the actions and policy decisions of State agencies, including the Office of Mental Health [OMH] and Attorney General's Office, and in this capacity, he is inextricably implicated in the State's interpretation of Article 10.  *See Deary v. Guardian Loan Co.*, 563 F. Supp. 264, 264 (S.D.N.Y. 1983) ("a plaintiff challenging the constitutionality of a state statute need not name as defendants only the state officials responsible for the ministerial acts in connection with the enforcement of the statute").

Defendants Fischer and Ritter are "the heads of state agencies with particular responsibility over the challenged statute." *Mayers v. New York Cmty. Bankcorp*, 2006 U.S. Dist. LEXIS 48778, *16 (2006) (*citing Warden v. Pataki*, 35 F.Supp.2d 354, 359 (S.D.N.Y. 1999)). "[B]y virtue of [their] office[s]," Defendants Fisher and Ritter have "some connection with enforcement of the act," making them proper defendants in "a suit to restrain the enforcement of an allegedly unconstitutional statute[.]" *Id.* (*citing Ex Parte Young*, 209 U.S. 123, 157 (1908)).

Specifically, as the Commissioner of the Department of Correctional Services, Defendant Fischer is in charge of an "agency with jurisdiction" to refer individuals for assessment as possible sex offenders in need of civil management. MHL10.03(a). He is also implicated by the continuing retention of individuals pending a case review team evaluation allowed under MHL 10.06 (h), as well as by the Act's provisions allowing for continued retention under a securing petition pursuant to MHL 10.06 (f). Consequently, Defendant Fischer has "particular responsibility" to enforce the provisions of the statute "by virtue of his office," and he is therefore a proper defendant.

Similarly, Defendant Ritter is the Commissioner of the New York State Office of Mental Retardation and Developmental Disabilities (OMRDD). OMRDD is also listed as an "agency with jurisdiction" under MHL 10.03 (a). In enforcing the Act, Defendant Ritter will be required not only to refer individuals for evaluation, but may also be required to direct her agency in providing treatment and services to sex offenders that are diagnosed with a developmental disability and require specialized treatment or retention. She is implicated by the Act's provisions in her official capacity, and is therefore an appropriate defendant.

<u>CONCLUSION</u>

For the reasons discussed herein and in Plaintiff's prior submission, this Court should issue a preliminary injunction to enjoin the State from implementing the challenged portions of the Act.  A temporary restraining order is requested pending a final determination on the preliminary injunction motion to prevent irreparable harm to MHLS's constituents while these issues are under consideration.  Finally, Plaintiff requests that Defendants' motion to dismiss be denied.

Dated: June 6, 2007
      New York, New York

                              MARVIN BERNSTEIN, Director
                              Mental Hygiene Legal Service, First Department
                              SIDNEY HIRSCHFELD, Director
                              Mental Hygiene Legal Service, Second Department
                               S/
                              _____
                              By: Sadie Zea Ishee (SI-9540)
                              Senior Staff Attorney
                              Dennis Feld (DF-2803)
                              Deputy Director of Special Litigation and Appeals
                              41 Madison Ave., 26th Floor
                              New York, New York 10010
                              Phone:  (212) 779-1734

26