UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MENTAL HYGIENE LEGAL SERVICE,

                Plaintiff,

     -and-

SHAWN S.,
                                          Docket Number
     Proposed Plaintiff-Intervenor,        07-CV-2935 (GEL)
                                          (THK)
     -against-

ELIOT SPITZER, in his official capacity as Governor
of the State of New York, ANDREW CUOMO, in his
official capacity as Attorney General of the State of
New York, MICHAEL HOGAN, in his official capacity
as Commissioner of the New York state Office of Mental
Health, DIANA JONES RITTER, in her official capacity
as Commissioner of the New York State Office of
Mental Retardation and Developmental Disabilities, and
BRIAN FISCHER, in his official capacity as Commissioner
of the New York state Department of Correctional Services,

                Defendants.

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTIONS TO INTERVENE, A TEMPORARY
RESTRAINING ORDER, AND TO PROCEED
ANONYMOUSLY**

                                   MENTAL HYGIENE LEGAL SERVICE
                                   THIRD JUDICIAL DEPARTMENT
                                   Sheila E. Shea, Director
                                   40 Steuben Street, Suite 501
                                   Albany, New York 12207
                                   Phone: (518) 474-4453

Hollie S. Levine, Esq.   of Counsel

(i)
**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

THE INTERVENOR'S UNDERLYING CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

POINT I

      PERMISSION TO INTERVENE
      SHOULD BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

POINT II

      THE FEDERAL COURT
      SHOULD NOT ABSTAIN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

POINT III

      A TEMPORARY RESTRAINING
      ORDER SHOULD BE ISSUED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

POINT IV

      INTERVENOR SHOULD BE GRANTED
      PERMISSION TO PROCEED ANONYMOUSLY . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Addington v. Texas*, 441 U.S. 418, 432-33 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Allegeny v. Frank Mashuda Co.*, 360 U.S. 185 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bronx Household of Faith v. Cmty. Sch. Dist.,* 331 F.3d 342, 349 (2d Cir. 2003) . . . . . . . . . . . 10

*Christ the King Regional High School v. Culvert*, 815 F.2d 219, 223-224 (2d Cir.), *cert. denied*, 484 U.S. 830 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. 619 (1986), . . . . . . . . . . . . . . . . 8

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) . . . . . . . . . . . 7

*Davis v. Smith*, 431 F. Supp. 1206, 1209 (S.D.N.Y. 1977) *aff'd*, 607 F.2d 535 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Degranfinreid v. Ricks*, 417 F. Supp. 2d 403, *on reconsideration,* 452 F. Supp. 2d 328 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Diamond "D" Construction Corp. v. McGowan*, 282 F.3d 191 (2d Cir. 2002) . . . . . . . . . . . . . 8

*Doe v. Shakur,* 164 F.R.D. 359 (S.D.N.Y 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ellender v. Schweiker*, 550 F. Supp. 1348, 1360 (S.D.N.Y. 1982) . . . . . . . . . . . . . . . . . . . . *4*

*Gerstein v. Pugh*, 420 U.S. 103 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*H.L. Hayden Co. Of New York v. Siemens Medical Systems*, 797 F.2d 85, 89 (2d Cir. 1986) . . . 5

*Huffman v. Pursue*, 420 U.S. 592 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*McNeill v. New York City Housing Authority*, 719 F. Supp. 233 (S.D.N.Y. 1989) . . . . . . . . . . 4,5

*Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982) . . . 8

*O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Rivers v. Califano*, 86 F.R.D. 41, 44 (S.D.N.Y. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

# TABLE OF AUTHORITIES CONT'D

*Spargo v. N.Y. Comm'n. on Judicial Conduct,* 351 F.3d 65, 88 (2d Cir. 2003)
*cert. den.*, 541 U.S. 1085 (2004) .................................................. 7

*Swift v. Toia*, 450 F. Supp. 983 (S.D.N.Y. 1978) *aff'd*, 598 F.2d 312 (2d Cir. 1979)
*cert. den.*, 441 U.S. 1025 (1980) .................................................. 4

*United States v. Pitney Bowes*, 25 F.3d 66, 70, 73 (2d Cir. 1994) ........................ 4

*United States v. Salerno*, 481 U.S. 739, 751 (1987) ................................. 3

*United States Postal Service v. Brennan*, 579 F.2d 188 (2d Cir. 1978) .................... 4

