UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Original filed by ECF

MENTAL HYGIENE LEGAL SERVICE,

Plaintiff,

- against -

ANDREW CUOMO, in his official capacity as Governor
of the State of New York, ERIC T. SCHNEIDERMAN,
in his official capacity as Attorney General of the State
of New York, KRISTIN M. WOODLOCK, in her
official capacity as Commissioner of the New York State
Office of Mental Health, COURTNEY BURKE, in her
official capacity as Commissioner of the New York State
Office of Mental Retardation and Developmental
Disabilities, and BRIAN FISCHER, in his official
capacity as Commissioner of the New York State
Department of Correctional Services,

Defendants.

07-CV-2935 (DAB) (AJP)

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

ERIC T. SCHNEIDERMAN
Attorney General of the
State of New York
*Attorney for the Defendants*
120 Broadway
New York, New York 10271
(212) 416-8567

JOSHUA PEPPER
Assistant Attorney General
*Of Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................iii

PRELIMINARY STATEMENT ......................................................................................... 1

SUMMARY OF ARGUMENT ........................................................................................... 1

FACTS AND PROCEDURAL HISTORY ......................................................................... 2

A.  MHLS's Statutory Structure and Its Mission To Provide Legal Services .............................. 2

B.  MHLS's Directors Determine Its Litigation Priorities ........................................................... 4

C.  Defending Article 10 Respondents Is Part of MHLS's Statutory Mandate
    To Provide Legal Services ...................................................................................................... 5

D.  Procedural History of This Action .......................................................................................... 5

ARGUMENT ....................................................................................................................... 7

I.  MHLS LACKS ASSOCIATIONAL STANDING TO ASSERT THE RIGHTS OF ITS
    CLIENTS ..................................................................................................................... 7

    A.   An Organization May Not Bring 42 U.S.C. § 1983 Claims on Behalf
         of Individuals ..................................................................................................... 7

    B.   MHLS Fails the Test for Associational Standing Because It Has No Members ........... 8

         1.  MHLS Misstates the Legal Standard for Associational Standing ........................... 8

         2.  MHLS Fails the *Hunt* Test for Functional Equivalency of a Membership
             Organization ...................................................................................................... 10

             a.  MHLS's Clients Possess None of the Indicia of Membership ........................ 10

                 i.  MHLS's clients do not elect or select MHLS's leadership ........................ 11

                 ii.  MHLS's clients do not finance MHLS's activities ................................... 11

                 iii.  MHLS's clients do not "serve on" MHLS or direct or guide
                      MHLS's activities ...................................................................................... 12

                 iv.  MHLS cannot acquire standing without the indicia of membership .......... 13

b.  MHLS Lacks the Necessary Nexus With Its Clients' Interests that
May Be Affected by the Outcome of This Litigation ...................................... 17

II.    MHLS LACKS THIRD-PARTY STANDING ................................................................. 19

A.    MHLS Lacks Article III Standing............................................................................ 20

1.  MHLS Has Not Suffered an Injury in Fact ............................................................ 20

2.  MHLS Has No Injury Fairly Traceable to Any Conduct
by Any Defendant ................................................................................................... 21

3.  MHLS Cannot Demonstrate that a Favorable Decision
Would Likely Redress or Prevent its Alleged Injury............................................. 22

B.  MHLS's Clients Face No Impediment To Asserting
Their Own Rights at Their Own Article 10 Proceedings........................................ 23

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*Allen v. Wright,*
    468 U.S. 737 (1984)........................................................................................22

*Ass'n for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trustees,*
    19 F.3d 241 (5th Cir. 1994) ...........................................................................13

*Bailey v. Pataki,*
    722 F. Supp. 2d 443 (S.D.N.Y. 2010)..........................................................23

*Bano v. Union Carbide Corp.,*
    361 F.3d 696 (2d Cir. 2004)...........................................................................18

*Basel Action Network v. Maritime Administration,*
    370 F. Supp. 2d 57 (D.D.C. 2005) ..................................................................9

*Bernstein v. Pataki,*
    233 F. App'x 21 (2d Cir. Apr. 3, 2007) .........................................................17

*Caplin & Drysdale v. U.S.,*
    491 U.S. 617 (1989)........................................................................................24

*DaimlerChrysler v. Cuno,*
    547 U.S. 332 (2006)........................................................................................19

*Disability Advocates, Inc. v. N.Y. Coalition for Quality Assisted Living, Inc.*, 675 F.3d
    149 (2d Cir. 2012)...................................................................................... *passim*

*Doe v. Pataki,*
    120 F.3d 1263 (2d Cir. 1997)........................................................................23

*Doe v. Stincer,*
    175 F.3d 879 (11th Cir. 1999) .......................................................................12

*Estate of Hamilton v. City of New York,*
    627 F.3d 50 (2d Cir. 2010).............................................................................15

*Fund Democracy LLC v. SEC,*
    278 F.3d 21 (D.C. Cir. 2002).....................................................................9, 11

*Hunt v. Wash. State Apple Adver. Comm'n,*
    432 U.S. 333 (1977).................................................................................. *passim*

*In re Holocaust Victim Assets Litig.,*
  225 F.3d 191 (2d Cir. 2000)............................................................8

*In re Nortel Networks Corp Securities Litig.,*
  539 F.3d 129 (2d Cir. 2008)..........................................................19

*Jaghory v. N.Y.S. Dep't of Educ.,*
  131 F.3d 326 (2d Cir. 1997)..........................................................23

*Kowalski v. Tesmer,*
  543 U.S. 125 (2004)...........................................................19, 24, 25

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992)...................................................................7, 22

*Mahon v. Ticor,*
  683 F.3d 59 (2d Cir. 2012)............................................................21

*Mark A. Varrichio and Assocs. v. Chicago Ins. Co.,*
  312 F.3d 544 (2d Cir. 2002)..........................................................19

*Mental Hygiene Legal Servs. v. Schneiderman,*
  472 F. App'x 45 (2d Cir. June 20, 2012)......................................1, 7

*Mo. Prot. and Advocacy Servs. v. Carnahan,*
  499 F.3d 803 (8th Cir. 2007) ..................................................11, 13

*N.Y. County Lawyers' Ass'n v. Bloomberg,*
  2011 WL 4444185 (S.D.N.Y. Sept. 23, 2011)................................24

*Nat'l Cong. For Puerto Rican Rights v. City of New York,*
  75 F. Supp. 2d 154 (S.D.N.Y. 1999)..............................................21

*Nnebe v. Daus,*
  644 F.3d 147 (2d Cir. 2011)......................................................8, 21

*Or. Advocacy Ctr. v. Mink,*
  322 F.3d 1101 (9th Cir. 2003) ...............................................11, 12

*People v. Brooks,*
  19 Misc.3d 407 (Sup. Ct. Kings Co. 2008)....................................24

*People v. Enrique T.,*
  93 A.D.3d 158 (1st Dep't 2012) ..................................................24

*Powers v. Ohio,*
  499 U.S. 400 (1991)......................................................................20

*Ragin v. Harry Macklowe Real Estate Co.,*
  6 F.3d 898 (2d Cir. 1993) ....................................................................21

