UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MENTAL HYGIENE LEGAL SERVICE,

    Plaintiff,

  -v.-

ANDREW CUOMO, in his official capacity as    Docket No. 07-CV-2935 (DAB)
Governor of the State of New York,
ERIC SCHNEIDERMAN, in his official capacity as
Attorney General of the State of New York,
KRISTIN WOODLOCK, in her official capacity
as Commissioner of the New York State Office
of Mental Health, COURTNEY BURKE, in her
official capacity as Commissioner of the New York
State Office of Mental Retardation and
Developmental Disabilities, and BRIAN FISCHER,
in his official capacity as Commissioner of the New
York State Department of Correctional Services,

    Defendants.
------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN FURTHER SUPPORT OF PLAINTIFF'S SUPPLEMENTAL SUMMARY JUDGMENT MOTION

SADIE ZEA ISHEE
DENNIS B. FELD
Of Counsel

MARVIN BERNSTEIN, Director
Mental Hygiene Legal Service, First Department
LESLEY DELIA, Director
Mental Hygiene Legal Service, Second Department
Attorneys for Plaintiff
41 Madison Avenue, 26th Floor
New York, New York 10010
Phone: (212) 779-1734

January 22, 2013

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. ii

PRELIMINARY STATEMENT ............................................................. 1

FACTUAL BACKGROUND ................................................................. 1

    A.    MHLS's statutory structure and mission are not only to provide legal services, but also to function as a source of information to and about institutionalized persons.   1

    B.    MHLS's litigation priorities are determined by its constituents. ................ 2

ARGUMENT ................................................................................... 3

MHLS MAY INVOKE ASSOCIATIONAL AND THIRD-PARTY STANDING TO CHALLENGE THE SOMTA STATUTE ON BEHALF OF ITS CONSTITUENT CLIENTS. ................. 3

    I.    The claims for injunctive relief that are asserted in this action may be maintained by an organization in its representative capacity. ............................. 3

    II.    The purpose of the "membership" aspect of the associational standing test is to ensure that the association speaks on behalf of those whose interests it asserts; MHLS speaks on behalf of its constituents as an organization speaks on behalf of its members. ................................................................................. 4

        A.    An organization may establish "indicia of membership" sufficient to support associational standing even if it lacks a board of directors elected, financed and occupied exclusively by constituents. .......................... 4

        B.    Measured by the totality of the factors suggested in *Hunt*, MHLS has established sufficient "indicia of membership" to support its standing. ..... 5

            1.    MHLS serves as the mechanism for its constituents to assert their collective interests. ..................................................... 6

            2.    MHLS itself stands to be affected by the outcome of this case. ..... 7

    III.    MHLS has Third-Party Standing. .......................................... 9

CONCLUSION ................................................................................ 10

# TABLE OF AUTHORITIES

## CASES

*Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, __F.R.D.__, 2012 WL 5438849 (E.D.N.Y. Nov. 7, 2012) .................................................. 7

*Disability Advocates, Inc. v. N.Y. Coalition for Quality Assisted Living*, 675 F.3d 149 (2d Cir. 2012) .................................................................. 5

*Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1999) .................................. 7

*Friends of the Earth, Inc. v. Chevron Chemical Co.*, 129 F.3d 826 (5th Cir. 1997) ............. 5

*Harris v. County of Orange*, 682 F.3d 1126 (9th Cir. 2012) ........................... 4

*Hedges v. Obama*, __F.Supp.2d__, 2012 WL 3999839 (S.D.N.Y. 2012) ................. 10

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977) .................. 3, 5, 6

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Brock*, 477 U.S. 274 (1986) .................................................................. 3, 4, 9

*Mental Hygiene Legal Servs. v. Schneiderman*, 472 Fed. App'x 45 (2d Cir. 2012) ............. 1

*Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011) ................................. 3, 7, 8, 10

*Padberg v. McGrath-McKechnie*, 203 F. Supp. 2d 261 (E.D.N.Y. 2002) .................. 8

*Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898 (2d Cir. 1993) ..................... 7

