UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
MENTAL HYGIENE LEGAL SERVICE,

                    Plaintiff,

          -v.-

ANDREW CUOMO, in his official
capacity as Governor of the State of
New York, et al.,

                    Defendants.
------------------------------------X
DEBORAH A. BATTS, United States District Judge.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/14

07 Civ. 2935 (DAB)
MEMORANDUM & ORDER

     This matter is before the Court on remand after the United

States Court of Appeals for the Second Circuit issued an Opinion

vacating the Court's March 29, 2011 Order, which invalidated three

sections of the New York Sex Offender Management and Treatment Act

("SOMTA" or the "Act"). Mental Hygiene Legal Servs. v. Schneiderman,

472 Fed. App'x 45 (2d Cir. 2012). The Circuit remanded the case

"for reconsideration in light of [its] decision in Disability

Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc., 675

F.3d 149 (2d Cir. 2012)," which issued while the appeal in this case

was still pending. Accordingly, the Circuit Court instructed this

Court to consider "whether plaintiff-appellee Mental Hygiene Legal

Services can establish any of the 'indicia of membership' required

for a nonmembership organization to assert associational standing."

Id. at 46. Having considered as much, and upon Cross-Motions for

Summary Judgment, the Court concludes that Plaintiff cannot

establish associational standing. In addition, Plaintiff fails to

demonstrate that it has third-party standing to bring suit.

Therefore, Plaintiff's Motion for Summary Judgment is DENIED, Defendants' Motion for Summary Judgment is GRANTED, and the action is DISMISSED for lack of jurisdiction.

I. BACKGROUND

On March 29, 2011, this Court issued an Order[1] granting in part and denying in part the Cross-Motions for Summary Judgment filed by Plaintiff Mental Hygiene Legal Services ("MHLS" or "Plaintiff") and Defendants Andrew Cuomo, in his official capacity as Governor of the State of New York, Eric Schneiderman, in his official capacity as Attorney General of the State of New York, Michael Hogan, in his official capacity as Commissioner of the New York State Office of Mental Health, Courtney Burke, in her official capacity as Acting Commissioner of the New York State Office for People with Developmental Disabilities, and Brian Fischer, in his official capacity as Commissioner of the New York State Department of Correctional Services ("DOCS"), (collectively, "Defendants"). Mental Hygiene Legal Servs. v. Cuomo, 785 F. Supp. 2d 205 (S.D.N.Y. 2011). Upon Plaintiff's pre-enforcement, facial challenge to discrete provisions of SOMTA, which is codified within New York Mental Hygiene Law Article 10, the Court concluded that §§ 10.06(k), 10.07(c), and 10.07(d) would fail to provide respondents sufficient

---

[1] The Court's March 29, 2011 Opinion contains a detailed factual background and a lengthy analysis of the issues presented in this action. See Mental Hygiene Legal Servs. v. Cuomo, 785 F. Supp. 2d 205 (S.D.N.Y. 2011). This Opinion, therefore, provides background only to the extent necessary to resolve the narrow issue before the Court on remand.

2

procedural safeguards and, therefore, unconstitutionally deny affected persons due process rights.[2] <u>Mental Hygiene Legal Servs.</u>, 785 F. Supp. 2d at 225-28.  On April 7, 2011, the Court issued an Order enjoining Defendants from enforcing the unconstitutional provisions of SOMTA, and on April 11, 2011, it ordered the Clerk of the Court to close the docket in the case. (ECF Nos. 109, 110.) Defendant filed a timely Notice of Appeal on April 15, 2011. (ECF No. 111.)

The United States Court of Appeals for the Second Circuit, on June 20, 2012, issued a Summary Order vacating the April 7, 2011 Order and remanding the matter to this Court. (ECF No. 112.)  The Circuit's Mandate issued on July 12, 2012. (ECF No. 113.)  The Parties have submitted their Cross-Motions for Summary Judgment and supporting papers on the standing issue, which the Court reviews below.


II. DISCUSSION

A. Legal Standard for Summary Judgment

The District Court should grant summary judgment when there is "no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a); <u>see also</u> <u>Allianz Ins. Co. v. Lerner</u>, 416 F.3d 109, 113 (2d Cir. 2008).  "However, reliance upon conclusory statements or mere

---

[2] In granting partial Summary Judgment for Defendants, however, the Court upheld §§ 10.05(e) and 10.06(f). <u>Mental Hygiene Legal Servs.</u>, 785 F. Supp. 2d at 225, 228-29.

allegations is not sufficient to defeat a summary judgment motion." Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002). Summary judgment is appropriate only when, "after drawing all inferences in the light most favorable to [the non-movant], no reasonable jury could" find in that party's favor. Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005).