*Village of Westfield v. Welch's*, 170 F.3d 116 (2d Cir. 1999) ........................... 7

*Visa Check/Master Money Antitrust Litigation*, 190 F.R.D. 309, 312 (E.D.N.Y. 2000) ........ 6

*Younger v. Harris*, 401 U.S. 37, 43-54 (1971) ................................. 7,8,9,10

*Zadvydas v. Davis*, 533 U.S. 678, 690-691 (2001) .................................. 3

**FEDERAL RULES OF CIVIL PROCEDURE**

    Rule 24(b) ................................................................. 3,4,5

    Rule 24(b)(2) ................................................................ 4

**CRIMINAL PROCEDURE LAW**

    CPLR 5519 .................................................................. 10

**MENTAL HYGIENE LAW**

    Article 10 ............................................................. passim

    Section 10.03(q) ........................................................... 3,13

    Section 10.03(r) ............................................................. 3

    Section 10.06(h) ............................................................. 2

    Section 10.06(k) ........................................................ passim

    Section 10.07 ................................................................ 2

    Section 10.08(g) ............................................................ 12

## PRELIMINARY STATEMENT

This reply memorandum of law is submitted on behalf of the proposed plaintiff-intervenor (Shawn S.). This action seeks declaratory and injunctive relief concerning certain aspects of New York's Sex Offender Management and Treatment Act ("SOMTA"), codified in part, in Article 10 of the New York State Mental Hygiene Law ("MHL"). The motion of Shawn S. for permission to intervene in this action, for a temporary restraining order and to proceed anonymously should be granted.

## STATEMENT OF FACTS

As alleged in the intervenor complaint, Shawn S. (the "intervenor") was convicted in May, 1992 of sodomy, rape, and acting in a manner injurious to a child. He was sentenced to an indeterminate period of incarceration of 5 to 15 years in a New York State correctional facility. The intervenor served ten years in prison and was initially released on parole in May, 2002. However, his parole was revoked in January, 2003, and he was returned to prison. The intervenor was again released to parole supervision on October 31, 2005.

Since his release in October, 2005 the intervenor has successfully fulfilled all of the conditions of his parole. He has had no parole violations whatsoever since his release in October 2005. The intervenor is currently employed and successfully completed an out-patient sex offender treatment program in approximately May of 2007.

The intervenor was scheduled to be released from parole supervision on June 10, 2007. However, on June 8, 2007, the New York State Attorney General's Office (OAG) commenced a Sex Offender Civil Management Petition, under article 10 of the MHL. The proceeding was commenced in Tioga County Supreme Court and later removed to Schuyler County Supreme

Court.[1]   Parole supervision of the intervenor has continued pending an MHL Article 10 probable cause hearing pursuant to MHL § 10.06(h).  The State's objective in filing the SOMTA petition against the intervenor is not to seek his commitment to a "secure treatment facility."  Rather the State's objective is to seek outpatient commitment through an order of "strict and intensive supervision" administered by the Division of Parole.

## THE INTERVENOR'S UNDERLYING CLAIM

If the State Court finds probable cause to believe that the intervenor is a sex offender requiring civil management, the State statutory scheme **requires the intervenor be subject to mandatory pre-trial detention in a secure facility**.  Automatic commitment is required despite the fact that the intervenor has been free on parole for two years.  Section 10.06(k) provides as follows:

> At the conclusion of the hearing, the court shall determine whether there is probable cause to believe that the respondent is a sex offender requiring civil management...  If the court determines that probable cause has been established: (i) the court shall order that the respondent be committed to a secure treatment facility designated by the commissioner for care, treatment and control upon his or her release; (ii) the court shall set a date for trial in accordance with subdivision (a) of section 10.07 of the article; and (iii) the respondent shall not be released pending the completion of such trial.

A probable cause determination that an article 10 respondent is a sex offender requiring civil management does not equate with a finding of dangerousness.  Rather, a sex offender requiring civil management can mean either that the offender (1) is a dangerous offender requiring confinement *or* (2) a sex offender requiring strict and intensive supervision.  MHL § 10.03(q).  By definition, a "sex offender requiring strict and intensive supervision" means a

---

[1]   The State Supreme Court Justice assigned to the matter is the Hon. Elizabeth A. Garry.

detained sex offender who suffers from mental abnormality but *not* a dangerous sex offender requiring confinement. (emphasis added) MHL § 10.03(r).[2]

Thus, MHL § 10.06(k) does not permit a State court any discretion whatsoever to permit the intervenor to remain in the community on parole supervision while awaiting trial, even though the State is not contending that he is dangerous.