*Sellers v. M.C. Floor Crafter, Inc.,*
  842 F.2d 639 (2d Cir. 1988)................................................................15

*Sierra Club v. Morton,*
  405 U.S. 727 (1972).............................................................................17

*Simon v. Eastern Ky. Welfare Rights Org.,*
  426 U.S. 26 (1976)..........................................................................21, 22

*Singleton v. Wulff,*
  428 U.S. 106 (1976).............................................................................20

*Small v. General Nutrition Cos., Inc.,*
  388 F. Supp. 2d 83 (E.D.N.Y. 2005) .................................................21

*State v. Farnsworth,*
  75 A.D.3d 14 (4th Dep't 2010).........................................................24

*State v. Nelson,*
  30 Misc.3d 715 (Sup. Ct. N.Y. Co. 2010) ........................................24

*Summers v. Earth Isl. Inst.,*
  552 U.S. 488 (2009).............................................................................20

*Town of Babylon v. Fed. Housing Fin. Agency,*
  699 F.3d 221 (2d Cir. 2012)................................................................23

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.,*
  454 U.S. 464 (1982).............................................................................18

*Vandegrift for Warding Co. v. Hartford Fire Ins. Co.,*
  2009 WL 928337 (E.D.N.Y. Mar. 31, 2009) .....................................15

*Warth v. Seldin,*
  422 U.S. 490 (1975).............................................................................19

*Wash. Legal Found. v. Leavitt,*
  477 F. Supp. 2d 202 (D.D.C. 2007) ......................................................9

**Federal Statutes**

42 U.S.C. § 1983.................................................................................5, 7, 8

**State Statutes**

Mental Hygiene Law ("MHL")
    § 10.01...........................................................................................................5
    § 10.03...........................................................................................................4
    § 10.06...................................................................................................5, 6, 22
    § 47.01...................................................................................................*passim*
    § 47.03...................................................................................................*passim*

N.Y. Judiciary Law
    Rule of Professional Conduct 1.2(a) .....................................................14
    Rule of Professional Conduct 1.4 .........................................................14

## PRELIMINARY STATEMENT

Defendants ANDREW CUOMO, in his official capacity as Governor of the State of New York; ERIC T. SCHNEIDERMAN, in his official capacity as Attorney General of the State of New York; KRISTEN M. WOODLOCK, in her official capacity as Acting Commissioner of the New York State Office of Mental Health; COURTNEY BURKE, in her official capacity as Commissioner of the New York State Office of Mental Retardation and Developmental Disabilities; and BRIAN FISCHER, in his official capacity as Commissioner of the New York State Department of Correctional Services, hereby submit this Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of their Cross-Motion for Summary Judgment.

The sole issue before this Court is whether Plaintiff Mental Hygiene Legal Services ("MHLS") "can establish any of the 'indicia of membership' required for a nonmembership organization to assert associational standing." *Mental Hygiene Legal Servs. v. Schneiderman,* 472 F. App'x 45 (2d Cir. June 20, 2012) (summary order). MHLS argues that this Court should grant it associational standing or third-party standing for several reasons, none of which constitute indicia of membership. MHLS lacks standing.

## SUMMARY OF ARGUMENT

MHLS makes two arguments. First, MHLS claims to possess associational standing. Second, MHLS claims to possess third-party standing to assert its clients' rights. MHLS has neither.

As the Second Circuit has unequivocally ruled, MHLS cannot establish associational standing without showing that its clients possess the indicia of membership that would render MHLS the functional equivalent of a membership organization. *Disability Advocates, Inc. v.*

*N.Y. Coalition for Quality Assisted Living, Inc.* ("*DAI*"), 675 F.3d 149, 159 (2d Cir. 2012). Such indicia include election of the leadership by the clients, financing of MHLS's activities by those clients, and control and direction over MHLS's activities. MHLS's clients possess none of these indicia of membership. Rather, MHLS receives its funds from the State Legislature, and its activities are controlled by its directors and the presiding justices of the Appellate Divisions.

To establish third-party standing to assert its clients' rights, MHLS would have to show two things: (1) that MHLS has Article III standing on its own, and (2) that its clients are hindered from asserting their own rights. MHLS can establish neither. First, MHLS lacks standing because it alleges no injury that is fairly traceable to the conduct of any Defendants and redressable by an order of this Court. Second, MHLS's clients can assert and have asserted their rights in their individual Article 10 proceedings, which is where the issues in this action should be decided. MHLS cannot short-circuit the state-court process by filing this suit in its own name.

## FACTS AND PROCEDURAL HISTORY

### A. MHLS's Statutory Structure and Its Mission To Provide Legal Services.

Under its enabling statute, MHLS "shall provide legal assistance to patients or residents of a facility." Mental Hygiene Law ("MHL") § 47.01(a). MHLS provides legal services to these patients, informs them of their legal rights, and possesses certain powers of review in order to effectuate those rights. MHL § 47.03. Upon a new patient's admission to a facility, an MHLS attorney may introduce himself or herself to that patient but will not necessarily say anything beyond such introduction and will not explain MHLS's function unless the attorney adjudges the patient to be "high functioning." DeLia Tr. 38:3-42:23. In addition to its clients in facilities, MHLS also has clients in the community. Harkavy Tr. 73:25-74:7; Creahan Tr. 27:16-20. MHLS's constituents are its clients. DeLia Tr. 18:12-18; Constas Tr. 50:21-51:3.

MHLS has no board of directors. RFA Response #75. Rather, MHLS has four

departments, each of which is headed by a director hired by the presiding justice of that department. Delia Decl. ¶ 1; Creahan Decl. ¶ 1; Shea Decl. ¶ 1; Harkavy Tr. 6:7-8, 10:11-14; Shea Tr. 9:13-15; Creahan Tr. 9:7-9.   MHLS's clients do not participate in the process of selecting these directors or in the process of hiring any MHLS employees.  Harkavy Tr. 23:7-25:24; DeLia Tr. 27:15-31:13.

The presiding justices of the appellate divisions "promulgate such rules or regulations as may be necessary" to govern MHLS.  MHL § 47.01(a).  MHLS policy is determined by MHLS's directors in conjunction with these presiding justices and with other MHLS attorneys.  Creahan Tr. 16:5-17:9, 19:9-12; Harkavy Tr. 5:13-7:18, 70:9-13.  Although the Fourth Department has official goals and a policy manual, the clients have no access to the manual or to the timeline that guides the planning process for such policy.  Creahan Tr. 19:18-23:24.

MHLS's activities, *i.e.,* its legal services, are performed by its employees.  Harkavy Tr. 12:18-13:23; DeLia Tr. 25:25-27:14. MHLS has no requirement that any of these employees be persons with mental disabilities.  RFA Response #77.  MHLS has no advisory council of individuals who have such disabilities. RFA Response #79.

MHLS conducts some activities other than direct legal representation of its clients, such as commenting on potential legislation affecting persons with mental illness.  Harkavy Aff. ¶ 15; Creahan Aff,¶ 9; DeLia Aff. ¶ 10; Shea Aff. ¶¶ 8, 9.  MHLS has never consulted any of its clients regarding these activities.  RFA Response #88, 89, 90; DeLia Tr. 84:23-85:14, 90:20-91:25; Shea Tr. 48:13-59:9; Harkavy Tr. 118:4-20.