*Virginia Office for Protection and Advocacy v. Stewart*, 131 S.Ct. 1632 (2011) ............. 9

*Warth v. Seldin*, 422 U.S. 490 (1975) ......................................... 4

## STATUTES

MHL 47.03 .................................................. 1, 3, 7

MHL 9.60 ....................................................... 7

MHL Article 10 ................................................ 8, 10

# PRELIMINARY STATEMENT

The issue here is whether Plaintiff Mental Hygiene Legal Service, a state agency statutorily mandated to advocate on behalf of persons with mental disabilities – including over 200 constituents who stood to be affected by the statute at issue at the time this lawsuit was filed, *see* Pl. R.56.1 Statement # 18 – has representational standing to litigate this action on behalf of those constituents. *See Mental Hygiene Legal Servs. v. Schneiderman*, 472 Fed. App'x. 45 (2d Cir. 2012).

# FACTUAL BACKGROUND

In several respects, Defendants' recitation of facts misstates or distorts the testimony of the witnesses upon which it is purportedly based. The following clarifications are necessary.

### A. MHLS's statutory structure and mission are not only to provide legal services, but also to function as a source of information to and about institutionalized persons.

Defendants argue that MHLS's sole mission is to provide legal services. Def. Mem. 4. Plaintiff disputes this characterization. While MHLS does serve the function of providing legal services, its mandate is far broader. The agency's statutory responsibilities also include providing information to patients and their families and friends about their legal rights in relation to hospitalization, care and treatment; reviewing each patient's admission, willingness to remain under a particular legal status and suitability for such status; guarding the patients' rights to protection from abuse and mistreatment, utilizing its statutorily-granted right of unfettered access to all psychiatric facilities; and bringing affirmative litigation as necessary to protect its constituents' rights. *See* MHL 47.03. Defendants' characterization of MHLS's duties is simply too narrow.

As the witnesses explained, MHLS attorneys are constantly in facilities speaking with constituents, providing them with information, and advocating on their behalf in many ways besides

litigation, including observation of constituents, negotiation with hospitals, and other non-judicial advocacy on the constituents' behalf. DeLia 23:24-24:02 ("There are times we serve as lawyers and there are times we serve as other kinds of friends and advocates"); 26:15-16; 35:02-12; 44:12-15); 44:24-45:6; Constas 29:15-25; 77:5-18; Creahan 11:13-21; 29:30:4. Neither MHLS's mandate nor its actual activities are consistent with the narrow construction suggested by Defendants.

### B. MHLS's litigation priorities are determined by its constituents.

Defendants fundamentally misconstrue the role that MHLS's constituents play in determining its litigation priorities. Contrary to Defendants' contention (Def. Mem. 4), MHLS's directors do not independently determine what issues should be taken on by the agency; their role is to determine whether the issues raised by a constituent potentially could be remedied through any legal cause of action. Creahan 31:3-14; 32:25-33:2 ("you would view the [constituent's] request in light of the state of the law and you would decide whether or not you could so anything for them legally."); 33:19-22; DeLia 51:21-25, 68:7-69:18; Shea 28:23-29:20; 31:24-32:1. As the witnesses made clear, constituents' complaints and concerns determine the direction of MHLS's advocacy. DeLia 13:22-14:21 (decision to bring litigation "starts with a patient bringing an issue to our attention."); Shea 30:18-31:3 ("the decision to commence [an] action was the product of many situations where our constituents complained of abuse"); Constas 53:11-14 ("Everything we do starts with the client in this type of practice."). MHLS does not independently embark on any course of litigation unless prompted to do so by a client.

Defendants claim that MHLS will not necessarily bring litigation even if requested by all of its constituents together. Def. Mem. 5. But this is only true to the extent that MHLS will not bring frivolous actions. Thus, if constituents raise issues that are not legally redressable, MHLS attempts to assist them in other ways. Creahan 31:22-32:10; DeLia 67:11-18. It is absurd for defendants to

suggest that because MHLS would not file a complaint that lacked any legal basis, it is not responsive to its constituents' requests or sets litigation priorities without their input. *See* Def. Mem. 4-5.[1]

## ARGUMENT

### MHLS MAY INVOKE ASSOCIATIONAL AND THIRD-PARTY STANDING TO CHALLENGE THE SOMTA STATUTE ON BEHALF OF ITS CONSTITUENT CLIENTS.