In assessing whether summary judgment should be granted, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Melendez v. Mitchell, 394 Fed. App'x 739, 740 (2d Cir. 2010)(citations omitted). In addition, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996); see also Burgess v. Fairport Cent. Sch. Dist., 371 F. App'x 140, 141 (2d Cir. 2010)(same). Instead, when the moving party has documented particular facts in the record, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." FDIC v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). Establishing such evidence requires going beyond the allegations of the pleadings, as the moment has arrived "to put up or shut up." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). Thus, unsupported

allegations in the pleadings cannot create a material issue of fact. <u>Id.</u>

The same standards apply where, as here, there are cross-motions for summary judgment. <u>Fourth Toro Family Ltd. P'ship v. PV Bakery, Inc.</u>, 88 F. Supp.2d 188, 193 (S.D.N.Y. 2000). When faced with cross-motions for summary judgment, the Court need not "grant judgment as a matter of law for one side or the other," <u>Heublein, Inc. v. United States</u>, 996 F.2d 1455, 1461 (2d Cir. 1993), but "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." <u>Id.</u> (quoting <u>Schwabenbauer v. Bd. of Educ. of Olean</u>, 667 F.2d 305, 313-14 (2d Cir. 1981)).

Finally, "[t]he party asserting jurisdiction, here [MHLS], bears the burden of proof as to standing," and to establish the requisite proof on summary judgment, "a plaintiff 'must set forth by affidavit or other evidence specific facts' supporting standing, as is generally required under Rule 56." <u>NRDC, Inc. v. United States FDA</u>, 710 F.3d 71, 79 (2d Cir. 2013)(quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

B. Constitutional Standing for an Association to Bring Suit

It is well-established that

[a]t an 'irreducible constitutional minimum,' Article III standing requires (1) that the plaintiff have suffered an 'injury in fact,' i.e., an injury that is 'concrete and

5

particularized' as well as 'actual or imminent,' rather
than merely 'conjectural or hypothetical'; (2) that there
be a 'causal connection between the injury and the
conduct complained of,' i.e. that the injury be 'fairly .
. . traceable to the challenged action of the defendant,
and not . . . the result [of] the independent action of
some third party not before the court'; and (3) that it
be likely that the injury complained of would be
'redressed by a favorable decision.'

St. Pierre v. Dyer, 208 F.3d 394, 401 (2d Cir. 2000)(quoting Lujan,

504 U.S. at 560-61).  The inquiry does not stop there "[w]hen an

association asserts standing solely as the representative of its

members," in which case the association "'must allege that its

members, or any one of them, are suffering immediate or threatened

injury as a result of the challenged action of the sort that would

make out a justiciable case had the members themselves brought

suit.'" Disability Advocates, Inc., 675 F.3d at 156-57 (quoting

Warth v. Seldin, 422 U.S. 490, 511 (1975)).  While the Court will

typically enforce "the general prohibition on a litigant's raising

another person's legal rights," Allen v. Wright, 468 U.S. 737, 751

(1984), it still may conclude that a plaintiff is "an association

[with] standing to bring suit on behalf of its members [if]: (a) its

members would otherwise have standing to sue in their own right; (b)

the interests it seeks to protect are germane to the organization's

purpose; and (c) neither the claim asserted nor the relief requested

requires the participation of individual members in the lawsuit."

Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).

It is well-established that "the first two of these requirements are

constitutional limitations, whereas the third requirement is a

'prudential limitation' that may be abrogated by Congress."

6

Disability Advocates, Inc., 675 F.3d at 157 (quoting United Food & Commercial Workers Union Local 751 v. Brown Grp., 517 U.S. 544, 557 (1996)).

The only question before the Court now "is whether, on this record, [MHLS's] status as a state agency, rather than a traditional voluntary membership organization, precludes it from asserting the claims of the [persons affected by SOMTA] who form its constituency." Hunt, 432 U.S. at 344. Plaintiff thus has the burden of showing that it has "members [that] would otherwise have standing to sue in their own right . . . ." Id. at 343 (emphasis added). To succeed, then, MHLS must demonstrate that it "satisfies the first prong of the test for associational standing under Hunt," Disability Advocates, Inc., 675 F.3d at 157, showing that "its 'constituency' possesse[s] all the 'indicia of membership.'" Id. (quoting Hunt, 432 U.S. at 344-45).

MHLS argues that it has "demonstrated sufficient 'indicia of membership' or 'active affiliation' with its constituents." (Pl.'s Mem. Law at 17 (quoting Disability Advocates, Inc., 675 F.3d at 158).)  The requisite indicia of membership are comprised of three

distinctive elements.[3]  The <u>Hunt</u> Court concluded that though constituents are

> not "members" of the Commission in the traditional trade association sense, they possess all of the indicia of membership in an organization.  They alone <u>elect the members of the Commission</u>; they alone may <u>serve on the Commission</u>; they alone <u>finance its activities</u>, including the costs of this lawsuit, through assessments levied upon them.  In a very real sense, therefore, the Commission represents the State's growers and dealers and provides the means by which they express their collective views and protect their collective interests.