The mandatory detention provision of MHL § 10.06(k), absent a finding of dangerousness, is clearly unconstitutional. The Supreme Court has held that a person can be civilly committed on the basis of a mental illness or abnormality only upon clear and convincing evidence that the person poses a danger to himself or others. *Addington v. Texas*, 441 U.S. 418, 432-33 (1979); *O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975). Further, the Supreme Court has held that pre-trial detention must be predicated on *particularized findings* that the person would be dangerous if released pending trial. *Zadvydas v. Davis*, 533 U.S. 678, 690-691 (2001); *United States v. Salerno*, 481 U.S. 739, 751 (1987).

## ARGUMENT

### POINT I

### PERMISSION TO INTERVENE SHOULD BE GRANTED

The intervenor brings this motion for permissive intervention pursuant to Rule 24(b) of the Federal Rules of Civil Procedure which provides, in pertinent part:

> Upon timely application anyone may be permitted to intervene in an action... (2) when an applicant's claim or defense and the main action have a question of law or fact in common...

---

[2] The State's memorandum of law repeatedly states that the probable cause determination itself is a determination that the respondent would be dangerous if released to the community. This is simply not the case as the statutory definition of "sex offender requiring civil management," quoted above, clearly demonstrates.

The prerequisites for permissive intervention are satisfied where a single common question of law or fact is involved. *Ellender v. Schweiker*, 550 F. Supp. 1348, 1360 (S.D.N.Y. 1982); *Swift v. Toia*, 450 F. Supp. 983 (S.D.N.Y. 1978) *aff'd*, 598 F.2d 312 (2d Cir. 1979), *cert. den.*, 441 U.S. 1025 (1980). Rule 24(b)(2) is to be liberally construed. *See, e.g. McNeill v. New York City Hous. Auth.*, 719 F. Supp. 233, 250 (S.D.N.Y. 1989) citing *Davis v. Smith,* 431 F. Supp. 1206, 1209 (S.D.N.Y.) *aff'd.,* 607 F.2d 535 (2d Cir. 1978).

Although it is well settled that intervention is solely at the discretion of the District Court, *United States Postal Service v. Brennan*, 579 F.2d 188 (2d Cir. 1978), the principal guide in deciding whether to grant permissive intervention is "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *United States v. Pitney Bowes*, 25 F.3d 66, 70, 73 (2d Cir. 1994) (quoting FRCP 24[b][2]).

Applying the Rule 24(b) factors to this case, it is clear that granting the intervenor's motion will not produce either undue delay or prejudice to the adjudication of the rights of the existing parties. For instance, there is no prejudice to the defendants as this motion to intervene has been made early in the litigation. Nor is there any claim to be made that intervention will prejudice the existing institutional plaintiffs (MHLS 1st and 2nd). In this regard, since the proposed intervenor is represented by the Mental Hygiene Legal Service for the Third Judicial Department (a sister State agency to the named plaintiffs) undue delay, complication or procedural difficulty is unlikely to arise from intervention. *See*, *e.g.*, *Davis v. Smith*, 431 F. Supp. at 1209; *Rivers v. Califano*, 86 F.R.D. 41, 44 (S.D.N.Y. 1980).

As noted above, the existence of a single common question of law or fact furnishes a sufficient nexus between the proposed intervenor and the underlying action to support an

allowance of intervention. *McNeill v. New York City Housing Authority*, *supra*, 719 F. Supp. at 250. In this case, the common question of law is the constitutionality of the automatic commitment provision of MHL § 10.06(k). However, beyond a mere facial sufficiency, the Second Circuit has identified four additional factors warranting analysis in a claim for Rule 24(b) intervention:

(1) The benefit of intervention to the proposed intervenor;

(2) The nature and extent of the interests the proposed intervenor shares with the named plaintiffs in the main action;

(3) The adequacy of representation of the proposed intervenor's interests by the named plaintiffs in the main action; and

(4) The benefit resulting from intervention, to the Court's full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented. *H.L. Hayden Co. Of New York v. Siemens Medical Systems*, 797 F.2d 85, 89 (2d Cir. 1986).