MHLS has no formal grievance procedure for its clients.  Creahan Tr. 25:16-26:9.   In addressing informal grievances, MHLS "ha[s] to exercise discretion."  Creahan Tr. 26:20-27:1.

MHLS receives all of its funding from the State of New York.  RFA Responses # 78, 85.

MHLS's revenue is determined by the Legislature and the Office of Court Administration ("OCA"). DeLia Tr. 109:19-110:22. MHLS directors make budget requests, which OCA may amend before submission to the Legislature. DeLia Tr. 107:21-110:8; Harkavy Tr. 100:22-101:13. The Legislature allocates money to OCA, which determines, subject to any particular mandates the Legislature may require, what funds MHLS shall receive. DeLia Tr. 109:9-110:22. The clients play no role in determining how MHLS spends the money. Harkavy Tr. 100:18-21.

MHLS has frequent contact with its clients. Creahan Aff. ¶¶ 3, 4; DeLia Aff. ¶ 3, 4; Harkavy Aff. ¶ 3; Shea Aff. ¶ 3. The purpose of these contacts is to fulfill its statutory mandate, which is to provide legal representation. Harkavy Tr. 33:21-34:10; Creahan Tr. 11:10-21; Shea Tr. 12:2-20; MHL § 47.03. Harkavy Tr. 80:9-14. MHLS has attorneys at the sites of facilities, including secure treatment facilities as defined in MHL § 10.03(o). Kuhlman Tr. 54:20-23. MHLS keeps its clients informed "[l]ike any other lawyer, you know, keeps his client informed of what's happening in his case."

**B.** **MHLS's Directors Determine Its Litigation Priorities.**

As part of MHLS's legal representation of its clients, MHLS sometimes files lawsuits to protect certain rights of the particular clients. DeLia Tr. 72:4-12, 74:2-78:13, 80:24-82:22; Creahan Tr. 34:1-35:14, 36:15-37:5, 37:21-38:16; Shea Tr. 14:4-15:4, 15:24-16:11, 18:6-25, 23:3-24:15; 26:4-28:5, 32:4-33:22, 39:2-40:19; Harkavy Tr. 83:12-84:3, 85:12-86:7. MHLS's directors made the decisions to file these lawsuits. Creahan Tr. 35:15-23, 37:6-8, 38:12-20, 42:8-18; Harkavy Tr. 84:21-25; Creahan Aff. ¶ 7; Harkavy Aff. ¶ 6. MHLS's clients did not vote on these decisions, nor were any clients whom MHLS deemed not affected by these lawsuits consulted about whether to file them. DeLia Tr. 73:20-25, 77:14-78:13, 82:12-22; Creahan Tr. 38:21-39:4; 42:8-18; Shea Tr. 20:11-22:8, 25:17-25, 45:20-46:17; Constas Tr. 45:12-22, 47:14-20, 54:24-56:14, 58:11-60:15, 66:10-67:4; 71:19-74:4; Harkavy Tr. 74:19-75:9,

78:2-79:18. MHLS does not necessarily file litigation that its clients may desire, even if the entire constituency may want such litigation. DeLia Tr. 63:8-69:6; Creahan Tr. 32:11-33:22. Rather, MHLS exercises its independent judgment. DeLia Tr. 69:7-18; Creahan Tr. 33:23-25.

### C. Defending Article 10 Respondents Is Part of MHLS's Statutory Mandate To Provide Legal Services.

On April 13, 2007, the Sex Offender Management and Treatment Act ("SOMTA"), including new Article 10 of the MHL, became effective. MHL § 10.01. This statute provides for review and possible detention of convicted sex offenders who may require inpatient mental-health treatment that addresses their risk of committing further sex offenses. *Id.* SOMTA also provides that if the Attorney General should bring an Article 10 proceeding against a sex offender (known as a "respondent"), the respondent is entitled to legal representation, and MHLS provides such representation for indigent respondents. MHL §§ 10.06(c), 47.03(f). Because of SOMTA, MHLS received an increase in funds. DeLia Tr. 92:2-22; Harkavy Tr. 100:12-14. MHLS claims that it still experiences staff shortages as a result of SOMTA, but MHLS would have no such staff shortage with sufficient additional funds. DeLia Tr. 96:12-18.

### D. Procedural History of This Action.

On the day SOMTA became effective, MHLS brought the instant action pursuant to 42 U.S.C. § 1983. Compl. ¶ 2. MHLS asserted associational standing on behalf of its clients. Compl. ¶ 39. MHLS sought approval for bringing this action only from the "affected" clients, *i.e.,* potential Article 10 respondents, and not from its constituency as a whole. Pl. Br.[1] at 27; Constas Aff. ¶¶ 8, 12; Harkavy Tr. 70:17-71:14; Constas Tr. 44:16-45:3, 45:19-22, 47:14-20, 57:20-60:15, 62:9-65:7, 66:3-67:4. MHLS challenges several aspects of SOMTA and seeks an order that would require, *inter alia,* individualized findings of necessity for pre-trial confinement

---

[1] "Pl. Br." refers to the Memorandum of Law in Support of Plaintiff Mental Hygiene Legal Service's Supplemental Summary Judgment Motion. All of the transcripts are exhibits to the Declaration of Joshua Pepper.

of any Article 10 respondent pursuant to MHL § 10.06(k). Compl. ¶¶ 78, 80.

On November 16, 2007, this Court issued an Order granting MHLS's motion for a preliminary injunction. Docket Entry #39. On December 7, 2007, this Court signed an order prohibiting defendants from, *inter alia,* detaining any Article 10 respondent without "a specific, individualized judicial finding of probable cause to believe that the person is sufficiently dangerous to require confinement, and that lesser conditions of supervision will not suffice to protect the public during the pendency of the proceedings." Docket Entry #41. On April 7, 2011, this Court entered a permanent injunction with the identical prohibition. Docket Entry # 109. Defendants appealed this injunction. Docket Entry #111.

While the preliminary and permanent injunctions remained in effect, the state courts held 349 probable-cause hearings for Article 10 respondents, and another 125 respondents waived their rights to probable-cause hearings. Connolly Decl. ¶ 5. In only five of these 474 cases did the courts find probable cause but not order pre-trial confinement with individualized findings that pre-trial detention was required. Connolly Decl. ¶ 6. Three of the five respondents not found to require pre-trial detention never faced Article 10 trials. Connolly Decl. ¶¶ 7, 10. A fourth obtained an order of release not by arguing that he personally did not require pre-trial confinement, but rather by arguing that MHL § 10.06(k) was facially unconstitutional, a finding that was reversed on appeal. Connolly Decl. ¶ 9. MHLS First Department Deputy Director could not say whether the injunctions alleviated MHLS's costs. Harkavy Tr. 112:3-9.

While the instant appeal was pending, the Second Circuit decided *Disability Advocates, Inc. v. N.Y. Coalition for Quality Assisted Living, Inc.* ("*DAI*"), 675 F.3d 149 (2d Cir. 2012). *DAI* held that an advocacy organization did not possess associational standing because the ostensibly represented individuals did not possess the indicia of membership in the organization.