The Supreme Court generally favors associational standing for the benefits that it provides to litigants and to the court system and avoids overly formalistic application of the doctrine, so long as an organization's constituents have experienced a clear injury-in-fact and the issues in the litigation are germane to the organization's purpose. *See, e.g., Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Brock*, 477 U.S. 274, 287-290 (1986); *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 344-345 (1977). Where, as here, associational and third-party standing are asserted by an agency under a statutory mandate to protect its constituents' rights in matters relating to their hospitalization and to litigate to protect those rights, *see* MHL 47.03 (c), (e), it would exalt form over substance to deny standing where MHLS has some - though not all- of the "indicia of membership" that have previously been recognized by the Supreme Court and the Second Circuit.

### I. The claims for injunctive relief that are asserted in this action may be maintained by an organization in its representative capacity.

Defendants make a cursory argument that 42 U.S.C. § 1983 claims may not be maintained on a representative basis. Def. Mem. 7. While the Second Circuit has stated that it bars § 1983 actions from being maintained in a representational capacity, *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir.

---

[1] Defendants make much of various directors' statements about setting "policies." Def. Mem. 3, 13. But the policies in question concern personnel matters, not litigation priorities. *See, e.g.*, Shea 9:21-25 ("I am responsible for . . . setting forth our policies that pertain to personnel."); Creahan 19:20-20:10 (discussing director's role in setting annual goals for personnel activities and data collection); 21:23-22:11 (policy manual sets forth such things as how to submit time and leave forms and approximately how much time attorneys should spend in each facility based on number of beds).

2011), the U.S. Supreme Court has only barred claims for *damages* from being brought in this manner. *See Warth v. Seldin*, 422 U.S. 490, 515 (1975) (association may assert standing on behalf of its members only if seeking declaratory or injunctive relief). It is the existence of a claim for damages – not the mere invocation of § 1983 – that removes a case from the ambit of representative standing. *Id.*; *see also Harris v. County of Orange*, 682 F.3d 1126, 1134 (9th Cir. 2012). Because Plaintiff does not seek damages, this action may be maintained in a representative capacity under § 1983.

In any event, however, the complaint herein was *not* premised solely on § 1983, but also on 28 U.S.C. § 1331 and 28 U.S.C. § 2201, which provide independent bases for jurisdiction since Plaintiff does not seek damages. Compl. ¶ 2. Accordingly, representative standing is appropriate here.

**II.    The purpose of the "membership" aspect of the associational standing test is to ensure that the association speaks on behalf of those whose interests it asserts; MHLS speaks on behalf of its constituents as an organization speaks on behalf of its members.**

As the Supreme Court has noted, there are "special features, advantageous to both the individuals represented and to the judicial system, that distinguish suits by associations on behalf of their members." *Brock*, 477 U.S. at 289. Specifically, "'organizations often have specialized expertise and research resources relating to the subject matter of the lawsuit that individual plaintiffs lack.' These resources can assist both courts and plaintiffs." *Id.* (internal citation omitted). MHLS, which was created expressly to provide this kind of expertise in assisting both the institutionalized mentally ill themselves and the court systems that must oversee their hospitalizations, brings precisely these advantages to this case. MHLS's structure, statutory mandate, and close association with its constituents all establish that associational standing is proper here, under the criteria set forth in *Hunt*.