<u>Hunt</u>, 432 U.S. at 344-45 (emphasis added).  The "therefore" in the passage above is instructive for interpreting this factor of the <u>Hunt</u> test; it indicates that the Supreme Court made its finding, i.e. that the Commission in <u>Hunt</u> represented its constituents' "collective views and protect[ed] their collective interests," precisely <u>because</u> its constituents possessed the tripartite "indicia of membership." <u>Id.</u>

Still, the "indicia of membership" issue "has not heretofore been addressed in this Circuit," <u>Disability Advocates, Inc.</u>, 675 F.3d at 158. <u>Cf.</u> <u>Weisshaus v. Swiss Bankers Ass'n</u>, 225 F.3d 191, 196

---

[3] Plaintiff argues that "[t]he <u>Hunt</u> Court recognized at least six factors" in the first prong of the test for associational standing (Pl.'s Mem. Law at 12), and the Court "did not state that any particular 'indicia of membership' were the <u>only</u> indicia that would suffice." (Pl.'s Reply Mem. Law at 5 (emphasis in original).)  In fact, <u>Hunt</u> described only three factors: the organization's purpose/ function, indicia of membership, and the organization's own stake in the litigation. <u>See</u> <u>Hunt</u>, 432 U.S. at 344-45; <u>also</u> <u>Disability Advocates, Inc.</u>, 675 F.3d at 157 (for Defendants grouping the three factors into two: "representation and control").  The extra three "factors" that Plaintiff references are either ancillary considerations offered to guide the Court in its analysis, or conclusions that flow from a successful showing of the actual factors. <u>Id.</u>  Whether MHLS can demonstrate the second factor, which takes into account the specific indicia articulated in <u>Hunt</u>, is precisely the question that the Second Circuit instructed this Court to answer on remand. <u>Mental Hygiene Legal Servs.</u>, 472 Fed. App'x at 46.

(2d Cir. 2000)(An organization can meet the first prong of the test for associational standing if it demonstrates that it "function[s] effectively as a membership organization."). The Second Circuit Opinion, however, directed the Court to other Circuits that have been presented with the question. Id.

Four Circuit Courts have dealt with the question, with two finding the organizations demonstrated associational standing and two finding the organizations failed to do so. Where the Courts have determined there was associational standing, they so found because constituents at least served in the organizations' leadership roles and has a formal grievance process. See Oregon Advocacy Ctr. v. Mink, 322 F.3d 1101, 1111-12 (9th Cir. 2003)(The governing board and advisory council consisted of members "who broadly represent[ed] or [were] knowledgeable about the needs of the clients," more than half of whom were "individuals who ha[d] received or [were] receiving mental health services and family members of such individuals," and the organization maintained "a grievance procedure for clients and prospective clients" established to facilitate input from its constituents and to ensure their protection. (citations omitted)); Doe v. Stincer, 175 F.3d 879, 886 (11th Cir. 1999)(The organization had the same governing board and advisory council composition as in Oregon Advocacy Ctr., had a formal grievance procedure, and provided for "public . . . . opportunity to comment" to ensure that constituents, and thus, "[m]uch like members of a traditional association," "possess[ed] the means to influence the priorities and activities" undertaken by the organization.). Where courts concluded that associational standing

9

was lacking, on the other hand, they indicated that none of the <u>Hunt</u> factors were on the record before them. See <u>Mo. Prot. & Advocacy Servs. v. Carnahan</u>, 499 F.3d 803, 810 (8th Cir. 2007)(quoting <u>Hunt</u> and finding that "'constituents' of [the P & A Service] have no such relationship to the organization"); <u>Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental Retardation Bd. of Trs.</u>, 19 F.3d 241, 244 (5th Cir. 1994)(referencing <u>Hunt</u> and finding that "[t]he organization bears no relationship to traditional membership groups because most of its 'clients'--handicapped and disabled people--are unable to participate in and guide the organization's efforts"). While in no case did constituents provide their respective organization's funding, their service in its leadership ensured that the organization was "sufficiently identified with and <u>subject to the influence of those it seeks to represent</u> as to have a 'personal stake in the outcome of the controversy.'" <u>Oregon Advocacy Ctr.</u>, 322 F.3d at 1111 (emphasis added)(quoting <u>Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.</u>, 429 U.S. 252, 261 (1977)).

In <u>Brooklyn Ctr. for Independence of the Disabled v. Bloomberg</u>, 290 F.R.D. 409 (S.D.N.Y. 2012), furthermore, the District Court noted that "CIDNY's case for associational standing is weaker only because it is apparently not a membership organization," but still concluded that it demonstrated its standing as a "service provider[ ] <u>managed and directed by persons with disabilities</u> for the purpose of serving persons with disabilities." Id. at 416-17 (emphasis added)(internal quotation marks and citation omitted). Thus, if an organization has an active client base and is led by an inclusive

leadership, it "has sufficient 'indicia of membership'" to show that it "'function[s] effectively as a membership organization' for the purposes of associational standing." Brooklyn Ctr. for Independence of the Disabled, 290 F.R.D. at 417 (quoting Disability Advocates, Inc. 675 F.3d at 157).