Intervention will benefit the intervenor by furnishing him certain representation in the instant federal action which, in part, challenges the automatic commitment provisions of MHL § 10.06(k). The defendants attempt to deflect the significant interest that the intervenor has in this federal action by suggesting that the article 10 probable cause hearing may not go forward in the near future. Quite the contrary, the expectation is that the article 10 proceeding will move forward toward a probable cause hearing, now the State Supreme Court Justice presiding over the matter has signed an order dated August 15, 2007, appointing a psychiatric examiner.

Moreover, the interests of the proposed intervenor and the named institutional plaintiffs (MHLS 1st and 2nd) are clearly aligned. The intervenor's claim that the automatic commitment provision of MHL § 10.06(k) violates his federal institutional rights, is also a claim asserted by the institutional plaintiffs. The OAG asserts in opposition to the intervention motion that the

intervenor's interests are adequately represented by the institutional plaintiffs (MHLS 1st and 2nd). However, the institutional plaintiffs do not face the real harm confronting the intervenor. That is, the institutional plaintiffs do not face the prospect of automatic commitment to a secure treatment facility. The intervenor has a heightened liberty interest in appearing in this matter by his own counsel to advance the argument that the automatic commitment provision of MHL § 10.06(k) is unconstitutional.

Finally, the OAG maintains that the facts of the intervenor's situation "add nothing" to the development of the issues in this case. Just the opposite is true. The intervenor's factual situation clearly lends a context for this Court to decide the legal issues presented. The dire consequences of an automatic commitment following a probable cause hearing are very real to the intervenor. There is no dispute that the intervenor has lived successfully in the community for over two years, and that the OAG did not commence the article 10 proceeding for any reason other than to secure an order of intensive outpatient supervision. Thus, the intervenor's case graphically illustrates the constitutional infirmity of the automatic commitment provisions of MHL § 10.06(k).

Contrary to the assertions of the OAG, permitting intervention in this case "clearly will assist in developing and resolving the factual and legal disputes in the litigation," to the benefit of the existing parties and the Court. *In re Visa Check/Master Money Antitrust Litigation*, 190 F.R.D. 309, 312 (E.D.N.Y. 2000); *Degranfinreid v. Ricks*, 417 F. Supp. 2d 403, *on reconsideration,* 452 F. Supp. 2d 328 (S.D.N.Y. 2006). For these reasons, the intervention motion should be granted.

## POINT II

## THE FEDERAL COURT SHOULD NOT ABSTAIN

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 420 U.S. 800, 813 (1976). The doctrine of abstention is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. *Allegheny v. Frank Mashuda Co.*, 360 U.S. 185 (1959)." "Abdication of the obligation to decide cases can be justified under this doctrine only in exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." *id* at 188-189.

There are several traditional categories of abstention. *See, generally, Village of Westfield v. Welch's*, 170 F.3d 116 (2d Cir. 1999). The category of abstention invoked by the OAG in this case is *Younger* abstention. *See, Younger v. Harris*, 401 U.S. 37, 43-54 (1971) - abstention when there is a pending state proceeding. Under the *Younger* abstention doctrine a federal court should decline to exercise jurisdiction (1) where there is an ongoing State proceeding; (2) involving an important State interest; and (3) where the plaintiff has an adequate opportunity for judicial review of his constitutional claims during or after the proceeding. *Spargo v. N.Y. Comm'n. on Judicial Conduct*, 351 F.3d 65, 77 (2d Cir. 2003), *cert. den.*, 541 U.S. 1085 (2004).

In the intervenor's case, the abstention doctrine does not apply because (1) the intervenor does not seek to enjoin the pending State proceeding from going forward; (2) the underlying federal action was filed before the pending State court proceeding; (3) the practical effect of abstention in this case would be a monumental waste of resources; and (4) the State courts cannot afford adequate protection for the intervenor's constitutional interests.

In each of the abstention cases relied upon by the defendants, a federal action was commenced to enjoin a pending state court or administrative proceeding from going forward. *See, e.g.*, *Diamond "D" Construction Corp. v. McGowan*, 282 F.3d 191 (2d Cir. 2002), plaintiff sought to enjoin ongoing State administrative proceeding; *Huffman v. Pursue*, 420 U.S. 592 (1975), plaintiff sought to enjoin State nuisance proceeding; *Civil Rights Comm'n. v. Dayton Christian Schools*, 477 U.S. 619 (1986), plaintiff sought to enjoin state civil rights commission from exercising jurisdiction over sexual discrimination complaint; *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982), plaintiff sought to enjoin proceedings of a state attorney disciplinary proceeding; *Christ the King Regional High School v. Culvert*, 815 F.2d 219, 223-224 (2d Cir.), *cert. denied*, 484 U.S. 830 (1987), plaintiff argued that the First Amendment precluded the state labor relations board from exercising jurisdiction.