*Id.* at 159.  At oral argument of the instant appeal, MHLS's counsel argued that MHLS could establish indicia of membership with facts not in the record and that MHLS had not previously submitted such facts because *DAI* had not been decided.  Appeal Oral Argument Transcript at 21:10-13, 24:23-25:1, 28:5-9, 29:12-17.  The Second Circuit subsequently vacated the injunction and remanded for a determination as to "whether [MHLS] can establish any of the 'indicia of membership' required for a nonmembership organization to assert associational standing." *Mental Hygiene Legal Servs. v. Schneiderman,* 472 F. App'x 45 (2d Cir. June 20, 2012).

## ARGUMENT

## I.  MHLS LACKS ASSOCIATIONAL STANDING TO ASSERT THE RIGHTS OF ITS CLIENTS.

A Plaintiff asserting standing has the burden of demonstrating facts that confer standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992).  For a membership organization to assert standing on behalf of members, generally referred to as "associational standing," the organization must show (1) that its members would have standing to sue in their own right, (2) the interests it seeks to protect are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.  *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977).

MHLS cannot assert associational standing for two reasons.  First, MHLS brings this case pursuant to 42 U.S.C. § 1983, which an organization cannot do in a representative capacity, and second, it is a non-membership organization with no members and no indicia of membership.

### A.  An Organization May Not Bring 42 U.S.C. § 1983 Claims on Behalf of Individuals.

Even a membership organization, which MHLS is not, has no standing to assert its members' rights in a case brought under 42 U.S.C. § 1983 because such rights are personal to those purportedly injured.  *Nnebe v. Daus,* 644 F.3d 147, 156 (2d Cir. 2011).  MHLS brings this

action pursuant to 42 U.S.C. § 1983. Compl. ¶ 2. Thus, MHLS lacks standing, and this Court need not consider the argument that its clients possess the indicia of membership.

### B. MHLS Fails the Test for Associational Standing Because It Has No Members.

MHLS's assertion of associational standing fails. It is concededly not a membership organization. Nonetheless, MHLS argues that it should be treated as a membership organization, as was the Washington State Apple Advertising Commission ("the Commission") in *Hunt v. Wash. State Apple Advertising Commission,* 432 U.S. 333 (1977). Defendants' response is twofold. First, MHLS misstates the legal standard for associational standing articulated in *Hunt*. Second, under the proper standard, even assuming that the interests MHLS seeks to protect in this lawsuit are germane to its purpose and that this lawsuit does not require the participation of any of MHLS's clients, MHLS fails the first prong of the associational standing test because its clients possess none of the indicia of membership that *Hunt* requires for a non-membership organization to assert associational standing.

### 1. MHLS Misstates the Legal Standard for Associational Standing.

MHLS argues that "the *Hunt* Court recognized at least six factors that contributed to its conclusion that the Commission had standing to sue on behalf of its constituents." Pl. Br. at 12. With its list of factors, MHLS suggests that the legal standard is a vague "totality of the circumstances" test that would treat all of the enumerated factors equally and give a court discretion to grant standing whenever the court deemed it fair to do so. This is wrong. Rather, an organization must "function effectively as a membership organization" to be treated as such. *Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.* ("*DAI*"), 675 F.3d 149, 159 (2d Cir. 2012). *See also In re Holocaust Victim Assets Litig.,* 225 F.3d 191, 196 (2d Cir. 2000). The D.C. Circuit has similarly explained that *Hunt* requires that an organization be "the

functional equivalent of a traditional membership organization." *Fund Democracy LLC v. SEC,* 278 F.3d 21, 25 (D.C. Cir. 2002).

The *Hunt* Court found three ways in which the Commission functioned effectively as a membership organization. First, the Commission served a specialized segment of the community. *Hunt,* 432 U.S. at 344. Second, the represented individuals possessed "all of the indicia of membership in an organization." *Id.* Third, the Commission's interests would be adversely affected by the outcome of the litigation, *Id.* at 345, or, as some courts have described it, its "fortunes" were "closely tied to those of its constituency." *Fund Democracy,* 278 F.3d at 26. Courts have interpreted *Hunt* as requiring all three of these elements. *See, e.g., Wash. Legal Found. v. Leavitt,* 477 F. Supp. 2d 202, 208 (D.D.C. 2007); *Basel Action Network v. Maritime Administration,* 370 F. Supp. 2d 57, 69 (D.D.C. 2005). And the Second Circuit ruled unequivocally in *DAI* that the second element of the test – indicia of membership – is a Constitutional requirement as found by *Hunt.* *DAI,* 675 F.3d at 159.

MHLS concedes that its clients do not elect its leadership, serve on any board of MHLS, or finance MHLS's activities, all of which constituted the indicia of membership that *Hunt* recognized. 432 U.S. at 344. Nonetheless, MHLS contends that it need not show any of these indicia of membership and argues that its clients need only a "sufficiently active affiliation with the organization" to be treated as members. Pl. Br. at 16 (citing *DAI,* 675 F.3d at 158). MHLS further argues that because it has personal interactions with its clients and provides legal services to them, MHLS "serves as the mechanism for individuals with mental illnesses in New York to 'make more effective the expression of their own views.'" Pl. Br. at 18 (citing *Hunt,* 432 U.S. at 345). MHLS misinterprets *DAI* and both misquotes and misinterprets *Hunt.* The *Hunt* Court concluded that the Commission "provide[d] the means by which they express their collective

views and protect their collective interests" specifically *because* its constituents bore all of the indicia of membership. *Hunt,* 432 U.S. at 345. The *DAI* court, while noting that the plaintiff made no claim that its constituents "have the power to elect its directors, make budget decisions, or influence DAI's activities or litigation strategies," ruled unequivocally that only the indicia of membership enumerated in *Hunt* would provide "sufficient active affiliation" for membership equivalency. *DAI,* 675 F.3d at 158-59. No court has ruled that an organization can have associational standing without the indicia of membership. MHLS cannot assert standing unless it can show that its clients possess the requisite indicia of membership that *Hunt* and its progeny have enumerated. MHLS cannot do so.

### 2. MHLS Fails the *Hunt* Test for Functional Equivalency of a Membership Organization.

As noted above, the *Hunt* test for functional equivalency of a membership organization requires (1) service to a specialized segment of the community, (2) all of the indicia of membership, and (3) interests that would be adversely affected by the litigation. *Hunt,* 432 U.S. at 344-45. MHLS fails parts (2) and (3) of this test.

### a. MHLS's Clients Possess None of the Indicia of Membership.

The *Hunt* Court found that the Commission's constituents possessed the indicia of membership because the constituents alone elected the Commission, they alone could serve on the Commission, and they alone financed the Commission's activities. *Hunt,* 432 U.S. at 344. The Second Circuit has interpreted this holding to require that the constituents have the power to elect the organization's directors, make budget decisions, and influence the organization's activities. *DAI,* 675 F.3d at 159. Other courts have similarly found that an organization's constituents can be treated as members only if those constituents select the organization's leadership, guide its activities, and finance the activities. *See Fund Democracy,* 278 F.3d at 26;

10

*see also Mo. Prot. and Advocacy Servs. v. Carnahan,* 499 F.3d 803, 810 (8th Cir. 2007). MHLS's clients have none of these indicia of membership.