**A.    An organization may establish "indicia of membership" sufficient to support associational standing even if it lacks a board of directors elected, financed and occupied exclusively by constituents.**

Defendants insist that a non-membership organization can only satisfy the associational

4

standing test if they possess specific "indicia of membership" that are essentially identical to those of the state agency in *Hunt*. Def. Mem. 8-19. But "every case can be limited to its facts;" in evaluating a litigant's entitlement to associational standing, the analysis must focus on "the policy underlying the decision in *Hunt*," not the specific facts of that case. *Friends of the Earth, Inc. v. Chevron Chemical Co.*, 129 F.3d 826, 828 (5th Cir. 1997). Implicit in *Hunt* and expressly reaffirmed in *Brock*, associational standing is favored over individual litigation for purely legal questions; hence, the "indicia of membership" sufficient to establish the necessary close relationship between a non-membership organization and its constituents cannot be limited to the specific indicia possessed by the state agency in *Hunt*. Indeed, *Hunt* itself eschewed "exalt[ing] form over substance" in associational standing analysis, instead focusing on the fact that the agency was statutorily designed–as MHLS is– to advocate on behalf of a particular group. *Hunt*, 432 U.S. at 345. *Hunt* did not state that any particular "indicia of membership" were the *only* indicia that would suffice.[2]

### B. Measured by the totality of the factors suggested in *Hunt*, MHLS has established sufficient "indicia of membership" to support its standing.

MHLS does not, as Defendants claim, seek a ruling that a non-membership organization may establish associational standing without *any* "indicia of membership." Def. Mem. 10. Rather, MHLS simply asserts that *Hunt* is not limited to its facts. As previously argued, other indicia outlined in *Hunt* that would support MHLS's associational standing include: (1) that MHLS "serves a specialized segment of the State's . . . community which is the primary beneficiary of its activities, including the prosecution of this kind of litigation," *Hunt*, 432 U.S. at 344; (2) that MHLS "provides the means by

---

[2]Indeed, the Second Circuit explicitly took note of the fact that MHLS's consituents "don't vote on the activities of the organization, and they don't elect its leadership, and they don't serve as officers or board members. And they don't fund the organization." Oral Argument Tr. at 31. But none of these distinctions between MHLS and the Apple Growers Association in *Hunt* was determinative for the Court, which deemed this a "closer case" than *Disability Advocates, Inc. v. N.Y. Coalition for Quality Assisted Living*, 675 F.3d 149 (2d Cir. 2012) (*see* Oral Argument Tr. at 33), and remanded for additional fact-finding on the question of standing.

which [the constituents] express their collective views and protect their collective interests," *id.* at 345; (3) that MHLS itself stands to be affected by the outcome of the litigation, *id.*; and (4) that MHLS can "assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions," *id.* On the basis of these factors, MHLS has established its entitlement to associational standing under *Hunt*.

Defendants do not contest that MHLS serves a specialized segment of the State's population, which is the beneficiary of its activities. Def. Mem.10. Nor do they contest that MHLS can assure concrete adverseness and sharp presentation of the issues. However, Defendants challenge whether MHLS's activities are sufficiently dictated by its clients, and whether the agency will be affected itself by the outcome of this litigation. Def. Mem. 12-13; 17-19.

### 1. MHLS serves as the mechanism for its constituents to assert their collective interests.

Defendants argue that although MHLS has numerous contacts with its clients, "[t]hese contacts do not result in the clients' directing or guiding MHLS's activities in any way beyond that of any attorney's clients." Def. Mem. 14. This contention is belied by the record.

As all witnesses agreed, MHLS initiates affirmative litigation only when prompted to do so by a client's (or group of clients') complaints. DeLia 13:22-14:21; 62:5-25; 77:3-13; Shea 13:11-19; 20:15-20; 21:3-16; 26:10-14; 28:23-24; 30:18-31:3; 35:15-22; 38:3-16; 42:12-17; Constas 53:11-14; 69:11-24; Creahan 11:13-21; 18:22-19:2; 35:15-25, 38:12-16. The clients' concerns dictate every aspect of the agency's activities. Accordingly, although MHLS has no board of directors or advisory committee, MHLS nevertheless serves as the mechanism by which its constituents can "express their collective views and protect their collective interests" vis a vis their hospitalization. *Hunt*, 432 U.S. at 345.