In the instant case, MHLS concedes that its constituents do not elect, serve, or finance the agency's activities as they did in Hunt. (Pl.'s Mem. Law at 17.) Very much to the contrary, Plaintiff is not "guided by a board of directors or other voting membership body," but run instead by its four directors. (Pl.'s Mem. Law at 3; Req. for Admis. No. 75.) The directors, who are appointed by the presiding justice of each judicial department, "set statewide goals and policies" and direct MHLS's litigation efforts. (Pl.'s Mem. Law at 3-4.) In fact, MHLS's clients have no role "in the process of selecting these directors or in the process of hiring any MHLS employees." (Defs.' Mem. Law at 3; DeLia Dep. 29:14-15, 30:9-12; Harkavay Dep. 23:7-25:24.) Unlike the protection and advocacy systems in the relevant case law, "MHLS has no advisory council of individuals who have such disabilities," and there is no statutory mandate to maintain as much. (Defs.' Mem. Law. at 3; See Req. for Admis. Nos. 77, 79.)

In addition, MHLS does not receive funds from constituents, (Req. for Admis. No. 78), nor does it have a grievance procedure in place for them. (Defs.' Mem. Law at 3.) Instead, Plaintiff's activities are funded by the State of New York, the "Office of Court Administration oversees MHLS's budget and may modify or approve the requested allocations,"(Harkavy Decl. ¶ 4; See Req. for Admis. No.

11

85), and MHLS's clients have no say in determining how those monies are spent. (Defs.' Mem. Law at 4; Harkavy Dep. 100:18-101:14.) And while Plaintiff engages in things like "commenting on potential legislation" in advocating on behalf of its clients, the agency "has never consulted any of its clients regarding these activities." (Defs.' Mem. Law at 3);(DeLia Dep. 84:23-85:14);(Req. for Admis. Nos. 82, 83.)

The record before the Court portrays MHLS's constituents as having a very limited role in the organization. So, while Plaintiff's contention that "MHLS . . . serves as the mechanism for individuals with mental illness in New York 'to make more effective the expression of their own views'" may be correct in some sense, it does not follow from the reasoning set forth in Hunt and, accordingly, it constitutes a misapprehension of the legal standard contained therein. (Pl.'s Mem. Law at 18 (citing Hunt, 432 U.S. at 345).) Because MHLS's constituents do not "elect the members," "serve" in the leadership, or "finance its activities," Hunt, 432 U.S. at 345, Plaintiff is incorrect when it asserts that "MHLS has some --though not all-- of the 'indicia of membership." (Pl.'s Reply Mem. Law at 3.)[4] It has none.

Though Plaintiff argues its constituents are similar to individuals belonging to "traditional voluntary membership

_____

[4] Plaintiff's assertion that "MHLS 'serves a specialized segment of the State's . . . community,'" and its constituents are "the primary beneficiaries of MHLS's activities," is similarly misplaced. (Pl.'s Mem. Law at 13 (citing Hunt, 432 U.S. at 344).) Though the statement may be correct, it is clear from Hunt's structure that MHLS's assertion addresses only the first factor, the organization's purpose/function. See Hunt, 432 U.S. at 344. It is irrelevant with regard to the "indicia of membership" factor. See supra at n.3.

organization," <u>Hunt</u>, 432 U.S. at 344, its "numerous contacts" and "close relationships" with them, (<u>see, e.g.</u>, Pl.'s Mem. Law at 4, 13), depicts a bond more akin to a law firm and its clients. (<u>See</u> Defs.' Mem. Law at 25). The nature of the relationship is best illuminated by sworn testimonies indicating that, "[l]ike any other lawyer," an MHLS attorney "keeps his clients informed of what's happening in his [sic] case." (Kuhlman Tr. 54:20-23; <u>see also</u> Harkavy Tr. 80:9-14.) Plaintiff responds that Defendants' characterization of its role, i.e. "to provide legal services," is "simply too narrow." (Pl.'s Reply Mem. Law at 1.) The section of New York's Mental Hygiene Law that sets out the agency's functions, powers, and duties, however, does not belie Defendants' characterization. N.Y. Mental Hyg. Law § 47.03. Indeed Plaintiff's own characterization of its role, which largely tracks the language in N.Y. Mental Hyg. Law § 47.03, describes a bond between an attorney and client. (Pl.'s Reply Mem. Law at 1.) Plaintiff also admits that "[w]ith the enactment of SOMTA, MHLS's mandate was expanded to include provid[ing] legal services and assistance in accordance with article ten of [the MHL]," further highlighting the nature of MHLS's relationship with its clients. (<u>Id.</u> at 8 (citing N.Y. Mental Hyg. Law § 47.03 (f)).) This further supports a finding that MHLS is not the functional equivalent of a membership organization.