The *Younger* abstention doctrine is inapplicable here because the intervenor does not seek to enjoin the state court from determining the article 10 proceeding commenced by the OAG. To the contrary, the intervenor is participating in that proceeding and most recently requested that State Supreme Court appoint a psychiatric examiner. The only immediate relief sought by the intervenor in federal court is a determination that he may not be held in secure confinement during the pendency of the state court proceeding, absent a finding by the state court that he would pose a danger to others were he to remain at liberty pending trial.

The intervenor's case is analogous to the Florida prisoners who claimed a constitutional right to a judicial hearing on the issue of probable cause for pretrial detention and were awarded declaratory and injunctive relief by the federal courts. *Gerstein v. Pugh*, 420 U.S. 103 (1975). The federal courts in *Gerstein* did not apply *Younger* abstention because the claims raised in the

federal complaint did not prejudice the conduct of the State prosecutions on the merits. The same is true here, as it is not the intervenor's intention to enjoin the State's prosecution of its article 10 application.[3]

In addition, in this case, the underlying federal action was filed first. The fact of the matter is that the intervenor seeks to intervene in a *pending* federal action which was commenced almost three month *before* the OAG filed the article 10 petition in state court. The underlying action bought by the institutional plaintiffs raises substantive federal due process claims. The federal court will presumably reach the merits of those claims whether or not the intervention motion is granted. The OAG's attempt to defeat the intervenor's constitutional claim under the guise of abstention rings hollow under these circumstances.

The practical negative consequence of abstention in the intervenor's case is that it will lead to extensive motion practice in state court and duplicative litigation with the possibility of inconsistent state court judgments. In other words, abstention will result in a waste of scarce State resources as the intervenor's federal constitutional claim will be subject to litigation in multiple state forums at trial and upon appeal.

Finally, the *Younger* abstention doctrine should not apply in this case to defeat intervention the intervenor because the state courts will not be able to afford adequate protection to the intervenor. Even if the intervenor were to prevail in his federal constitutional claim in state court, the OAG would be entitled to an automatic stay of that decision as a matter of law (CPLR 5519). The result would be that the intervenor would be subject to the very harm he

---

[3] Should this Court deem it appropriate, the intervenor will amend his prayer for relief in the proposed intervenor complaint to make clear that he is not seeking to enjoin the State court from proceeding in his case and only seeks a determination that a particularized finding of dangerousness is constitutionally required to detain him in secure confinement pending trial.

seeks to avoid - a mandatory period of detention and attendant loss of livelihood - while he attempts to vindicate his federal constitutional rights in state court. Such a result is particularly offensive under the circumstances presented by this case, given that the OAG's objective in commencing the article 10 proceeding is <u>not</u> to cause the secure confinement of the intervenor. Rather, the Attorney General's objective is to secure an <u>outpatient</u> order of strict and intensive supervision.

For all of the reasons stated herein, the *Younger* abstention doctrine should not be applied to defeat the intervention motion of Shawn S.

## POINT III

## A TEMPORARY RESTRAINING ORDER SHOULD BE ISSUED

A plaintiff seeking preliminary injunctive relief must demonstrate both irreparable harm if the injunction is not issued and a "substantial likelihood of success on the merits." *Bronx Household of Faith v. Cmty. Sch. Dist.,* 331 F.3d 342, 349 (2d Cir. 2003). The proposed intervenor has stated a viable cause of action, as noted in the proposed complaint, and has demonstrated a likelihood of success on the merits.

The OAG does not refute any of the possible injuries to the proposed intervenor that will result if a temporary restraining order is not issued. The OAG simply makes the broad statement that the intervention request does not present the kind of immediate and irreparable injury which would warrant a temporary restraining order.

It is difficult to imagine a situation in which a person could incur more immediate harm or immediate injury than the situation faced by the intervenor should a temporary restraining order of the automatic commitment provisions of MHL § 10.06(k) not be issued.