### i. MHLS's clients do not elect or select MHLS's leadership.

The *Hunt* Court noted that the Commission's constituents elected the Commission. 432 U.S. at 344. The *DAI* court similarly looked to whether the plaintiff's constituents elected its board of directors. 675 F.3d at 159. The *DAI* court referred to this indicium as "representation." *Id.* at 157. And other courts have more generally recognized that whether the constituents elect the organization's leaders, whoever they may be, is an indicium of membership. *See Fund Democracy,* 278 F.3d at 25; *Or. Advocacy Ctr. v. Mink,* 322 F.3d 1101, 1111 (9th Cir. 2003). MHLS's clients play no role whatsoever in selecting MHLS's leadership.

MHLS has no board of directors. RFA Response #75. Rather, MHLS has four departments, each of which is headed by a director appointed by the presiding justice of that department. Delia Decl. ¶ 1; Creahan Decl. ¶ 1; Shea Decl. ¶ 1; Harkavy Tr. 6:7-8, 10:11-14; Shea Tr. 9:13-15; Creahan Tr. 9:7-9. MHLS's clients play no role in hiring these directors or in hiring any MHLS employees. Harkavy Tr. 23:7-25:24; DeLia Tr. 27:15-31:13. Thus, MHLS's clients cannot be said to select MHLS's leadership in any way.

### ii. MHLS's clients do not finance MHLS's activities.

The *Hunt* Court noted that the Commission's financing came from its constituents. 432 U.S. at 344. The *DAI* court more generously assumed, without deciding, that if the constituents "made budget decisions," such could potentially constitute an indicium of membership. *DAI,* 675 F.3d at 159. Neither is the case here.

MHLS gets all of its funding from the State of New York and none from its clients. RFA Responses #78, 85. The Legislature allocates the money to OCA, which determines, subject to

any particular mandates the Legislature may require, what funds MHLS shall receive. DeLia Tr. 109:9-110:22. Budget requests to the Legislature are made by the MHLS directors and OCA, not the clients. DeLia Tr. 107:21-110:8; Harkavy Tr. 100:22-101:13 The clients play no role in determining how MHLS spends the money. Harkavy Tr. 100:18-21. Thus, MHLS's clients cannot be said to finance MHLS's activities in any manner.

### iii. MHLS's clients do not "serve on" MHLS or direct or guide MHLS's activities.

The *Hunt* Court found indicia of membership because only the Commission's constituents could serve on the Commission. *Hunt,* 432 U.S. at 344. MHLS's activities are directed and its priorities determined not by a board of directors but by the justices of the appellate divisions and MHLS's employees, chiefly the directors of each MHLS department. MHL § 47.01(a); Harkavy Tr. 12:18-13:23; DeLia Tr. 25:25-26:18. MHLS has no requirement that *any* of its employees, much less all of its employees or its directors, be persons with mental disabilities. RFA Response #77. Nor do MHLS's clients vote on MHLS policy. Harkavy Tr. 70:9-13. Thus, MHLS's clients do not "serve on" MHLS in any way consistent with *Hunt,* and clients have no power to direct or guide MHLS's activities.

Some courts have more laxly held that an organization may meet the standard for this particular indicium when the organization was statutorily required to have an advisory council, at least 60% of which must be individuals receiving mental-health services, and a grievance procedure for clients or prospective clients to assure the clients full access to the system and to assure that the system is operating as intended. *See, e.g., Or. Advocacy Ctr.,* 322 F.3d at 1112; *Doe v. Stincer,* 175 F.3d 879, 886 (11th Cir. 1999). These cases also relied on the fact that the organizations were required to have constituents serve on their governing boards. *Or. Advocacy Ctr.,* 322 F.3d at 1111. The same cannot be said of MHLS. And other courts have rejected this

looser standard.  *See Mo. Prot. and Advocacy Servs.,* 499 F.3d at 810; *Ass'n for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trustees,* 19 F.3d 241, 244 (5th Cir. 1994).  Without deciding which standard would apply, the *DAI* court characterized this indicium as "control."  *DAI,* 675 F.3d at 157-58.  MHLS fails even the more lenient standard because it has no such statutory requirement.  Moreover, MHLS has no advisory council and no formal grievance procedure.  RFA Response #79; Creahan Tr. 25:16-26:9.  And even in addressing informal grievances, MHLS "ha[s] to exercise discretion."  Creahan Tr. 26:20-27:1.  Thus, under any standard, MHLS's clients lack the indicia of membership required for associational standing.

### iv.  MHLS cannot acquire standing without the indicia of membership.

MHLS argues that its clients need only a "sufficiently active affiliation with the organization" to be treated as members.  Pl. Br. at 16 (citing *DAI,* 675 F.3d at 158).  It contends that it represents its clients "in a very real sense" and provides a mechanism for them to express their views.  Pl. Br. at 18.  But as noted above, no court has ruled that an organization can satisfy the indicia of membership simply by advancing its clients' legal interests.  *See* Point B.1, *supra.*

In any event, whatever standard MHLS would apply to determine what constitutes an active affiliation equivalent to that of a membership organization – and MHLS offers none – MHLS fails even its own test because MHLS does not express the collective views of its clients by any standard.  As noted, MHLS policy is determined by MHLS's directors in conjunction with the presiding justices of the appellate divisions, not by the clients.  MHL § 47.01(a); Creahan Tr. 16:5-17:9, 19:9-12; Harkavy Tr. 5:13-7:18, 70:9-13.

MHLS provides legal services to its clients, informs them of their legal rights, and possesses certain powers of review in order to effectuate those rights.  MHL § 47.03.  As legal

counsel to these individuals, MHLS has an ethical obligation to keep its clients informed about their cases and to abide by their decisions regarding the objectives of the representation and the means by which such objectives will be pursued. N.Y. Judiciary Law, Appx., Rules of Professional Conduct 1.2(a), 1.4. MHLS has established no influence by its clients over its activities or litigation strategies beyond this ethical obligation.

MHLS points to two factors that it contends provide its clients with the influence that MHLS considers sufficient for associational standing. First, MHLS has numerous contacts with its clients and has unfettered access to psychiatric wards to facilitate such contacts. Pl. Br. at 18. These contacts help to fulfill MHLS's statutory mandate, which is to provide legal representation. Harkavy Tr. 33:21-34:10; Creahan Tr. 11:10-21; Shea Tr. 12:2-20; MHL § 47.03. These contacts do not result in the clients' directing or guiding MHLS's activities in any way beyond that of any attorney's clients.