Defendants contend that MHLS does not assert the "collective interests" of its clients because its litigation is typically undertaken on behalf of an individual client or a group of clients whose rights are affected by a challenged law or policy, not "to assert any collective rights of their clients as a whole." Def. Mem. 14. This argument reflects a peculiarly limited notion of collective rights. All MHLS constituents share a collective interest in protecting their rights in relation to admission, retention, and care and treatment in New York State psychiatric facilities.[3] MHLS was created to protect this interest. *See* MHL 47.03. Hence, its litigation advocacy on behalf of any given subgroup of its constituency supports the collective interests of the group. *See, e.g., Doe v. Stincer*, 175 F.3d 879, 885 (11th Cir. 1999) ("it is enough for the representative entity to allege that one of its members or constituents has suffered an injury that would allow it to bring suit in its own right.").

### 2. MHLS itself stands to be affected by the outcome of this case.

Defendants' argument that MHLS will not be directly affected by any ruling on the constitutionality of the challenged statutory provisions is also belied by the record. An injury to an organization need not be great to suffice for purposes of the standing inquiry; rather, the Second Circuit has made clear that any "perceptible impairment" will suffice. *See Nnebe*, 644 F.3d at 157 (*citing Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993). Any outlay of resources "that could be spent on other activities constitutes far more than simply a setback to [the organization's] abstract social interests." *Id.* (citation omitted); *see also Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, __F.R.D.__, 2012 WL 5438849 *5 (E.D.N.Y. Nov. 7, 2012).

MHLS has such tangible injuries. Each time an MHLS attorney must travel to a "secure treatment facility" to visit a client who is detained pending trial, the agency spends about $500 per

---

[3]This is an interest shared even by those constituents currently living in the community, who have either been hospitalized in the past and deemed at risk for further hospitalization in the future, *see* MHL 9.60, or been alleged or adjudged to be mentally incapacitated, *see* MHL Article 81.

7

trip, and every MHL Article 10 case has required at least one trip.[4] DeLia 98:19-21; 116:3-10. Such trips are avoided where clients are not detained pending trial. Mantell Aff. ¶¶ 10, 14-15. Thus, the preliminary injunction has saved MHLS money. Botticelli Aff. ¶¶ 7, 12, 15. Moreover, MHLS has had to re-allocate funds from other budget lines to account for the travel expenses incurred due to the pretrial detention of its clients. DeLia 113:13-19. Thus, expenses saved by any Article 10 client's pretrial release are funds that the agency can dedicate to its other activities. *See Padberg v. McGrath-McKechnie*, 203 F. Supp. 2d 261, 275 (E.D.N.Y. 2002) (finding standing where challenged practice forced organization to divert resources from other activities.). The savings, while small, is nevertheless tangible.

Likewise, there are tangible costs associated with the statutory imposition of an unconstitutional standard of proof of past sexual conduct for persons never convicted of sex offenses. As the evidence indicated, the agency incurs costs litigating these issues on behalf of their clients on a case-by-case basis. Harkavy Aff. ¶ 14. These costs were avoided while this Court's injunction mandating the higher standard of proof was in effect. *Id.* While MHLS's Deputy Director could not assign a dollar amount to the litigation costs associated with the burden of proof question, he testified to an increase in hours spent briefing and arguing motions associated with the burden of proof issue. Harkavy 109:17-21, 110:9-24. Where, as here, the litigation costs in question were not incurred "trolling for grounds to litigate," but rather, arose out of the agency's representation of its members in proceedings initiated by others, such litigation costs constitute a redressable injury to the agency itself. *Nnebe*, 644 F.3d at 158 (avoiding need for further lawsuits on issue constitutes a sufficient benefit to

---

[4]Defendants argue that MHLS's expenditures to visit clients who are confined are "self-imposed," because, in their view, it is not necessary for the attorney representing a client at trial to personally visit the client beforehand. Def. Mem. 22. But as attorneys who actually represent clients in MHL Article 10 matters testified, face-to-face contact with clients is essential to fostering an effective attorney-client relationship and protecting the clients' rights. Constas 77:5-85:22; Kuhlman 21:1-22:24 32:3-21; 35:25-36:18; 38:7-39:17;*see also* Mantell Aff ¶ 10.

agency). Thus, MHLS has established the necessary nexus between its interests and those of its clients.