It is clear that Plaintiff lacks all attributes comprising of the indicia of membership as articulated in <u>Hunt</u>. Because "there is scant evidence in the record that the individuals with mental illness whom [MHLS] purports to represent have the power to elect

13

its directors, make budget decisions, or influence [MHLS's] activities or litigation strategies," Plaintiffs have not met the first prong of the associational standing test. <u>Disability Advocates, Inc.</u>, 675 F.3d at 158-59. On this point, then, Plaintiff's Motion for Summary Judgment must be DENIED, and Defendants' Motion must be GRANTED.

### C. Third-Party Standing for an Association to Bring Suit

"In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third-parties." <u>Powers v. Ohio</u>, 499 U.S. 400, 410 (1991)(citations omitted). There is an exception to the general rule, the doctrine of third-party standing, and the requirements for its application are well-established. "In addition to meeting 'the constitutional prerequisites of standing,' namely '(1) injury-in-fact, (2) causation, and (3) redressability,' a plaintiff seeking third-party standing in federal court must also satisfy the prudential prerequisites of standing by demonstrating a close relation to the injured third party and a hindrance to that party's ability to protect its own interests. <u>Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.</u>, 418 F.3d 168, 174 (2d Cir. 2005)(citing <u>Lewis v. Thompson</u>, 252 F.3d 567, 584 (2d Cir. 2001)). Short of this, the Court is without jurisdiction.

MHLS states explicitly that it "has third-party standing to raise its clients' constitutional claims." (Pl.'s Mem. Law at 29)(<u>See also</u> Compl. ¶ 39.) Defendants counter by arguing that MHLS

failed to raise this point previously, "and has thus waived this ground for standing." (Defs.' Mem. Law at 19.)  Furthermore, Defendants dispute MHLS's ability to meet the standard for third-party standing, contending, <u>inter alia</u>, that Plaintiff itself lacks Article III standing and that its clients face no obstacle to bringing suit on their own behalf. (Defs.' Mem. Law at 20, 23.)  The Court finds that MHLS has not waived the argument, but it also finds that Plaintiff's argument for third-party standing is without merit. As explained below, MHLS has failed to show an injury-in-fact and that its clients are hindered from bring suit themselves.

    1. Waiver

Throughout the course of this litigation, Plaintiff has asserted repeatedly that it has associational standing to sue. However, MHLS's purported third-party standing to bring suit has, until this stage, been mentioned only once. (<u>See</u> Compl. ¶ 39.) Defendants argue that because Plaintiff did not address this issue in its previous briefs, it has waived this argument. (Defs.' Mem. Law at 19.)  In support of their waiver argument, Defendants point to the "'well- established general rule that an appellate court will not consider an issue raised for the first time on appeal.'" <u>In re Nortel Networks Corp. Sec. Litig.</u>, 539 F.3d 129, 132 (2d Cir. 2008) (citing <u>Bogle-Assegai v. Conn.</u>, 470 F.3d 498, 504 (2d Cir. 2006)). That principle is not apt here; on this issue, the law in this Circuit "counsels otherwise." <u>Thompson v. County of Franklin</u>, 15 F.3d 245, 248 (2d Cir. 1994).

The Court will address a standing argument "even if the parties fail to raise the issue," Thompson, 15 F.3d at 248 (citing FW/PBS, Inc. v. Dallas, 493 U.S. 215, 230-31 (1990)), because "[t]he question of standing is not subject to waiver." United States v. Hays, 515 U.S. 737, 742 (1995). "The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" Hays, 515 U.S. at 742 (citing FW/PBS, Inc., 493 U.S. at 230-31 (1990)(alteration in original)). The Court thus finds that the argument for third-party standing has not been waived.


### 2. Injury-in-fact

As an initial matter, third-party standing demands that the party bringing suit establish constitutional standing in its own right. "[A]s is the case with any plaintiff, [MHLS] must meet the constitutional prerequisites of standing: (1) injury-in-fact, (2) causation, and (3) redressability." Lewis, 252 F.3d at 584 (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102-03 (1998)). Injury-in-fact, consists of "a sufficiently concrete interest in the outcome of the[ ] suit to make it a case or controversy subject to a federal court's Art. III jurisdiction." Singleton v. Wulff, 428 U.S. 106, 112 (1976). The standard requires that Plaintiff show that it experiences "an injury to himself that is 'distinct and palpable,' as opposed to merely 'abstract,' and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.'" Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)

(internal citations omitted). "Absent the necessary allegations of demonstrable, particularized injury, there can be no confidence of 'a real need to exercise the power of judicial review' or that relief can be framed 'no broader than required by the precise facts to which the court's ruling would be applied.'" Warth, 422 U.S. at 508 (citing Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 221-22 (1974)). See also Whitmore, 495 U.S. at 155-56 ("A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing.").

Plaintiff asserts that it has sustained injury because SOMTA's provisions demand that MHLS "increas[e] the resources it must expend in order to prepare for trial." (Pl.'s Mem. Law at 9.) As such, Plaintiff contends, MHLS's situation is comparable to that of parties in three other cases where courts have found third-party standing. (Pl.'s Mem. Law at 30.) The plaintiff organizations in the cases cited were forced to divert resources from their core activities to litigate on behalf of their members; here, litigating cases like the instant action, as well as providing related legal services, is the core of MHLS's activities.

In Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982), for example, the plaintiff was an organization whose purpose was to pursue "equal access to housing through counseling and other referral services." 455 U.S. at 379. In Ragin v. Harry Macklowe Real Estate Co., 6 F.3d 898 (2d Cir. 1993), which "remains good law in this Circuit," Nnebe v. Daus, 644 F.3d 147, 157 (2d Cir. 2011), the organization's main activity was to "provid[e] information at

17

community seminars about how to fight housing discrimination."
Ragin, 6 F.3d at 906. In Nnebe, similarly, a union of taxi drivers
was forced to divert resources from its core activities to
"provid[e] initial counseling, explain[ ] the suspension rules to
drivers, and assist[ ] the drivers in obtaining attorneys" upon
summary suspensions. Nnebe, 644 F.3d at 157. None of the cases on
which MHLS's argument relies involve a plaintiff organization that
is primarily in the business of initiating law suits.

"Here there are no allegations that [Plaintiff] provides
referrals, or . . . reimburse[s] the litigation expenses of its
members who bring" actions. Nat'l Cong. for Puerto Rican Rights by
Perez v. City of New York, 75 F. Supp. 2d 154, 165 (S.D.N.Y. 1999)
(distinguishing organization's basis for third-party standing from
those in Havens Realty Corp. and Ragin). Plaintiff, instead, is an
agency that provides legal services to persons subject to SOMTA
among others, N.Y. Mental Hyg. Law § 47.03, and all "injury" claimed
involves expending resources in pursuit of its statutory mandate to
provide legal representation. (Pl.'s Mem. Law at 10, 21-22, 30.)[5]
Simply invoking the costs arising during the course of litigation,
or those incurred while otherwise providing direct legal services,
is not enough to show an injury-in-fact, particularly as MHLS has
not indicated "that its 'activities . . . detracted the attention of
[Plaintiff's] staff members from their regular tasks at'" the

_____

[5] Nor can MHLS claim that SOMTA "has reduced the number of cases in which they
could be appointed and paid as assigned [ ] counsel," as the plaintiff
attorneys did in Kowalski v. Tesmer, 543 U.S. 125, 129 n.2 (2004). Even if
Plaintiff were able to make such a claim, however, it is notable that the
Supreme Court avoided answering whether that constituted adequate injury to
sustain the suit. Instead, the Court noted it would "assume, without
deciding, that the[ ] allegations are sufficient." Id.

agency. Ragin, 6 F.3d at 898 (citing Ragin v. Harry Macklowe Real Estate Co., 801 F. Supp. 1213, 1233 (S.D.N.Y. 1992)). See Nat'l Cong. for Puerto Rican Rights, 75 F. Supp. 2d at 165 (citing Calvin v. Conlisk, 534 F.2d 1251, 1253 (7th Cir. 1976))("[T]o allow standing on this basis would be to circumvent principles which the Supreme Court has carefully delineated and observed. It would leave nothing of the limitations imposed by the Court in Sierra Club v. Morton, . . . [and] would also give an organization with a particularized interest the right to bring suit in order to spare itself the expense of continued efforts to further that interest. . . An organization devoted to the defense of [certain] cases . . . could facially attack any statute touching on [that topic] . . . to avoid the future expense of defending cases brought under the law.")

To be sure, MHLS's interest in the suit goes beyond a mere "abstract concern." Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 (1976). The State of New York has enacted law that compels Plaintiff to protect its clients' legal interest both in and out of court. N.Y. Mental Hyg. Law § 47.03. The mandate, however, does not confer upon the agency standing to bring suit, particularly where, as noted earlier, clients of MHLS would have standing to pursue their claims individually. See Mental Hygiene Legal Servs., 785 F. Supp. 2d at 219 (Clients are "identifiable constituents [and] 'would otherwise have standing to sue in their own right.'") Where a specialized legal organization attacks the validity of a law, "the consequent drain on its resources in achieving this end does not present the type of traceable and redressable injury necessary to

19

confer standing." <u>Nat'l Cong. for Puerto Rican Rights</u>, 75 F. Supp. 2d at 165. MHLS, therefore, has not shown injury-in-fact, and it fails to meet the constitutional element for third-party standing.[6]

### 3. Clients' Hindrance from Bringing Suit

"The determination whether a plaintiff has standing to assert the rights of third parties has . . . prudential components" as well. <u>Lewis</u>, 252 F.3d at 584 (citing <u>Singleton</u>, 428 U.S. at 112). In addition to an injury that is traceable to Defendant's conduct and likely to be redressed by a favorable decision, <u>see</u> <u>Kowalski v. Tesmer</u>, 543 U.S. 125, 129 (2004)(there is a "constitutional minimum of standing, which flows from Article III's case-or-controversy requirement"), a litigant must demonstrate "a 'close relationship' to the" absent parties, as well as evidence of "some hindrance to the [absent parties] asserting their own rights." <u>Campbell v. Louisiana</u>, 523 U.S. 392, 397 (1998)(citing <u>Powers</u>, 499 U.S. at 411). The prudential requirements were established to ensure that "the plaintiff[s] are proper proponents of the particular legal rights on which they base their suit." <u>Singleton</u>, 428 U.S. at 112.