The intervenor will suffer immediate and irreparable injury if the state court determines that there is probable cause to believe that he is a sex offender requiring civil management. Pursuant to MHL § 10.06(k) and absent any finding of dangerousness, he will be physically confined. He will lose his liberty, his freedom of movement and his freedom of association. Further, the intervenor will lose his employment, his place of residence and will not be able to meet his financial obligations, such as utility payments and an automobile loan. Nor can the intervenor wait to try and vindicate his constitutional rights until after the probable cause hearing is held. The statute requires that he be *immediately* confined upon a probable cause finding.

The SOMTA proceeding was adjourned by the State court for two reasons: first, to allow the intervenor to obtain an independent expert examination and second, because of the need to resolve the issue of the constitutionality of the mandatory detention provision of MHL §10.06(k). The OAG did not previously object to the adjournment of the article 10 proceeding for these reasons, but now, inexplicably, opposes intervention.

The immediate and irreparable harm to the intervenor if a temporary restraining order is not issued is even more apparent by the fact that if he is ultimately found after trial to be a detained sex offender who suffers from a mental abnormality, the OAG has indicated that it will *not* be seeking commitment to a secure facility. Rather the OAG will be seeking commitment to intensive supervision in the community on conditions fixed by the court. There is absolutely no legitimate purpose served by the intervenor's automatic commitment pending trial when the OAG has not alleged that the intervenor is dangerous and in need of secure confinement.

The intervenor has met the burden required of him to obtain preliminary relief in the form of a declaration that a particularized finding of dangerousness is constitutionally required to

detain him in secure confinement pending trial.

## POINT IV

**INTERVENOR SHOULD BE GRANTED PERMISSION TO PROCEED ANONYMOUSLY**

In evaluating the privacy interests of a plaintiff who wishes to file under a pseudonym, the court will evaluate five factors:

(1) Whether the plaintiff is challenging governmental activity;

(2) Whether the plaintiff would be required to disclose information of the utmost intimacy;

(3) Whether the plaintiff would be required to disclose information of the utmost secrecy;

(4) Whether the plaintiff would risk suffering injury if identified and whether the party defending against a suit brought under a pseudonym would be prejudiced. *See Doe v. Shakur,* 164 F.R.D. 359 (S.D.N.Y. 1996).

These factors were discussed fully in the memorandum of law submitted in support of the motion to proceed anonymously.

The OAG argues that since there is a pending action in New York State Supreme Court naming the proposed intervenor and there has not been a motion to seal the papers, that the motion to proceed by pseudonym in federal court should be denied. MHL § 10.08(g) permits for the sealing of the papers upon application of either party for good cause shown. The fact that SOMTA permits an application to seal the case is clear indication that the New York State Legislature recognized the sensitive and confidential matters that would be dealt with in these proceedings. While no application has been made yet to seal the article 10 proceeding, an application will be made at the first appearance before the State Supreme Court.

Moreover, the identification of the intervenor as a plaintiff in a federal law suit involving

a highly publicized statute would undoubtably cause him to be the subject of statewide or even national attention. This could likely result in community reprisals for intervenor. While it is true that intervenor's conviction is a matter of public record, he has been residing quietly and in a law abiding manner in a small rural upstate New York community. Requiring the intervenor to proceed in this federal litigation without the protection of anonymity will undoubtably subject him to the public light.

Finally, the OAG misstates the issue presented in the article 10 proceeding in state court. The issue presented is not simply whether or not the intervenor suffers from a "mental abnormality." The issue at the probable cause hearing is whether of not there is probable cause to believe that the respondent is a "sex offender requiring civil management." *See* MHL § 10.03 (q). In order to meet its burden of proof the state will be required to present evidence of the intervenor's psychological condition. His conviction alone is not enough to establish the need for civil management. Therefore, the fact that the intervenor's conviction is a matter of public record does not mean that the sensitive evidence to be presented concerning the intervenor's psychological condition should be public information.

Intervenor has sufficiently demonstrated his need to prosecute this case anonymously. Accordingly, his motion to proceed anonymously should be granted.

## CONCLUSION

The motion of Shawn S. for permission to intervene in this action, for a temporary restraining order and to proceed anonymously should be granted.

Dated: Binghamton, New York
September 5, 2007

SHEILA E. SHEA, ESQ., DIRECTOR
Mental Hygiene Legal Service
Third Judicial Department
Attorneys for Shawn S.

s/_____

By:
Hollie S. Levine
MHLS Associate Attorney
44 Hawley Street - 16th Floor
Binghamton, New York 13901
(607) 721-8440