Second, in providing its statutorily mandated legal services, MHLS has brought many affirmative cases on behalf of certain clients. Pl. Br. at 18. MHLS argues that this history of litigation constitutes assertion of its clients' "collective interests." Pl. Br. at 19. But MHLS filed all of the lawsuits enumerated in MHLS's affirmations to protect the rights of particular clients, not to assert any collective rights of their clients as a whole. DeLia Tr. 72:4-12, 74:2-78:13, 80:24-82:22; Creahan Tr. 34:1-35:14, 36:15-37:5, 37:21-38:16; Shea Tr. 14:4-15:4, 15:24-16:11, 18:6-25, 23:3-24:15; 26:4-28:5, 32:4-33:22, 39:2-40:19; Harkavy Tr. 83:12-84:3, 85:12-86:7. MHLS's directors made the decision to file these lawsuits. Creahan Tr. 35:15-23, 37:6-8, 38:12-20, 42:8-18; Harkavy Tr. 84:21-25; Creahan Aff. ¶ 7; Harkavy Aff. ¶ 6. The decisions were not put to a vote by the clients, nor were any clients whom MHLS deemed not affected by these lawsuits even consulted about whether to file them. DeLia Tr. 73:20-25, 77:14-78:13, 82:12-22;

Creahan Tr. 38:21-39:4; Shea Tr. 20:11-22:8, 25:17-2545:20-46:17; Constas Tr. 45:12-22, 47:14-20, 54:24-56:14, 58:11-60:15, 66:10-67:4; 71:19-74:4; Harkavy Tr. 74:19-75:9, 78:2-79:18. MHLS would argue that they kept the "affected" clients informed and that the "affected" clients participated in the decision to file these lawsuits, but this is so only because "[l]ike any other lawyer, you know, keeps his client informed of what's happening in his case, [MHLS] tr[ies] to the best of [its] ability to keep people affected . . . informed." Harkavy Tr. 80:9-14. While working with one's client is consistent with attorney representation, it is *not* consistent with a membership organization where, as here, not all of the members have the power or were afforded the opportunity to participate. *Cf. Vandegrift for Warding Co. v. Hartford Fire Ins. Co.,* 2009 WL 928337, at *3 (E.D.N.Y. Mar. 31, 2009) (holding that "attorney in fact" hired by shippers lacked standing to represent shippers' interests).

Moreover, MHLS does not necessarily file litigation that its clients may desire, even if they all may want such litigation. DeLia Tr. 63:8-69:6; Creahan Tr. 32:11-33:22. Rather, MHLS exercises its independent judgment. DeLia Tr. 69:7-18; Creahan Tr. 33:23-25. And MHLS offers no admissible evidence that *any* of its clients have ever actually wanted MHLS to file any of the affirmative cases that it has filed, including the instant litigation; MHLS offers only unspecified hearsay statements from unnamed clients. *See* Harkavy Tr. 70:17-71:14; Creahan Tr. 38:21-39:4, 42:8-14; Constas Tr. 39:25-40:12, 42:23-44:15, 62:9-65:7. A motion for or in opposition to summary judgment must present admissible evidence, not inadmissible hearsay. *Estate of Hamilton v. City of New York,* 627 F.3d 50, 54 (2d Cir. 2010); *Sellers v. M.C. Floor Crafter, Inc.,* 842 F.2d 639, 643 (2d Cir. 1988). MHLS offers no admissible evidence that any of its clients have approved of any of its activities at all.

Indeed, this lack of evidence of its clients' approval constitutes another similarity

between this case and *DAI*. The *DAI* court noted that DAI apparently had not "notified its 'constituents' or any other legal guardians that it was filing this suit purportedly on their behalf." *DAI,* 675 F.3d at 159. Speculating that the likely basis for this concern was the possibility that some of DAI's constituents may have been harmed by the relief that DAI sought, MHLS blithely asserts that "no constituent of MHLS could possibly be harmed by this litigation." Pl. Br. at 28. This claim does not withstand scrutiny. For example, MHLS has clients in the community as well as in psychiatric facilities. Harkavy Tr. 73:25-74:7; Creahan Tr. 27:16-20. If one such client were raped by an Article 10 respondent inappropriately set free as a result of an order of this Court, this would certainly qualify as harm to a client as a result of this lawsuit. And MHLS concedes that it sought approval only from the "affected" clients, *i.e.,* potential Article 10 respondents. Pl. Br. at 27; Constas Aff. ¶¶ 8, 9; Constas Tr. 45:19-22, 47:14-20. The distinction is significant. As noted *supra,* MHLS's employees, particularly the directors, make all decisions regarding MHLS's activities. If the clients are dissatisfied with these decisions, they have no power to replace the leadership. Some of MHLS's non-sex-offender clients may very well have objected to MHLS's filing the instant litigation had they been asked. But with no recourse to address any dissatisfaction, MHLS's clients have no assurance that MHLS will represent their views. MHLS's clients have no control over MHLS whatsoever.

Finally, although MHLS argues that it engages in activities other than the direct legal services provided to its clients, MHLS has never consulted any of its clients regarding these activities. RFA Response #88, 89, 90; DeLia Tr. 84:23-85:14, 90:20-91:25; Shea Tr. 48:13-59:9. Indeed, a Deputy Director became sarcastic at the mere suggestion. Harkavy Tr. 118:4-20.

In short, MHLS argues that merely because it has a particularized function, namely to protect the legal interests of the mentally ill, it should be treated as a membership organization.

This particularized function shows only that MHLS has an "interest in the problem," which does not confer standing upon an organization. *Sierra Club v. Morton,* 405 U.S. 727, 739 (1972).

The non-precedential order in *Bernstein v. Pataki,* 233 F. App'x 21, 24-25 (2d Cir. Apr. 3, 2007), on which Plaintiff relies, does not compel a contrary result. That court ruled not that MHLS necessarily had standing but only that it "may well have associational standing" for its putative class action that had also named several individuals as plaintiffs. Although the court declined to dismiss at that stage for reasons it did not make clear, the court reserved the question of MHLS's standing for a subsequent procedural posture. *Id.* at 25. This case is now at the procedural posture that requires a decision, a decision that must follow the Second Circuit's precedent in *DAI.* Because MHLS's clients have no indicia of membership, MHLS cannot assert associational standing on behalf of its clients.

> **b.    MHLS Lacks the Necessary Nexus With Its Clients' Interests that May Be Affected by the Outcome of This Litigation.**

For the third prong of its test (which this Court need not reach because, as noted above, MHLS lacks the indicia of membership), the *Hunt* court relied on a direct financial nexus between the Commission's interest and that of its constituents in that the Commission would experience a reduction in its funding directly from the reduced apple sales resulting from the challenged statute. *Hunt,* 432 U.S. at 345. Here, MHLS's interests are not similarly tied to those of its clients. MHLS's sex-offender clients may have a direct stake in the outcome of this litigation insofar as any order may affect an Article 10 action, but none of MHLS's employees are necessarily people with mental illnesses or Article 10 respondents. RFA Response #77. And MHLS as an institution cannot be an Article 10 respondent. Thus, MHLS cannot have the direct nexus of interest with that of its clients, as was present in *Hunt.*

With no direct impact from any ruling on the constitutionality of the challenged

provisions of Article 10, MHLS argues that its resources "have been compromised by the statutory scheme that is the subject of this litigation." Pl. Br. at 21. This would constitute an indirect adverse effect at best. This Court should recognize only a direct nexus of the type recognized in *Hunt* because associational standing "carves only a narrow exception from the ordinary rule that a litigant 'must assert his own legal rights and interests.'" *Bano v. Union Carbide Corp.*, 361 F.3d 696, 715 (2d Cir. 2004) (citing *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982)). This Court should not broaden this exception because only a direct tie between an organization's interests and those of its clients or constituents can assure the "concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Hunt,* 432 U.S. at 345.