In the end, the question for this Court is this: When a State Legislature creates a state agency to provide a mechanism to ensure protection of the rights of one segment of the State's population, and when the Legislature specifically empowers that agency to litigate to protect those rights, may the agency bring such actions in federal court in its own name? *Cf. Virginia Office for Protection and Advocacy v. Stewart*, 131 S.Ct. 1632, 1642 (2011) (state agency designed for protection and advocacy of mentally ill persons could sue state in federal court without violating Eleventh Amendment principles because state statute had granted the agency "authority to sue other state officials . . . free from any internal veto wielded by the state government."). Plaintiff submits that just as the Eleventh Amendment is not violated in these circumstances, permitting standing here is entirely consistent with the state Legislature's purpose in creating MHLS. Moreover, an agency created for such purposes, like MHLS, necessarily has "a pre-existing reservoir of expertise and capital" that makes it well-positioned to sue for vindication of its constituents' rights. *Brock*, 477 U.S. at 289. In light of MHLS's specific mandate and role in speaking for its constituents, associational standing is proper here.

## III. MHLS has Third-Party Standing.

Defendants argue that MHLS lacks third-party standing because the challenged statutory provisions allegedly do not cause MHLS to suffer any injury-in-fact that is redressable by this lawsuit. Def. Mem. 20-23. As demonstrated above, this characterization is inaccurate. *See infra* 8-9.

Moreover, while Defendants argue that any injury suffered by plaintiff is not attributable to their conduct (Def. Mem. 21-22), they ignore the fact that this lawsuit was initiated against Defendants in their official capacity, based on their official duties in implementing the provisions of Article 10. Thus, their actions in implementing the Article 10 statute against MHLS's constituent

9

clients – much like the City's actions in initiating legal proceedings against the constituent taxi drivers in *Nnebe* – establish the necessary element of causation here. *See Nnebe*, 644 F.3d at 157-158. As such, the injuries incurred by MHLS as a result of the unconstitutional terms of Article 10 satisfy the threshold for Article III injury-in-fact.[5]

Finally, Defendants argue that MHLS's constituents are not impeded in raising these issues in their individual MHL Article 10 trials. Def. Mem. 23-25. But such proceedings cannot provide an adequate forum for challenging the illegality of MHL 10.06 (k)'s pretrial detention clause, for the simple reason that confinement pursuant to that clause constitutes irreparable harm. *See Hedges v. Obama*, __F.Supp.2d__, 2012 WL 3999839, *44 (S.D.N.Y. 2012) ("imprisonment without trial for an indefinite period certainly constitutes irreparable harm."). Thus, if a constituent waits to challenge the clause until it is invoked against him in his individual case, he will be irreparably harmed by the indefinite pretrial detention that he will experience in the meantime. Moreover, such proceedings cannot necessarily provide adequate protection for the constituents' privacy interests, as argued previously (Pl. Mem. 32-35), and may be patently inadequate in the cases of constituents who are acutely mentally ill or developmentally disabled.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's Supplemental Summary Judgment motion, and should deny Defendants' Cross-Motion for Summary Judgment.

---

[5]Defendants argue that the financial injuries suffered by MHLS are not "fairly traceable" to them because they could be alleviated if the Legislature were simply to increase MHLS's annual budget. Def. Mem. at 22. But the fact that MHLS may be able to make up for lost revenues by acquiring funding elsewhere does not change the fact that the injuries it has experienced as a result of the challenged statutory provisions are attributable to defendants' conduct in the first instance.

Dated: New York, New York
January 22, 2013

                    MARVIN BERNSTEIN, Director
                    Mental Hygiene Legal Service, First Department
                    LESLEY DELIA, Director
                    Mental Hygiene Legal Service, Second Department

                    By: Sadie Zea Ishee, Esq. (SI-9540)
                    41 Madison Avenue, 26th Floor
                    New York, New York 10010
                    Phone: (212) 779-1734