---

[6] Plaintiff's argument is also weak on the issue of causation, which must be presented "in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant." <u>W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP</u>, 549 F.3d 100, 106 (2d Cir. 2008). Here, where a legal organization claims that its injury results from its expenditure of funds in pursuit of its statutory mandate, <u>see</u> <u>Nat'l Cong. for Puerto Rican Rights</u>, 75 F. Supp. 2d at 165, finding for Plaintiff would validate the contention "that a particular defendant caused it harm from the mere fact that it chose to sue that defendant." (Defs.' Reply Mem. Law at 7.) While the injury-in-fact element presents enough of a problem such that MHLS cannot establish standing, it is not Plaintiff's only argument that suffers from infirmities on the constitutional prong.

Defendants here do not contest the closeness of the relationship between Plaintiff and its clients. Over time, Courts have found that an existing attorney-client relationship may satisfy the closeness required to make the case for third-party standing. Caplin & Drysdale v. United States, 491 U.S. 617, 623 n.3 (1989)("The attorney-client relationship between petitioner and Reckmeyer, like the doctor-patient relationship in Baird, is one of special consequence"); Kowalski, 543 U.S. at 130-31 ("[W]e have recognized an attorney-client relationship as sufficient to confer third-party standing," but "[t]his existing attorney-client relationship is, of course, quite distinct from the hypothetical attorney-client relationship posited here"). The Court assumes arguendo that MHLS has shown a sufficiently close relationship with clients not named in this suit.[7] The Court, therefore, examines the second prudential requirement for the third-party standing test.

Plaintiff fails to meet the second part of the prudential test, because it has not shown that its clients "are hindered from protecting their own interests." Fenstermaker v. Obama, 354 Fed.

---

[7] Though the attorney-client relationship may satisfy the closeness requirement, the relationship will not always prove sufficient. The Kowalski Court indicated as much, stating "the lawyer would have to make a credible claim that a challenged regulation would affect his income to satisfy Article III; after that, however, the possibilities would be endless. A medical malpractice attorney could assert an abstract, generalized challenge to tort reform statutes by asserting the rights of some hypothetical malpractice victim (or victims) who might sue. An attorney specializing in Social Security cases could challenge implementation of a new regulation by asserting the rights of some hypothetical claimant (or claimants). And so on." Kowalski 543 U.S. at 134 n.5 (emphasis added)(internal citations omitted). Because counsel are employed by a state agency, it is not clear that MHLS could prove that its attorneys' incomes would be affected by the statute at issue. Still, the Court withholds judgment because, as noted previously, the result of this inquiry would not change the outcome of the prudential portion of the test, much less the constitutional portion.

21

App'x. 452, 454 (2d Cir. 2009). To show hindrance, the litigant "would need to establish that 'some barrier or practical obstacle (e.g., third party is unidentifiable, lacks sufficient interest, or will suffer some sanction) prevents or deters the third party from asserting his or her own interest.'" Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, 915 F. Supp. 2d 574, 594 (S.D.N.Y. 2013)(citing Benjamin v. Aroostook Med. Ctr., Inc., 57 F.3d 101, 106 (1st Cir. 1995)). MHLS argues that its clients face obstacles to pursuing litigation due to their (1) privacy concerns; (2) retaliation concerns; and (3) general inability stemming from their disabilities. (Pl.'s Mem. Law at 32-35.) In the alternative, MHLS contends that it need not demonstrate this prong, but that it "may be overlooked." (Id. at 32.) The arguments are without merit.

MHLS claims that its clients may be inhibited from bringing suit due to privacy issues that might arise during the course of litigation. (Pl.'s Mem. Law at 33.) Not only could litigating in client's individual names attract unwanted publicity, but it "would necessarily disclose privileged mental health information." (Id.) Plaintiff highlights its concern by citing an article referencing a state court case from 2005, where reporters identified and printed photos of individual plaintiffs named "Joe Does" in the case. (Pl.'s Mem. Law at 33; Harkavy Decl. ¶ 9 & Ex. 1). This, MHLS argues, supports its standing in for absent individual clients.