Even if an indirect impact could satisfy this prong of the *Hunt* test, whether MHLS would suffer any monetary drain on resources as a result of an unfavorable ruling or a converse benefit from a favorable ruling is speculative at best. The alleged resource drain stems from the MHLS attorneys' traveling to distant locations to see their clients. Pl. Br. at 21-22. Even assuming such travel is truly necessary, a favorable ruling would probably not mitigate these costs because judges would still make the necessary findings in every case to justify pre-trial confinement, and thus MHLS would still have to travel if it deemed an in-person meeting necessary. When the Preliminary Injunction and permanent injunction remained in effect, nearly every Article 10 respondent remained confined. Connolly Decl. ¶ 5. MHLS First Department Deputy Director could not say whether the injunction alleviated MHLS's costs. Harkavy Tr. 112:3-9. Thus, the alleged adverse impact on MHLS is speculative.

In addition, injury is "conjectural or hypothetical" when it depends on how legislators

respond to a reduction in revenue. *DaimlerChrysler v. Cuno,* 547 U.S. 332, 344 (2006).

MHLS's revenue is determined by the Legislature and OCA. DeLia Tr. 109:9-110:22. When

the Legislature passed SOMTA, MHLS received an increase in funds. DeLia Tr. 92:2-22;

Harkavy Tr. 100:12-14. Whether the Legislature would do so again in light of this Court's ruling

is unclear,[2] but the possibility that it may do so demonstrates that MHLS could *benefit* from an

unfavorable ruling. Thus, MHLS's interests do not sufficiently coincide with those of its clients

to confer standing upon MHLS. MHLS is not the functional equivalent of a membership

organization and cannot assert associational standing.

## II.    MHLS LACKS THIRD-PARTY STANDING

MHLS also argues that it has third-party standing to raise its clients' constitutional

claims. Pl. Br. at 29. MHLS did not argue this point in this Court previously and has thus

waived this ground for standing. *See In re Nortel Networks Corp Securities Litig.,* 539 F.3d 129,

132 (2d Cir. 2008) (holding that failure to present argument in district court constituted waiver);

*Mark A. Varrichio and Assocs. v. Chicago Ins. Co.,* 312 F.3d 544, 547 (2d Cir. 2002) (same).

This argument also fails on its merits.

The Supreme Court has allowed third-party standing "when enforcement of the

challenged restriction *against the litigant* would result indirectly in the violation of third parties'

rights." *Kowalski v. Tesmer,* 543 U.S. 125, 130 (2004) (citing *Warth v. Seldin,* 422 U.S. 490,

510 (1975)) (emphasis in *Kowalski*). Here, the provisions of Article 10 at issue would be

enforced against the Article 10 respondents, not against MHLS. Thus, MHLS cannot assert

third-party standing.

Furthermore, MHLS fails the classic test for third-party standing: first, the plaintiff must

---

[2] MHLS would argue that a decision has already been made that MHLS cannot receive an increase in funding, but MHLS's only evidence for that is an unspecified hearsay statement from an unnamed declarant. *See* Harkavy Tr. 104:16-23.

allege a sufficiently concrete interest to satisfy Article III standing, and second, the plaintiff must be the proper proponent of the right at issue. *Singleton v. Wulff,* 428 U.S. 106, 112 (1976). The second part is significant because "third parties themselves usually will be the best proponents of their rights." *Id.* at 114. To satisfy the second part, a plaintiff must show a close relationship to the third party and a hindrance to the third party's ability to protect his or her own rights. *Powers v. Ohio,* 499 U.S. 400, 411 (1991). MHLS cannot establish either part of third-party standing because it cannot show that it has Article III standing, nor can it show that anything hinders its clients' ability to assert their own rights.

### A. MHLS Lacks Article III Standing

Standing has three elements: (1) concrete and particularized injury, (2) injury that is fairly traceable to the defendant's challenged action, and (3) a likelihood that a favorable decision will prevent or redress the injury. *Summers v. Earth Isl. Inst.,* 552 U.S. 488, 493 (2009). MHLS cannot satisfy any of these elements.

### 1. MHLS Has Not Suffered an Injury in Fact.

MHLS asserts that it has been injured by the expenditure of resources to meet with and defend its clients – its core mission. This does not constitute the concrete and particularized injury required for standing. MHLS is simply performing its statutory responsibility to provide representation to its clients. Were this sufficient, virtually any boutique legal organization or law firm could claim standing. For example, tax firms could challenge tax legislation in their own names, and personal injury firms could challenge insurance regulations.

Moreover, where MHLS chooses to litigate the issue of the burden of proof for sexual motivation on a case-by-case basis with motions that raise the same standard-of-proof issue that MHLS challenges in the instant case, Harkavy Tr. 110:6-24, these motions cannot constitute the concrete and particularized injury required for standing because the argument is circular: it has

20

suffered injury because it has chosen to challenge precisely what it is challenging. If this Court were to accept this as injury, any organization could claim injury merely by filing a lawsuit.

Contrary to MHLS's argument, the Second Circuit has not recognized standing in these circumstances. In *Nnebe*, the lawsuit on behalf of taxi drivers was not an instance of "manufactured litigation," but the organization had essentially been brought involuntarily into proceedings. 644 F.3d at 151. Moreover, the organization sought "a permanent benefit for itself … independent of the interest of the individual drivers …" *Id.* at 158. Neither is true here. Similarly, the fair-housing organization in *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898 (2d Cir. 1993), was forced to divert resources from its "counseling and referral services" and was thus prevented from pursuing its core mission. Here, MHLS's core mission involves meeting with, advising and representing clients. In this situation, merely incurring litigation expenses should not be deemed a cognizable injury. *See Small v. General Nutrition Cos., Inc.*, 388 F. Supp. 2d 83, 95 (E.D.N.Y. 2005) ("In light of [plaintiff's] stated organizational purpose [of litigating], the court would be reluctant to find that any litigation expenses incurred by DIA involved a diversion of organization resources from core organizational activities toward legal efforts"); *Nat'l Cong. For Puerto Rican Rights v. City of New York,* 75 F. Supp. 2d 154, 165 (S.D.N.Y. 1999) ("drain on [plaintiff's] resources in achieving [its] end does not present the type of traceable and redressable injury necessary to confer standing").

### 2. MHLS Has No Injury Fairly Traceable to Any Conduct by Any Defendant.

Injury at the hands of a non-defendant does not establish standing. *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41 (1976). A plaintiff must show injury at the hands of each defendant for standing against that defendant. *Mahon v. Ticor,* 683 F.3d 59, 62 (2d Cir. 2012). MHLS argues that it has been required to spend additional resources traveling to meet with

clients and that such expenditures have "undermined MHLS's ability to serve the needs of its other constituents." Pl. Br. at 30. Defendants dispute that these expenditures were truly necessary; the alleged injury is self-imposed.[3] But even assuming the injury to be genuine, such injury cannot be attributed to any defendant.