The Court may permit the use of prophylactic measures to protect the parties' legitimate privacy concerns where a case might reveal sensitive information. Litigants "can avail themselves of

the . . . protections contained in the Federal Rules and our
precedents as necessary to protect any confidential information." <u>EM
Ltd. v. Republic of Argentina</u>, 695 F.3d 201, 210 (2d Cir. 2012).
For example, a "[s]uit may be brought under a pseudonym, as so
frequently has been done." <u>Singleton</u>, 428 U.S. at 117. Furthermore,
Plaintiffs can petition the Court to authorize other precautionary
measures, from redacting documents to conceal personal data and
other identifiers to sealing parts of the record, including
confidential health information. <u>See, e.g.</u>, Fed.R.Civ.P. 26(c)(1)
(listing instances when "[t]he court may, for good cause, issue an
order to protect a party or person from annoyance, embarrassment,
oppression, or undue burden or expense"). Offering as proof a
single example where the press ascertained and published the
identities of pseudonymously-named individual plaintiffs, MHLS
suggests these courses of action cannot be sufficient. (Pl.'s Mem.
Law at 33.) Plaintiff's argument is unpersuasive, however, because
it ignores the many cases in which the Court has successfully
employed the use of pseudonyms, or otherwise has concealed parties'
names from the public. <u>E.g. United States v. Richard Roe, Inc.</u>, 68
F.3d 38 (2d Cir. 1995); <u>Doe v. City of New York</u>, 15 F.3d 264 (2d
Cir. 1994); <u>Sandrino v. Michaelson Assocs., LLC</u>, No. 10 Civ. 7897,
2012 U.S. Dist. LEXIS 165143 (S.D.N.Y. Nov. 19, 2012); <u>K.S. v. N.Y.
City Dep't of Educ.</u>, No. 11 Civ. 7443, 2012 U.S. Dist. LEXIS 113826
(S.D.N.Y. Aug. 8, 2012). Nor does Plaintiff indicate that other
measures, like those previously mentioned, would be ineffective to
protect clients from negative publicity. The single example

presented, then, is an exceptional case, not the general rule. Protecting the parties from public scrutiny is not an adequate basis for the Court to undermine the well-established doctrine, particularly where there are range of alternatives at its disposal to effect the same. Here, MHLS's attempts to persuade the Court are to no avail.

While the Court appreciates the difficulties that individual plaintiffs might encounter,[8] MHLS has failed to allay the Court's "general reluctance to permit a litigant to assert the rights of a third party." Campbell, 523 U.S. at 397. Plaintiff has neither shown a "substantial hindrance to the third-party's ability to assert [their] own rights," Mazzocchi, 2012 U.S. Dist. LEXIS 112479 at * 10, nor has it presented specific evidence to demonstrate that absent parties "possess[ ] little incentive to set in motion the arduous process needed to vindicate [their] own rights." Campbell, 523 U.S. at 398 (citing Powers, 499 U.S. at 415). There is not

---

[8] In furtherance of its argument, Plaintiff relies on four cases: Smith v. Doe, 538 U.S. 84 (2003), Camacho v. Brandon, 317 F.3d 153 (2d Cir. 2003), Mazzocchi v. Windsor Owners Corp., No. 11 Civ. 7913, 2012 U.S. Dist. LEXIS 112479 (S.D.N.Y. Aug. 6, 2012), and Singleton v. Wulff, 428 U.S. 106 (1976). Each case, however, is inapposite. Not only did the quote in Plaintiff's brief stop short of the Court's finding in Smith, i.e. "[t]he State's Web site does not provide the public with means to shame the offender," id. at 99, but that case concerned the state itself making the information publicly available, not the press. Also, the Court in Camacho was presented with clear evidence of retribution, including actual termination of the political aide, Camacho, 317 F.3d at 158-59; MHLS offers no comparable proof, only speculation. (See Pl.'s Mem. Law at 34; Harkavy Decl. ¶ 10; DeLia Aff. ¶ 9.) Furthermore, the plaintiff in Mazzocchi did not prevail on the standing argument, as the Court would not "simply assume that every disabled or chronically ill person is incapable of asserting his or her own claims." Mazzocchi, 2012 U.S. Dist. LEXIS 112479 at *10-11. In Singleton, finally, the absent third parties-pregnant women-were faced with atypical barriers to bringing suit, and the litigants-licensed physicians-were uniquely invested in the action. Singleton, 428 U.S. at 117. Also, the Singleton Court only extended to the civil context, a principle that was already held to apply in criminal cases. Id. at 118.

enough to substantiate Plaintiff's contention that MHLS clients are hindered from bringing suit. Therefore, Plaintiff's Motion for Summary Judgment is DENIED, and Defendants' Motion is GRANTED.


III. CONCLUSION

The questions presented in this matter involve 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" <u>Kowalski v. Tesmer</u>, 543 U.S. at 128. Because Plaintiff has not demonstrated that the case fits within bounds of either, the Court must adhere to the default proposition that "third parties themselves usually will be the best proponents of their own rights." <u>Singleton</u>, 428 U.S. at 114. Plaintiff's Motion for Summary Judgment is thus DENIED, and Defendants' Motion for Summary Judgment is GRANTED. The Clerk of the Court is instructed to close the docket in this matter.


SO ORDERED.

_Deborah A. Batts_
Deborah A. Batts
United States District Judge


Dated: March 31, 2014
New York, New York