For an injury to be "fairly traceable" to a defendant's conduct, the injury must be direct and not the result of an "independent action of some third party." *Simon,* 426 U.S. at 42. The State Legislature allocates funding to OCA, which determines a budget for MHLS. DeLia Tr. 109:19-110:22. If MHLS were to receive sufficient additional funds, it would have no staff shortage that would allegedly undermine its ability to serve its other clients. DeLia Tr. 96:12-18. Thus, MHLS's injury is attributable to the Legislature and OCA, not to any defendant.

### 3. MHLS Cannot Demonstrate that a Favorable Decision Would Likely Redress or Prevent its Alleged Injury.

Standing requires that it be "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan,* 504 U.S. at 555 (citing *Simon,* 426 U.S. at 38). The redressability is speculative when the relief requested would not necessarily lead to an "appreciable difference" in the alleged injury. *Allen v. Wright,* 468 U.S. 737, 758 (1984). Here, MHLS seeks to require individualized findings of necessity for pre-trial confinement pursuant to MHL § 10.06(k). Compl. ¶¶ 78, 80. Whether such an order would relieve MHLS from having to expend the additional resources it claims is speculative at best. Judges would remain free to make individualized findings, and no evidence suggests they would not do so or that any significant number of Article 10 respondents would evade confinement. Thus, MHLS offers no evidence beyond speculation that the order it seeks would lead to an appreciable difference in the

---

[3] MHLS has attorneys at the sites of the secure treatment facilities. Kuhlman Tr. 54:20-23. Nothing prevents these attorneys from representing these respondents or from conducting their conversations with their clients by telephone or video conference. MHLS's claims of lack of privacy in their telephone conversations are based entirely on the hearsay statements of unnamed sex-offender clients. *See* Kuhlman Tr. 23:5-24:11, 31:16-22.

expenditure of its resources.

Furthermore, MHLS's claim is belied by the experience during the period that preliminary and permanent injunctions requiring such findings were in effect. Docket Entry # 41, 109. During this period, the Attorney General brought Article 10 petitions against 474 respondents who either had probable-cause hearings or waived them. Connolly Decl. ¶ 5. In nearly all cases, the court made the specific findings, and the respondent was confined. In only *one* case out of 474, *i.e.,* 0.21%, could MHLS actually have saved money as a result of the injunction. Connolly Decl. ¶¶ 6-12. MHLS offers no reason to believe that it would not be "in the same position [it] would have occupied" in the absence of the order it seeks. *Jaghory v. N.Y.S. Dep't of Educ.,* 131 F.3d 326, 330 (2d Cir. 1997). Indeed, MHLS First Department Deputy Director could not say whether the injunction alleviated MHLS's costs. Harkavy Tr. 112:3-9. Thus, MHLS cannot show that it is likely, not speculative, that a favorable decision would redress its alleged injury. *See Town of Babylon v. Fed. Housing Fin. Agency,* 699 F.3d 221, 230 (2d Cir. 2012) (holding that redressability of alleged injury of altered lending practices by nonparty banks was speculative where banks would not necessarily alter their conduct).

**B.  MHLS's Clients Face No Impediment To Asserting Their Own Rights at Their Own Article 10 Proceedings.**

MHLS argues that the stigma of being labeled a sex offender or the information such a person may have to reveal about himself may deter some individuals from filing suit in their own names. Pl. Br. at 32-33. This alleged hindrance does not suffice for standing: many sex offenders have brought actions either in their own names or pseudonymously. *See, e.g., Doe v. Pataki,* 120 F.3d 1263 (2d Cir. 1997); *Bailey v. Pataki,* 722 F. Supp. 2d 443 (S.D.N.Y. 2010).

Moreover, Article 10 respondents can assert their rights at their own Article 10 proceedings, and they have done so. Many Article 10 respondents, all of whom were represented

by MHLS, have vigorously raised in their individual state-court proceedings the same constitutional claims that MHLS raises in the instant litigation. *See, e.g., People v. Enrique T.,* 93 A.D.3d 158, 169 (1st Dep't 2012) (upholding mandatory-detention provision because definition of "mental abnormality" necessarily incorporates finding of dangerousness); *State v. Farnsworth,* 75 A.D.3d 14, 16 (4th Dep't 2010) (upholding application of clear-and-convincing-evidence standard to finding of sexual motivation); *State v. Nelson,* 30 Misc.3d 715, 729-30 (Sup. Ct. N.Y. Co. 2010) (same); *People v. Brooks,* 19 Misc.3d 407, 413-414 (Sup. Ct. Kings Co. 2008) (holding that Legislature intended "mental abnormality" to include showing of probability of dangerousness).

A criminal defendant denied his right to counsel has the opportunity to challenge that denial in his criminal proceedings. *Kowalski,* 543 U.S. at 131-32. Just as a criminal defendant has his own criminal proceedings, so does an Article 10 respondent have his own Article 10 proceedings in which to challenge any perceived constitutional violation.[4] Thus, no meaningful difference between *Kowalski* and the instant case exists. *See also N.Y. County Lawyers' Ass'n v. Bloomberg,* 2011 WL 4444185, at *7 (S.D.N.Y. Sept. 23, 2011) (Batts, J.) (holding that indigent criminal defendants could challenge alleged constitutional violations in their criminal cases).

Apparently recognizing the weakness of its position, MHLS argues that hindrance "is not an essential element of third-party standing, and its absence may be overlooked if outweighed by the presence of the other third-party standing factors." Pl. Br. at 32. MHLS offers no special circumstances that would justify overlooking this factor, and none exists. Unlike in *Caplin & Drysdale v. U.S.,* 491 U.S. 617 (1989), where enforcement of the forfeiture statute against the

---

[4] Some of MHLS's sex-offender clients whom MHLS claims to represent in this lawsuit have never actually had Article 10 proceedings brought against them, *see, e.g.,* Blau Aff. ¶¶ 4, 5, but this does not help MHLS. Such clients could not have suffered any constitutional harm and would have no need to assert any rights in this or any other proceeding.

attorney would likely result in the courts' never examining the constitutionality of that particular application of the statute because without money to pay attorneys, criminal defendants would refrain from hiring attorneys in the first place, Article 10 respondents have no reason not to challenge the provisions at issue, and as noted *supra,* they have regularly done so.  MHLS cannot obtain standing merely because it "did not want to allow the state process to take its course [and] short circuit the State's adjudication of this constitutional question."  *Kowalski,* 543 U.S. at 133.

## CONCLUSION

MHLS possesses all of the indicia of a law firm, but it has none of the indicia of a membership organization.  As such, it cannot assert associational standing on behalf of its clients.  Nor can MHLS assert third-party standing: MHLS lacks the elements of Article III standing, and nothing hinders its clients from asserting their own rights at their own Article 10 proceedings.  Defendants respectfully request that this Court grant summary judgment to Defendants and dismiss this case.

Dated: New York, New York
      January 7, 2013

Respectfully submitted,

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
*Attorney for Defendants*

By:    /s/ Joshua Pepper
      JOSHUA PEPPER
      Assistant Attorney General
      120 Broadway, 24th floor
      New York, NY 10271
      tel: 1-212-416-8567
      fax: 1-212-416-6075